UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GLOBAL OIL TOOLS, INC.                    CIVIL ACTION

VERSUS                                    NO: 12-1507

BARNHILL ET AL.                           SECTION: "J"(4)

**ORDER AND REASONS**

Before the Court are Defendants Wilfred Barnhill, Brian Barnhill, Diane Barnhill (collectively, "the Barnhills"), Downhole-Surface Manufacturing, LLC, and Barnhill Industries, Inc. d/b/a Global International Tools (collectively, "the Barnhill Defendants")'s **Motion to Dismiss Pursuant to Rule 12(b)(6) (Rec. Doc. 21)**, Defendants Denise Leblanc and Daniel Triche's **Motion to Dismiss Pursuant to Rule 12(b)(6) (Rec. Doc. 22)**, Plaintiff Global Oil Tools, Inc. ("Global Oil")'s oppositions to same **(Rec. Docs. 25, 30**, respectively**)**, Defendants replies thereto **(Rec. Docs. 39, 40)**, and Plaintiff's *surreply* **(Rec. Doc. 54)**. Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that Defendants' motions should be **GRANTED in part** and **DENIED in**

1

**part** for the reasons set forth more fully below.

### PROCEDURAL HISTORY AND BACKGROUND FACTS

This action arises out of claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 *et seq.*, the Lanham Act, 15 U.S.C. § 1125 *et seq.*, state law claims for breach of fiduciary duties, civil fraud, misappropriation and conversion, tortious interference with business relations, and claims under the Louisiana Unfair Trade Practices Act ("LUTPA"), La. Rev. Stat. § 51:1401 *et seq.* On July 13, 2012, Plaintiff filed the instant suit naming as Defendants Wilfred Barnhill, Brian Barnhill, Diane Barnhill, Downhole-Surface Manufacturing, LLC, Global International Tools, Denise Leblanc ("Ms. Leblanc" or "Leblanc"), and Daniel Triche ("Mr. Triche" or "Triche").

Plaintiff's complaint alleges that Global Oil is a company that manufactures wireline tools and downhole flow control systems for the oil and gas industry. In 2005, Global Oil was purchased by Grifco International, Inc. ("Grifco"). At that time, Wilfred Barnhill was Global Oil's reported president and shareholder, responsible for the management of the company. Brian Barnhill, Wilfred Barnhill's son, was the reported vice-president, financial officer, and treasurer of Global Oil,

responsible for all financial reporting, payroll, purchasing, tracking physical inventory, signing checks and corporate tax returns, hiring, and marketing. In 2007, Lyamec Corp., Inc. acquired ownership of Global Oil from Grifco. Wilfred and Brian Barnhill remained in their respective leadership/management positions following the acquisition, and Plaintiff maintains that at all times pertinent to the complaint the two Barnhills were responsible for Global Oil's daily operations. Shortly thereafter, Diane Barnhill, Wilfred Barnhill's wife, reportedly became an employee of Global Oil as a part of the administrative staff. In addition, Plaintiff alleges that Ms. Leblanc and Mr. Triche were also employees of the Barnhills and Global Oil. Wilfred Barnhill is reported to have remained in his position as president until 2011, resigning completely from Global Oil in January 2012. Brian Barnhill remained employed by Global Oil until February 2012. Diane Barnhill resigned in January 2012.

The complaint reports that in 2005 the average sales of Global Oil remained in the range of $4 million; however, by the 2009 - 2010 tax year, average sales had dropped to $2.5 million. In the 2010 - 2011 tax year, average sales rose to $2.9 million but were coupled with large operating losses. In conjunction, Plaintiff alleges that on May 24, 2010, Wilfred and Diane

Barnhill had their company, Barnhill Industries, register the trade name Global International Tools ("GIT"), which, thereafter, allegedly engaged in competing business with Global Oil. The complaint further alleges that in January 2011, Wilfred Barnhill also registered the trade name Downhole-Surface Manufacturing ("DSM"), another competing company.

During the time period that the competing companies existed (2010 - present), Plaintiff asserts that the Barnhill Defendants, together with Ms. Leblanc and Mr. Triche, engaged in a scheme to defraud Global Oil. Specifically, Plaintiff alleges that the Defendants stole blueprints, tools, and customers from Global Oil. It asserts that as part of their scheme, Defendants engaged in acts of wire fraud and mail fraud by sending various misleading emails, disseminating misleading information over the phone, and making shipments via the competing companies to Global Oil's customers. In the complaint, Plaintiff further avers that DSM bought tools from Global Oil at steep discounts and that Global Oil paid for expenses incurred by the competing companies. All of the acts alleged in the complaint are reported to have taken place between May 24, 2010 and February 2012. Plaintiff further asserts that Defendants' activities resulted in financial injury to Global Oil, for which it seeks damages under the above-

referenced legal theories.

On August 3, 2012, the Barnhill Defendants and Mr. Triche and Ms. Leblanc filed the instant motions to dismiss asserting that Plaintiff's complaint should be dismissed for failure to properly state a claim under RICO and the Lanham Act.[1] Plaintiff replied to Defendants' motions on August 24, 2012. Subsequently, the Barnhill Defendants filed a reply thereto, asserting in the reply that the Plaintiff was barred from bringing an action due to the existence of an arbitration agreement. Plaintiff filed a *surreply* on September 17, 2012, arguing that the Barnhill Defendants' assertions about the arbitration agreement were improper, because they presented arguments that were not made in Plaintiff's opposition or in the Defendants' original motions. The Court addressed the Barnhill Defendants' arguments with respect to the arbitration agreement in an October 16, 2012 Order and Reasons (Rec. Doc. 91). Therefore, in the instant Order, the Court will only address Defendants' arguments as to Plaintiff's failure to state a claim.

## PARTIES' ARGUMENTS

Defendants assert that Plaintiff has failed to state a claim

---

[1] Defendants Triche and Leblanc also assert independent arguments for dismissing all of Plaintiff's claims against them; namely, that they are not liable because they were acting as employees of Global Oil at the time the alleged acts were committed.

upon which relief can be granted on four grounds. First, Defendants argue that Plaintiff has failed to state a proper RICO claim. Specifically, Defendants contend that (1) the complaint does not properly articulate a RICO enterprise; (2) Plaintiff fails to demonstrate a pattern of racketeering activity; and (3) there is no indication of closed-ended or open-ended continuity. Furthermore, Defendants argue that Plaintiff has failed to allege fraud with particularity and that, generally, the facts present do not support allegations of a RICO conspiracy.

With regard to Defendants' arguments that Plaintiff has failed to properly plead a RICO enterprise, Defendants contend that Count I of the complaint does not establish an association-in-fact enterprise. In particular, Defendants argue that the Plaintiff has not pled specific facts that demonstrate that the alleged association-in-fact enterprise functions as a continuing unit through either hierarchical or consensual decision-making. Moreover, Defendants assert that, to the extent that Plaintiff may have successfully pleaded that an association-in-fact enterprise, Plaintiff has failed to demonstrate that the enterprise existed for any purpose other than committing the alleged predicate offenses, which Defendants contend is required under RICO. Specifically, Defendants point to Plaintiff's

statement in Count I that the enterprise was maintained "for purposes of defrauding Global and committing the unlawful activity." (Rec. Doc. 21-1, p. 12) Lastly, Defendants also assert that Plaintiff's allegations in Count II of the complaint directly conflict with the allegations in Count I. Defendants argue that the RICO enterprises named in Count II of the complaint (DSM and GIT) are also named as RICO persons in Count I. Defendants contend that under Fifth Circuit precedent, RICO enterprises and persons must be distinct entities. Thus, because Count II was not designated as an alternative pleading, Defendants argue that the two sections are in conflict and neither can stand.

Additionally, as to Defendants' argument that Plaintiff has failed to demonstrate a pattern of racketeering activity, Defendants assert that in order for a pattern of racketeering activity to exist, the Plaintiff must demonstrate either open-ended or closed-ended continuity. Defendants contend that open-ended continuity refers to the possibility of a future threat from the RICO defendant's behavior, and closed-ended continuity refers to a substantial closed period of repeated conduct. Here, Defendants argue that because Plaintiff has admitted that none of the Defendants continue to work for Global Oil, no open-ended

continuity exists. Likewise, Defendants assert that no closed-ended continuity exists, because the period of time in which the alleged predicate activities took place is less than thirteen months and, therefore, does not qualify as substantial.

Second, Defendants assert that Plaintiff has not stated a claim for unfair competition under the Lanham Act. Specifically, Defendants argue that Plaintiff has failed to show (1) that the Defendants made a false statement of fact, and (2) that the false statement actually deceived or potentially deceived customers.

Third, Defendants argue that because the Court has no jurisdiction if the Plaintiff has failed to state a viable federal claim, the Court should not exercise supplemental jurisdiction over the remaining state law claims. In particular, Defendants contend that dismissal has been sought early in these proceedings; therefore, the Plaintiff is not prejudiced by having its state law claims dismissed.

Fourth, Defendants LeBlanc and Triche also independently assert that Plaintiff has failed to plead a cause of action against them, because they were acting within the course and scope of their employment for Global Oil at all times pertinent to the complaint. Ms. Leblanc and Mr. Triche argue that the facts alleged only support their role as employees of Global Oil. They

8

contend that because they were employees, they are not liable under any of the legal theories that Plaintiff has pleaded because they were acting at the direction of their employer. Moreover, they assert that Plaintiff has specifically failed to plead that they were "engaged in criminal wrongdoing, that they knew or should have known of any alleged theft or misappropriation, or that they injured Global Oil [] in any manner whatsoever." (Rec. Doc. 22-1, p. 2)

In response, Plaintiff makes the following arguments. First, Plaintiff contends that Count I and Count II of its complaint are not inconsistent with each other. Plaintiff asserts that pursuant to Federal Rule of Civil Procedure 8(d), it may plead multiple claims in the alternative, without regard to consistency. Therefore, Plaintiff asserts that naming DSM and GIT as persons in Count I and enterprises in Count II is not inconsistent and, even if it is inconsistent, such inconsistency is permitted by the rule. In conjunction, Plaintiff argues that Rule 8(d) does not require that the alternative claims be designated as such. Furthermore, Plaintiff contends that each count sufficiently fulfills the separateness requirement for alleging RICO persons and enterprises. Plaintiff asserts that under Count I, separateness is met because each Defendant is individually named

a RICO person and, collectively, part of the alleged association-in-fact enterprise. Plaintiff argues that courts allow such a configuration, and that the individuals are still deemed to be separate from the association-in-fact enterprise because they are merely one part of the larger organization, not the organization itself. Additionally, Plaintiff asserts that the separateness requirement is met in Count II, because the RICO persons are the individual defendants, and the RICO enterprises are the corporate defendants. Plaintiff argues that this is an acceptable RICO structure within the Fifth Circuit.

Second, Plaintiff asserts that it has sufficiently pleaded a pattern of racketeering activity with respect to the predicate acts of mail and wire fraud. In particular, Plaintiff contends that it has specifically pleaded the fraudulent scheme, detailed the instances in which emails and mailings were used to perpetuate that scheme, and stated the dates and contents of the same. As such, Plaintiff asserts that it has met the particularity requirements of Rule 9(b) and, therefore, has pleaded the requisite two predicate acts necessary for a RICO claim. Likewise, Plaintiff argues that it has also sufficiently pleaded the relatedness of the acts because it has alleged that the acts were all part of the same overlying scheme, had a

unified purpose, and did not involve isolated events.

In response to the Defendants' arguments about continuity, Plaintiff argues that it has alleged both open-ended and closed-ended continuity. Plaintiff contends that nothing in its complaint indicates that the fraud Defendants have allegedly engaged in will end just because they have left Global Oil. Rather, Plaintiff argues that Defendants still possess blueprints, samples, work product, tools, and part specifications which allow it to continue defrauding Global Oil with each use, thereby indicating that the continuity is open-ended. Moreover, Plaintiff avers that just because the Defendants have left Global Oil, it does not necessarily mean that the fraudulent mailings will cease. Specifically, Plaintiff points to an allegedly fraudulent mailing that was sent after Defendants left Global Oil. Similarly, Plaintiff also asserts that closed-ended continuity is also present. Plaintiff argues that when evaluating closed-ended continuity, the court must look beyond just the specific predicate acts and instead look to the incidents of deceit which form the underlying fraudulent scheme. Plaintiff asserts that these incidents began on May 24, 2010 when GIT was formed. Plaintiff avers that, thereafter, the fraud continued while GIT and the Barnhills conducted the competing businesses.

Furthermore, Plaintiff also notes that new discovery has produced evidence of fraudulent activities dating back until at least January 2011, thereby lending more support to the establishment of closed-ended continuity in this case.

Third, Plaintiff contends that it has also successfully pleaded that an enterprise exists because it has pleaded facts that demonstrate that the group of named Defendants had "structure, longevity, and the requisite relationships." (Rec. Doc. 25, p. 16) Additionally, Plaintiff argues that, to the extent that it has not pleaded an association-in-fact enterprise in Count I, Count II sufficiently alleges that the corporations (GIT and DSM) are enterprises, thereby satisfying the enterprise requirement of a RICO claim.

Fourth, in response to Defendants' allegations that the Plaintiff has failed to sufficiently plead a conspiracy claim, Plaintiff contends that it only has to generally allege that Defendants agreed to the overall objective of the conspiracy, not necessarily to the commitment of each individual act. Plaintiff asserts that it has met that requirement by stating in the complaint that, "in each instance, at least two of the defendants agreed to commit a substantive RICO offense and the other defendants knew of an [sic] agreed to the overall objective of

the RICO offense and agreed to facilitate that objective." (Rec. Doc. 25, p. 19)

Fifth, with respect to Defendants' Lanham Act arguments, Plaintiff asserts that it has alleged facts which fully demonstrate plausible claims for unfair competition and reverse passing off under the Lanham Act. Specifically, Plaintiff asserts that it has given numerous examples of defendants intentionally confusing customers by (1) using only the word "Global" to signify either Global Oil or GIT, (2) directing employees to do work that was for the competing companies rather than Global Oil, and (3) using Global Oil's resources and products to convert customers to the competing businesses. Likewise, Plaintiff asserts that it has demonstrated a claim for reverse passing off by alleging that GIT and DSM passed, or could have passed, Global Oil's tools and products off as their own to former and/or potential Global Oil customers.[2]

Sixth, in response to Mr. Triche and Ms. Leblanc's individual arguments, Plaintiff asserts that employees who engage in fraud, theft, conversions, and misappropriation are not

---

[2] In their reply brief, Defendants specifically argue that Plaintiff's reverse passing off claim should be dismissed because Plaintiff first alleged it in its opposition, rather than in the complaint. Additionally, Defendants argue that Plaintiff has failed to allege specific instances in which GIT and/or DSM sold Global Oil's products as their own, which Defendants assert is required for a reverse passing off claim.

acting within the course and scope of their employment and, therefore, are not granted any immunity under the "intracorporate immunity doctrine" relied on by the Defendants. Additionally, Plaintiff asserts that the complaint outlined numerous instances which demonstrate that each of the aforementioned Defendants participated in the conspiracy and had knowledge that a conspiracy existed. Moreover, with respect to Mr. Triche's and Ms. Leblanc's arguments that the complaint failed to state allegations against them under LUTPA and the legal theories of misappropriation and conversion, tortious commercial conduct, and wrongdoing of any sort, Plaintiff asserts that it specifically alleged behavior which would qualify as unfair, unscrupulous, and substantially injurious under LUTPA. Likewise, Plaintiff contends that it also pleaded numerous facts that meet the elements of the other state law claims. Lastly, in response to Defendants' arguments that they did not owe a fiduciary duty to Global Oil, Plaintiff contends that under Louisiana law, employees have an obligation of loyalty and faithfulness to employers, which Plaintiff's complaint alleges the Defendants violated.

Lastly, Plaintiff argues that if the Court does find that any part of Defendants' motions should be granted, the Court should grant leave to amend rather than dismiss the complaint

14

and/or individual claims with prejudice. Plaintiff argues that newly produced evidence may allow it to cure any defects and, moreover, that granting leave to amend is a more prudent action at this stage of the proceedings. Additionally, Plaintiff contends that even if the Court were to find that the Plaintiff had failed to state any cognizable federal claims, it should still choose to exercise supplemental jurisdiction over the state law claims, because the parties have already engaged in substantial discovery, and the Court has familiarity with the case.

**DISCUSSION**

**A. Legal Standard**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1).

Notwithstanding Rule 8's liberal pleading requirements, when a party pleads claims of fraud, such claims must be plead with particularity. FED. R. CIV. P. 9(b). The claimant must assert more

15

than mere conclusory allegations or technical elements. Id. The claim must contain "particularized allegations of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation." Castillo v. First City Bancorporation of Texas, Inc., 43 F.3d 953, 961 (5th Cir. 1994) (citing Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1139 (5th Cir. 1992)). However, Rule 9(b)'s particularity requirement should not abrogate the requirements of Rule 8, and both rules should be read in conjunction with one another. Burford v. Cargill, Inc., No. 05-0283, 2011 WL 432124, at *12 (W.D. La. Sept. 20, 2011) (citing In re Catfish Antitrust Litig., 826 F. Supp. 1019, 1029 (N.D. Miss. June 28, 1993)); 5A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1298 (3d ed.).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court must accept all well-pleaded facts as true and must draw all

reasonable inferences in favor of the plaintiff.  Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996).  The court is not, however, bound to accept as true legal conclusions couched as factual allegations.  Iqbal, 556 U.S. at 678. When evaluating a motion to dismiss, the court is usually restricted to reviewing only the complaint. Sullivan v. Leor Energy, LLC, 600 F.3d 542, 546 (5th Cir. 2010). However, in a RICO case, the court may also look to the RICO case statement. See Dennis v. Gen. Imaging, Inc., 918 F.2d 496, 511 (5th Cir. 1990); Glessner v. Kenny, 952 F.2d 702, 712 (3rd Cir. 1991).

**B.   RICO Claims 18 U.S.C. § 1962(c)**

To succeed in a claim under 18 U.S.C. § 1962(c) a plaintiff must demonstrate that (1) a person employed by or associated with (2) an enterprise engaged in interstate or foreign commerce (3) has conducted or participated in (4) a pattern of racketeering activity. 18 U.S.C. § 1962(c). The Fifth Circuit has held that a "RICO person must be one that either poses or has posed a continuous threat of engaging in the acts of racketeering." Crowe v. Henry, 43 F.3d 198, 204 (5th Cir. 1995) (quoting Delta Truck & Tractor, Inc. v. J.I. Case Co., 855 F.2d 241, 242 (5th Cir. 1989)). Generally, a RICO person is the defendant. In re

MasterCard Int'l Inc. v. Internet Gambling Litig., 132 F. Supp. 2d 468, 477 (E.D. La. 2001), aff'd, 313 F.3d 257 (5th Cir. 2002) (citation omitted). A RICO enterprise can either be an actual legal entity, or it can be an association-in-fact. Elliott v. Foufas, 867 F.2d 877, 881 (5th Cir. 1989). The enterprise must be distinct from the defendant, and it must exist "separate and apart from the pattern of activity in which it engages." Id. (quoting Atkinson v. Anadarko Bank & Trust Co., 808 F.2d 438, 441 (5th Cir. 1987)). To show a pattern of racketeering activity, a plaintiff must plead at least two predicate racketeering acts that are related and that either amount to, or threaten the likelihood of, continued criminal activity. H.J. v. Northwestern Bell, 492 U.S. 229, 239 (1989).

As a preliminary matter, the Court addresses the Defendants' arguments regarding to the incompatibility of Plaintiff's pleadings in Count I and Count II of the complaint. Rule 8(d) states that,

> A party may set out 2 or more statements of a
> claim or defense alternatively or hypothetically,
> either in a single count or defense or in separate
> ones. If a party makes alternative statements, the
> pleading is sufficient if any one of them is

> sufficient. . . . A party may state as many
> separate claims or defenses as it has, regardless
> of consistency.

Fed. R. Civ. Proc. 8(d)(2)(3).

In addition, Rule 8(d)(1) states that "[n]o technical form [of pleading] is required." Fed. R. Civ. Proc. 8(d)(1). As such, the Court finds that Defendants' arguments with respect to the inconsistencies between Count I and Count II are without merit. The Plaintiff is allowed to set out alternative statements regardless of whether they are designated as alternative, and regardless of whether they are consistent with each other. Therefore, if either one of the scenarios set out in Count I or Count II sufficiently alleges a RICO claim, then the Court may find that Plaintiff has sufficiently pleaded a claim under 18 U.S.C. § 1962(c).

### i. RICO 18 U.S.C. § 1962(c) Claim: Pattern of Racketeering Activity

To demonstrate a pattern of racketeering activity, a plaintiff must allege at least two predicate acts that are related and that amount to, or threaten the likelihood of,

19

continued criminal activity. <u>H.J. Inc.</u>,492 U.S. at 238-39. Predicate "acts are related if they 'have the same or similar purposes, results, participants, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" <u>Calcasieu Marine Nat. Bank v. Grant</u>, 943 F.2d 1453, 1463-64 (5th Cir. 1991) (quoting <u>H.J. Inc.</u>, 492 U.S. at 240). Continuity may be either open-ended or closed-ended. <u>Calcasieu</u>, 943 F.2d at 1464. Closed-ended continuity refers to continuity demonstrated by "a series of related predicates extended over a substantial period of time." <u>Id.</u> There is no set time requirement for a substantial period of time; however, "acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the] requirement." <u>H.J., Inc.</u>, 492 U.S. at 242. Open-ended continuity refers to "past conduct that by its nature projects into the future with the threat of repetition." <u>Calcasieu</u>, 943 F.2d at 1464. In cases of open-ended continuity the question is "whether the *threat* of continuity is demonstrated." <u>H.J., Inc.</u>, 492 U.S. at 242 (citing S. Rep. No. 91-617, at 518). Continuity can also be demonstrated "where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business . . . or of conducting or participating in an ongoing

and legitimate RICO enterprise.'" <u>H.J., Inc.</u>, 492 U.S. at 243. Mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, and interstate transportation of stolen goods in violation of 18 U.S.C. §§ 2314, 2315 qualify as predicate acts for a RICO claim. 18 U.S.C. § 1961. Mail fraud and wire fraud are defined as (1) a scheme to defraud (2) involving the use of mail/wire communications (3) used for the purposes of executing the scheme. <u>United States v. Bueno</u>, 450 F.'App'x 391, 392 (5th Cir. 2011); <u>United States v. Rush</u>, 236 Fed. App'x 944, 947 (5th Cir. 2007).

Plaintiff alleges that Defendants have committed the predicate acts of wire fraud, mail fraud, and transportation of stolen goods. Specifically, Plaintiff asserts that Defendants committed wire fraud when Ms. Leblanc gave a Global Oil customer/potential customer false information about Global Oil's inventory over the phone, and then directed the customer to the competing DSM; when Wilfred Barnhill used his Global Oil email to give a customer a GIT quote for tools in March 2012; and to generally conduct business in both of the competing companies in furtherance of their scheme to defraud Global. (Complaint, Rec. Doc. 1, pp. 9-11, 29, ¶¶ 34, 38, 97) Likewise, in asserting the predicate act of mail fraud, Plaintiff claims that Defendants

committed mail fraud when they caused Global Oil to ship products to Wyoming on behalf of DSM; when they mailed false shipping invoices on August 11, 2011 and August 22, 2011; and to generally conduct business in both of the competing companies in furtherance of their scheme to defraud Global. (Complaint, Rec. Doc. 1, pp. 10, 13-14, 29-30, ¶¶ 36, 46-48, 98) Plaintiff also alleges that Defendants transferred stolen goods when they shipped over $5,000 worth of shock absorbers to a California company in March 2012. (Complaint, Rec. Doc. 1, p. 30, ¶ 99)

Looking at Plaintiff's allegations on whole, Plaintiff has alleged at least five specific predicates acts which occurred, at a minimum, over a course of eight months. In addition, to the specific acts that Plaintiff has alleged, Plaintiff has also generally alleged that Defendants used these and other predicate acts to conduct their overall business and fraud on Global Oil. Under the more general allegations, the time frame for the predicate acts extends out over at least a two year period, from May 24, 2010, when Wilfred and Diane Barnhill allegedly registered GIT with the secretary of state (presumably by mail or wire), until May 7, 2012, when Plaintiff allegedly received an invoice for services falsely attributed to Global Oil. (See Complaint, Rec. Doc. 1, pp. 7-8, 30, ¶¶ 26, 101) As alleged, all

22

of these acts appear to have been for the same or similar purposes (defrauding Global Oil), have reached the same results (defrauding Global Oil), and have included the same participants (the Barnhill Defendants and Ms. Leblanc)[3] and victim (Global Oil). Therefore, the acts are not isolated incidents but, rather, are related. Likewise, Plaintiff has alleged that the commission of the predicate acts was a regular way in which Defendants conducted their business for at least two years, and the facts alleged, taken in the light most favorable to the Plaintiff, demonstrate as much. As such, the Court finds that Plaintiff has sufficiently established the necessary element of continuity over a closed-ended period of time.[4] Therefore, the Court finds that

---

[3] The Court notes that there is no specific mention of Mr. Triche with reference to either the acts of wire fraud or mail fraud. The complaint does assert that Mr. Triche was involved in stealing tools; however, it does not actually state that the stolen tools constitute a violation of 18 U.S.C. § 2314, transportation of stolen goods. Therefore, to the extent that the complaint alleges a pattern of racketeering activity, it does not sufficiently allege that Mr. Triche was a part of that pattern of activity. Conversely, although the foregoing examples do not reference Brian Barnhill, the complaint does include him as a participant in these predicate acts. For example, he is alleged to have caused invoices for deliveries to GIT to be fraudulently mailed to and billed to Global Oil. (Complaint, Rec. Doc. 1, p. 13, ¶ 46)

[4] Although the Court makes no formal finding as to open-ended continuity, it notes that it finds Plaintiff's arguments on this point persuasive. There is at least one reference to a predicate act which occurred after Wilfred Barnhill left his position at Global Oil. (See Complaint, Rec. Doc. 1, p. 11, ¶ 38) Taking this as true, it essentially negates Defendants' arguments that all harm and threat of harm to the Plaintiff has ceased because the Defendants no longer work at Global Oil. Likewise, Plaintiff's arguments about the threat of harm caused by the stolen intellectual property, tools, and blueprints, all of which are alleged to be part of the larger scheme to defraud Global Oil, also indicate that the harm in this case could project out into the future and, thereby, satisfy the requirement of open-ended continuity.

Plaintiff has sufficiently pleaded a pattern of racketeering activity as to the Barnhill Defendants and Ms. Leblanc. Plaintiff has failed to sufficiently plead that Mr. Triche was involved in a pattern of racketeering activity.

With respect to Defendants' arguments as to the sufficiency of the pleadings under Rule 9(b), the Court notes that the pleading requirement under Rule 9(b) must be read in conjunction with the more liberal notice pleading requirements of Rule 8. In general, the Plaintiff has stated the time, place, and manner for each of the aforementioned predicate acts.[5] To the extent that a specific date is missing from an alleged act, the participants in the act have been listed and vice-versa. Moreover, a detailed description of the fraudulent activity has been given, such that the Defendants should be able to identify the act in question for the purposes of discovery. Likewise, the listed acts provide a sound basis for placing Defendants on notice as to other alleged

---

[5] For example, Plaintiff asserts that in January 2012 Defendant Brian Barnhill utilized his GIT email address to quote an order to a customer, and that later, on March 14, 2012, the customer responded to Defendant Wilfred Barnhill via his Global Oil email regarding the quote. (Rico Case Statement, Rec. Doc. 14, pp. 7-8); (Complaint, Rec. Doc. 1, p. 11, ¶ 38) Likewise, Plaintiff refers to mailings sent on August 11, 2011, August 22, 2011, and May 7, 2012, which were falsely billed to Global Oil. The mailings specifically reference GIT, Wilfred Barnhill, and Brian Barnhill. (Rico Case Statement, Rec. Doc. 14, p. 8) Likewise, the complaint notes that Ms. Leblanc, over the phone, also directed customers (specifically, the customer that was billed in the August invoice exchange) to bill to Global Oil rather than the rival companies. (Rico Case Statement, Rec. Doc. 14, p. 8); (Complaint Rec. Doc. 1, p. 14, ¶ 49)

activities which occurred between 2010 and 2012 as part of the overall fraudulent scheme and are at issue in this suit. Therefore, the Court finds that the allegations of fraud against the Barnhill Defendants and Ms. Leblanc have been pleaded with sufficient particularity.[6]

### ii.  RICO 18 U.S.C.  § 1962(c) Claim: Enterprise

As previously noted, a RICO enterprise can be a legal entity, such as a corporation or partnership or an association-in-fact enterprise. Elliott, 867 F.2d at 881. Where a legal entity is the defendant, it may not be both a person and an enterprise under RICO. See St. Paul Mercury Inc., Co. v. Williamson, 224 F.3d 425, 447 (5th Cir. 2000). Nevertheless, "'[a]lthough a [corporate] defendant may not be both a person and an enterprise, an [individual] defendant may be both a person and a part of an enterprise. In such a case, the individual defendant is distinct from the organizational entity.'" Id. (quoting United States v. Fairchild, 189 F.3d 769, 777 (8th Cir. 1999)).

An association-in-fact enterprise is an (1) ongoing

---

[6] The Court notes that its analysis on this point also applies to the allegations of civil fraud raised against Defendants Triche and Leblanc. As discussed, Plaintiff has presented with sufficient particularity that Defendant Leblanc misrepresented a material fact that resulted in injury to the Plaintiff, when she allegedly lied about products manufactured by Global and directed customers to send DSM/GIT invoices to Global. (Complaint, Rec. Doc. 1, pp. 9-10, 14, ¶¶ 34, 39) As to Defendant Triche, the Court finds that the Plaintiff has failed to sufficiently allege fraud.

organization that (2) exists "separate and apart from the [alleged] pattern of racketeering;" and (3) "function[s] as a continuing unit as shown by a hierarchical or consensual decision making structure." Montesano et al. v. Seafirst Commercial Corp. et al., 818 F.2d 423, 426-27 (5th Cir. 1987). The organization may be formed for the purpose of engaging in either legitimate or illegitimate conduct. United States v. Turkette, 452 U.S. 574, 583-87 (1981). While the organization must have a consensual decision making structure, the United States Supreme Court has stated that the structure need not have a distinct "chain of command," decisions can be made on an "ad-hoc basis," members of the association "need not have fixed roles," and that, "[w]hile the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing [precludes those] whose associates engage in spurts of activity punctuated by periods of quiescence." Boyle v. United States, 129 S. Ct. 2237, 2245-46 (2009). "[T]wo individuals who join together for the commission of one discrete criminal offense have not created an "association-in-fact" enterprise, even if they commit two predicate acts during the commission of this offense, because their relationship to one another has no continuity." Montesano, 818 F.2d at 427. However, "'if the individuals associate together

to commit several criminal acts, their relationship gains an ongoing nature, coming within the purview of RICO.'" <u>Ocean Energy II, Inc. v. Alexander & Alexander, Inc.</u>, 868 F.2d 740, 749 (5th Cir. 1989) (quoting <u>Montesano</u>, 818 F.2d at 427).

In Count I, Plaintiff alleges that DSM, GIT, Wilfred Barnhill, Brian Barnhill, Diane Barnhill, Ms. Leblanc, and Mr. Triche are all RICO persons. Likewise, Plaintiff alleges that all of these same Defendants "formed, maintained, and continue to maintain a close interlocking association [-in-fact enterprise] for purposes of defrauding Global and committing the unlawful activity as set forth in [the complaint]." (Complaint, Rec. Doc. 1, p. 25, ¶ 87) Throughout the complaint, Plaintiff also alleges that at various points, Ms. Leblanc and Mr. Triche worked at the direction of Wilfred Barnhill, Wilfred Barnhill and Brian Barnhill worked in concert with one another, and Wilfred Barnhill and Diane Barnhill worked together — all in the process of defrauding Global Oil.[7] The complaint indicates that it was the

---

[7] For example, the complaint states that Wilfred and Diane Barnhill registered the competing GIT together. (Complaint, Rec. Doc. 1, p. 7, ¶ 25) Likewise, it states that Ms. Leblanc, at the direction of Wilfred Barnhill, asked other employees at Global Oil to work on tools for Wilfred Barnhill, and that Wilfred Barnhill directed Mr. Triche to take certain tools. (Complaint, Rec. Doc. 1, p. 16, ¶¶ 55, 59) Additionally, both Ms. Leblanc and Mr. Triche are alleged to currently be working in some capacity for Wilfred Barnhill and/or his companies GIT or DSM. (Complaint, Rec. Doc. 1, pp. 9-10, 18, ¶¶ 34, 62) The complaint also alleges that Brian Barnhill acted in concert with Wilfred Barnhill to cover up the defrauding. (Complaint, Rec. Doc. 1, pp. 22-24, ¶¶ 75-84)

actions of all of these individuals, working together, which lead to the defrauding of Global Oil. As such, it appears that Plaintiff has met its burden in pleading that the alleged association-in-fact enterprise functioned as a continuing unit and for long enough to maintain a specific course of conduct. See Boyle, 129 S. Ct. at 2245-46.

Nevertheless, the Court notes that while each individual member of the association-in-fact enterprise may also be a RICO person/defendant, the same is not true for the corporate Defendants, DSM and GIT. The Fifth Circuit has explained that listing a corporation as a RICO defendant and as part of a RICO association-in-fact enterprise violates the person/enterprise distinction that is required by 28 U.S.C. § 1962(c), which requires that an "enterprise [] be more than an association of individuals or entities conducting the normal affairs or a defendant corporation." St. Paul Mercury Ins. Co., 224 F.3d at 447 n. 16 (stating that "[c]ourts have roundly criticized [the] formul[a]" of having the corporation serve as a RICO person/defendant and a part of an association-in-fact enterprise (citations omitted)). Therefore, the Court finds that while an association-in-fact of all the individual Defendants and/or the individual and corporate Defendants may exist, as currently

28

pleaded, Count I fails because the corporate Defendants cannot be both a RICO person and a part of the RICO association-in-fact enterprise. Therefore, this section of the complaint fails to properly establish a RICO association-in-fact enterprise.[8]

Likewise, Count I also alleges that the association-in-fact enterprise exists "for the purposes of defrauding Global and committing the unlawful activity as set forth [in the complaint]." (Complaint, Rec. Doc. 1, p. 25, ¶ 87) Fifth Circuit precedent makes it clear that individuals who join together for the commission of one discrete offense have not successfully created an association-in-fact enterprise, because the association of the individuals has no continuity.[9] In particular, the Fifth Circuit has stated that once the discrete act has been committed, the association, if it has only come together for one purpose, will likely disband. Id. In the instant case, while Plaintiff has pleaded that the individual members of the association committed multiple predicate acts, Plaintiff has also

---

[8] Additionally, the Court also notes that although Mr. Triche may form a part of the RICO enterprise, he cannot be named as a RICO Defendant/person under 18 U.S.C. § 1962(c) since Plaintiff did not plead sufficient facts to demonstrate that he engaged in a pattern of racketeering activity.

[9] See Montesano, 818 F.2d at 427. It should be noted that the continuity necessary for the establishment of an association-in-fact enterprise is different from the continuity necessary for the establishment of a patter of racketeering activity.

indicated that these acts were directed at one discrete goal —
defrauding Global Oil. Plaintiff has not alleged any other
economic goal or purpose, or that the association-in-fact
extended beyond the acts of fraud and theft; therefore, the Court
finds that the Plaintiff has failed to effectively plead the type
of continuity necessary to establish a RICO association-in-fact
enterprise in Count I.[10]

Nevertheless, as currently pleaded, Count II does
effectively establish the required RICO person/enterprise
distinction. In Count II, Plaintiff alleges that Wilfred
Barnhill, Diane Barnhill, and Brian Barnhill are the RICO
persons. (Complaint, Rec. Doc. 1, p. 32, ¶ 110) Plaintiff also
alleges that GIT and DSM are the enterprises. (Complaint, Rec.
Doc. 1, p. 33, ¶ 111) Additionally, Count II does not allege that
the sole purpose of GIT and DSM was to defraud Global Oil. (See

---

[10] See id. (citing to the United States' Attorney's Manual which instructs
attorneys that,

> No RICO count of an indictment shall charge the enterprise as a
> group associated in fact, unless the association-in-fact has an
> ascertainable structure which exists for the purpose of maintaining
> operations directed toward an economic goal, that has an existence
> that can be defined apart from the commission of the predicate acts
> constituting the patterns of racketeering activity.

United States Attorney's Manual, Title 9-Criminal Division, Guideline No. 9-
110.360); see also, Crowe v. Henry, 43 F. 3d 198, 205 (5th Cir. 1995) (noting
that an association-in-fact existed where plaintiff alleged that the individual
members joined together to form a farming venture and their association extended
*beyond* the  members acts of fraud and theft).

generally, Complaint, Rec. Doc. 1, pp. 32-33) Therefore, the Court finds that Plaintiff has sufficiently alleged a cognizable federal claim under RICO against Defendants Wilfred Barnhill, Diane Barnhill, and Brian Barnhill.[11]

Moreover, because it appears that the Plaintiff could also establish a proper association-in-fact enterprise under some variation of the Count I person/enterprise construction and/or by more clearly defining the nature of the alleged enterprise, the Court finds that rather than dismissing the Plaintiff's complaint, the proper course of action is to allow Plaintiff leave to amend Count I to attempt to cure the defects in the complaint as it currently stands.[12] Furthermore, because Plaintiff's federal cause of action is preserved, the Defendants face no potential prejudice by allowing Plaintiff the opportunity to amend its other allegations under RICO.

## C.   RICO Claims 18 U.S.C. § 1962(d)

Subsection 1962(d) of the RICO statute makes it unlawful "for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of [section 1962]." 18 U.S.C. §

---

[11] Because Count II does not list Ms. Leblanc as a RICO person/defendant, the Court finds that the current construction of the complaint contains no cognizable RICO claims against her.

[12] Federal Rule of Civil Procedure 15 indicates that leave to amend should be freely given when justice so requires.

1962(d). To successfully allege that a defendant has engaged in a RICO conspiracy, a plaintiff must plead that (1) "'two or more people agreed to commit a substantive RICO offense,'" and that (2) the defendants "'knew of and agreed to the overall objective of the RICO offense.'" Chaney v. Dreyfus Serv. Corp., 595 F.3d 219, 239 (5th Cir. 2010) (quoting United States v. Sharpe, 193 F.3d 852, 869 (5th Cir. 1999)). The core of a RICO conspiracy is the allegation of an agreement between the alleged conspirators to commit the predicate acts. Abraham v. Singh, 480 F.3d 351, 357 (5th Cir. 2007) (citing Crowe, 43 F.3d at 206). Conclusory allegations of an agreement or conspiracy are not sufficient, the plaintiff must allege "facts implying an agreement to commit predicate acts of racketeering." Crowe, 43 F.3d at 206.

Plaintiffs allege that the RICO Defendants "agreed and conspired to violate 18 U.S.C. § 1962(c)," and that the Defendants "knowingly and intentionally furthered the conspiracy." (Complaint, Rec. Doc. 1, p. 33, ¶ 115) In support of this allegation, Plaintiff incorporates the facts outlined in the preceding sections. For example, Plaintiff alleges that (1) that Brian and Wilfred Barnhill worked together to cover up the fraud from the parent Lyamec Corp. and (2) that Wilfred and Diane Barnhill registered the corporation GIT together.(See generally,

Complaint, Rec. Doc. 1) Together, these facts support Plaintiff's more general allegation that at various points, each of the Defendants was in agreement with at least one other Defendant to defraud Global Oil via some commission of a predicate act. As such, the Court finds that Plaintiff has sufficiently alleged a conspiracy against the Barnhills under 18 U.S.C. § 1962(d).[13]

   **D.   Lanham Act Claims**

   The Lanham Act creates a federal remedy against any person who uses "a word, term, name, symbol . . . false designation of origin, false or misleading description of fact, or false or misleading representation of fact" in commerce, in connection with any goods or services, which is likely to cause confusion, mistake, or may "deceive as to the affiliation, connection, or

---

[13] Plaintiff has failed to successfully allege a conspiracy against Mr. Triche because it failed to successfully allege that he violated 18 U.S.C. § 1962(c). Likewise, as the corporate Defendants, GIT and DSM, and Ms. Leblanc are not alleged to be RICO defendants under Count II, they also have not violated 18 U.S.C. § 1962(c) and, therefore, cannot be found to have violated 18 U.S.C. § 1962(d). Additionally, the Court also finds that Ms. Leblanc and Mr. Triche's independent arguments with respect to Plaintiff's failure to state a claim for conspiracy against them are not persuasive. In particular, the Court notes that the proposition espoused by Ms. Leblanc and Mr. Triche — that as a matter of law they cannot be held liable for conspiracy because they were employees of Global Oil — is highly contested with respect to RICO conspiracy claims, and it has also been called into doubt by the Supreme Court. See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163 (2001) (stating that lower-level employees of a corporation are both legally and linguistically speaking, separate from a corporation, particularly when the employee conducts the acts of the corporation illegally as alleged in the instant case and, therefore, implying that where an employee could meet the separateness requirements under 18 U.S.C. § 1962( c), he or she could also necessarily be found liable under 18 U.S.C. § 1962 (d)). As such, in the absence of clear authority, this Court declines to dismiss Plaintiff's claims against Defendants Leblanc and Triche on those grounds.

33

association" of that person with the goods or services. 15 U.S.C. § 1125(a)(1)(A). The Lanham Act includes claims for unfair competition and reverse passing off. <u>See</u> <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23, 29 (2003).

### i. Unfair Competition

In order to bring a federal claim for unfair competition, a Plaintiff must allege that: (1) the defendants made false statements of fact about [a product]; (2) those statements deceived, or had the potential to deceive, a substantial segment of potential customers; (3) the deception was material, in that it tended to influence purchasing decisions; (4) the defendants caused their products to enter interstate commerce; and (5) the claimant has been, or is likely to be, injured as a result. <u>King v. Ames</u>, 179 F.3d 370, 373-74 (5th Cir. 1999) (citing <u>Taquino v. Teledyne Monarch Rubber</u>, 893 F.2d 1488, 1500 (5th Cir. 1990)). "Likelihood of confusion" is the essential element for a claim of unfair competition. <u>King</u>, 179 F.3d at 374. In determining whether a likelihood of confusion exists, the court considers a variety of nonexhaustive factors, such as: the "similarity of products, identity of retail outlets and purchasers, identity of advertising media, type (i.e., strength) of trademark or trade dress, defendant's intent, similarity of design, and actual

confusion." <u>Sno-Wizard Mfg., Inc. v. Eisemann Prod. Co.</u>,791 F.2d
423, 428 (5th Cir. 1986) (citing <u>Falcon Rice Mill, Inc. v. Comm.
Rice Mill, Inc.</u>, 725 F.2d 336, 345 (5th Cir. 1984))." "[A]lthough
a showing of actual confusion is not mandatory, it is 'patently
the best evidence of likelihood of confusion.'" <u>Louisiana World
Exposition, Inc. v. Logue</u>, 746 F.2d 1033, 1041 (5th Cir. 1984)
(quoting <u>Falcon Rice Mill</u>, 725 F.2d at 345).

In the instant case, Plaintiff alleges that Defendants made
false statements about Global Oil by directing customer calls to
their cell phones and answering the calls as "Global" in order to
also take calls for GIT and, on one specific occasion, falsely
telling a customer that Global Oil did not make a specific tool,
but that the competing DSM did make the tool. (Complaint, Rec.
Doc. 1, pp. 7-10, ¶¶ 26, 34 (referring specifically to Defendant
Leblanc)). Likewise, Plaintiff has alleged that those statements
deceived and/or had the potential to deceive, by showing that
emails were sent to Global Oil accounts in regard to GIT products
and that orders were improperly billed to the wrong company.
(Complaint, Rec. Doc. 1, pp. 11, 13-14, ¶¶ 38, 46-47 (referring
specifically to Wilfred and Brian Barnhill)). Plaintiff has also
reported that due to these and other actions of the Defendants,
it suffered substantial operating losses and lost customers and,

moreover, that products from the competing companies (or Global Oil products disguised as products from the competing companies) were sold and shipped out of state. (Complaint, Rec. Doc. 1, pp. 6, 10-11, ¶¶ 19, 36, 39) All of these facts, taken as true, indicate that the Defendants use of the competing companies and the practices associated with their use of those companies, did actually confuse purchasers and potential purchasers of Plaintiff's products.(See Complaint, Rec. Doc. 1, p. 8, ¶ 29 (noting that trucks making deliveries to GIT often mistakenly arrived at Global Oil)). As such, the Court find that Plaintiff has successfully pleaded a claim of unfair competition under the Lanham Act.[14]

### ii.      Reverse Passing Off

Reverse passing off is a type of unfair trade practice

_____

[14] This claim encompasses all Defendants as all are alleged to have participated in the overall confusion of customers. In addition to the instances mentioned in the text, it should also be noted that Diane Barnhill allegedly participated by establishing the competing GIT company, which facilitated the confusion due to the similarity of the names of the companies. (See Complaint, Rec. Doc. 1, p. 7, ¶ 25) Likewise, Defendant Triche is alleged to have participated by stealing the tools which were allegedly used by either GIT or DSM, which also contributed to the confusion and unfair trade practices. (See Complaint, Rec. Doc. 1, pp. 17-18, ¶¶ 59, 62) Moreover, the Court notes that the law governing unfair trade practices makes no distinction as to the individual Defendant's roll in the practices, i.e. employee versus employer. Furthermore, the case cited by Defendants Leblanc and Triche as supporting the proposition that employees cannot be held liable, actually indicates that regardless of whether a person is acting on behalf of a corporation or not, they are not relieved of individual responsibility. Eng'g Dynamic, Inc. v. Structural Software, Inc., 26 F.3d 1335, 1350 (5th Cir. 1994) (citing Mead Johnson & Co. v. Baby's Formula Serv., Inc., 402 F.2d 19, 23 (5th Cir. 1968)).

encompassed under the Lanham Act. Roho, Inc. v. Marquis, 902 F.2d 356, 360 (5th Cir. 1990). Reverse passing off occurs when a "producer misrepresents someone else's goods or services as his own." Dastar, 539 U.S. at 27 n.1. "A defendant may also be guilty of reverse [passing] off by selling or offering for sale another's product that has been modified slightly and then labeled with a different name." Roho, Inc., 902 F.2d at 359. To adequately assert a claim for reverse passing off, the plaintiff must allege facts that plausibly lead to an inference that the defendant took tangible items from the plaintiff and passed them off as his or her own. Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 149 (5th Cir. 2004).

Plaintiff alleges that DSM purchased Global Oil's products at a discount and, on at least one occasion, shipped them to another purchaser, with the implication being that the products were represented as DSM's products. (Complaint, Rec. Doc. 1, pp. 10-11, ¶¶ 36, 37) As such, the Court finds that the Plaintiff has sufficiently stated a cognizable claim for reverse passing off against DSM.[15]

_____

[15] With respect to Defendants' argument that Plaintiff did not raise a claim for reverse passing off in the complaint but, rather, waited until the submission of its opposition memorandum, the Court notes that the complaint broadly raises a claim under the Lanham Act that is consistent with the facts alleged in the complaint. While the section of the complaint which references the Lanham Act does primarily indicate that the claim raised is one for unfair trade

### E.    Supplemental Jurisdiction

When a district court has original jurisdiction over an action, it is also given supplemental jurisdiction over any claims that are related to the claims in the action before it, when they form part of the same case or controversy. 28 U.S.C. § 1367. A district court may decline to exercise that supplemental jurisdiction under four circumstances: (1) when "the claim raises a novel or complex issue of State law; (2) [when] the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) [when] the district court has dismissed all claims over which it has original jurisdiction; or (4) [when] there are other compelling reasons for declining jurisdiction." Id.

The Court has original jurisdiction over the claims in this action pursuant to RICO and the Lanham Act, therefore, it also has supplemental jurisdiction over the state law claims. Furthermore, the Court finds that none of the aforementioned circumstances for declining to exercise that jurisdiction apply to this case. As such, the Court finds that it has jurisdiction over the state law claims asserted in the Plaintiff's complaint.

---

practices, the above-referenced facts of the complaint are clearly consistent with a reverse passing off; therefore, the Court finds that per the liberal notice requirements of Rule 8, Defendants were on notice of a reverse passing off claim from the time that the initial complaint was filed.

**F.    Defendant Leblanc and Triche's Independent Arguments on Plaintiff's State Law Claims**

    **i.    Louisiana Unfair Trade Practices Act**

The Louisiana Unfair Trade Practices Act ("LUTPA") makes it unlawful for any person to engage in unfair competition and/or "deceptive acts" when conducting trade or commerce.[16] In order to establish a claim under LUTPA, a plaintiff must demonstrate that the defendant has engaged in conduct which "offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious." Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc., 2009-1633 (La. 4/23/10), 35 So. 3d 1053, 1059 (quoting Moore v. Goodyear Tire & Rubber Co., 364 So. 2d 630, 633 (La. App. 2 Cir. 1978). The statute does not specifically define or enumerate the acts and practices that constitute unfair competition or deceptive acts; rather, courts make a determination on a case-by-case basis. Levine v. First Nat. Bank of Commerce, 2006-0394 (La. 12/15/06); 948 So. 2d 1051, 1065 (citing Jarrell v. Carter, 557 So. 2d 120, 123 (La. App. 1 Cir. 1991)). "[T]he range of prohibited practices under LUTPA is

---

[16] LA. REV. STAT. § 51:1405(A). Under the act, a "person" is defined as "a natural person, corporation, trust, partnership, incorporated or unincorporated association, and any other legal entity." Id. § 1402.

extremely narrow." Cheramie Servs., Inc., 35 So. 2d at 1060. "[O]nly egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA." Id. The Fifth Circuit has stated that "under LUTPA [,] the Louisiana courts appear to zealously guard against allowing managers, employees, and persons in a special position of trust to profit from their wrongdoing." Reingold v. Swiftships, Inc., 126 F.3d 645, 653 (5th Cir. 1997) (citations omitted).

Defendants Triche and Leblanc have argued that the Plaintiff has failed to state a LUTPA claim against them because, as alleged, they were acting as employees of Global Oil and at the direction of the Barnhills at all times relevant to the complaint. The Court finds that Defendants' argument on this point is without merit. As demonstrated, the language of LUTPA is broad in scope, and claims are not restricted only to mangers, employers, shareholders, etc. of corporations. See LA. REV. STAT. § 51:1402 (including any natural person in the definition of persons to whom the act is applicable). Rather, claims can be brought against persons who have engaged in "actions involving elements of fraud, misrepresentation, deception, or other unethical conduct." Cheramie Servs., Inc., 35 So. 2d at 1060. In

the instant case, Plaintiff has alleged that Ms. Leblanc participated in a scheme to defraud Global Oil, that she committed unlawful conduct (namely, the predicate act of wire fraud), that she misrepresented the company in her phone conversations with customers, and that she diverted customers to the competing companies. (Complaint, Rec. Doc. 1, pp. 9-10, 14, ¶¶ 34, 39) As such, the Court finds that Plaintiff has sufficiently pleaded its LUTPA claim against Ms. Leblanc. Likewise, Plaintiff has alleged that Defendant Triche stole from Global Oil (an action that is unlawful and, thus, unethical), and that the products stolen from Global Oil were misrepresented as GIT and/or DSM's products. (Complaint, Rec. Doc. 1, pp. 16 - 18, ¶¶ 55, 59, 62-63) Therefore, the Court also finds that the Plaintiff has sufficiently pleaded its LUTPA claim against Mr. Triche.

### ii.    Breach of Fiduciary Duties

Under Louisiana law, an employee owes a duty of good faith to his or her employer. Texana Oil & Refining Co. v. Belchic, 90 So. 522, 527 (La. 1922). An employee's duty of good faith is limited to fidelity and loyalty, and only rises to the level of a fiduciary duty where the employee is also an agent of the employer. See ODECO Oil & Gas Co. v. Nunez, 532 So. 2d 453, 462

(La. App. 1 Cir. 1988). An employee's duty of loyalty means that the employee is "duty bound not to act in antagonism or opposition to the interest of the employer." Restivo v. Hanger Prosthetics & Orthotics, Inc., 483 F. Supp. 2d 521, 534 (E.D. La. 2007). As such, the employee is precluded from diverting an employer's business, soliciting an employer's customers, and/or using confidential information that was acquired from the employer, while still employed for the employer. Huey T. Littleton Claims Serv., Inc. v. McGuffee, 497 So. 2d 790, 794 (La. App. 3 Cir. 1986); Dufau v. Creole Eng'g, Inc., 465 So. 2d 752, 758 (La. App. 5 Cir. 1985). In general, the question of whether or not an employee has breached his duty to his employer "has been contemplated in instances when an employee has engaged in dishonest behavior or unfair trade practices for the purpose of his own financial or commercial benefit." Restivo, 483 F. Supp. 2d at 534. Therefore, the question of whether or not an employee has breached his or her fiduciary duty is necessarily folded into the question of whether or not an employee has acted in violation of LUTPA. Id.

In the instant case, the Court finds that Defendants Triche and Leblanc's arguments that they have no duty to Global Oil as employees fails. Louisiana law clearly provides that employees

have a duty of good faith and loyalty to their employers and that, while employed, employees must uphold that duty. See Texana Oil & Refining Co., 90 So. 522 at 527; ODECO Oil & Gas Co., 532 So. 2d at 462. Moreover, as noted, the question of whether or not an employee has breached his or her fiduciary duty is necessarily folded into the question of whether or not an employee has violated LUTPA. Therefore, because the Court has already determined that the Plaintiff has sufficiently pleaded its LUTPA claims against Defendants Leblanc and Triche, the Court also finds that the Plaintiff has sufficiently pleaded that Leblanc and Triche breached their duty of good faith and loyalty to Global Oil.

### iii.    Misappropriation and Conversion

Conversion is a delictual action which occurs when an individual (1) acquires possession of an object in an unauthorized manner; (2) removes the object from its original location and places it in another location with the intent to exercise control over the object; (3) the acquired possession is unauthorized; (4) the individual withholds possession from the owner of the object; (5) the object is either altered or destroyed; (6) the object is used improperly; or (7) the individual asserts ownership over the object. Dual Drilling Co.

v. Mills Equip. Inv., Inc., 98-0343 (La. 12/1/98); 721 So. 2d
853, 857 (citing FRANK L. MARAIST & THOMAS C. GALLIGAN, LOUISIANA TORT
LAW § 1-2, at 3 (1998)). The action of conversion constitutes an
act of ownership over another individual's property that is
inconsistent with the true owner's rights. Louisiana Health Care
Grp., Inc. v. Allegiance Health Mgt., Inc., 09-1093 (La. App. 3
Cir. 3/10/10); 32 So. 3d 1138, 1143.

   Plaintiff has alleged that Defendants Leblanc and Triche
took work products, tools, and blueprints from Global Oil and
moved them to another location, i.e. outside of the Global Oil
facility and/or to a storage unit located on Wilfred Barnhill's
property. (Complaint, Rec. Doc. 1, pp. 16-19, ¶¶ 34, 49, 55, 59,
66) Likewise, Global Oil has indicated that it did not authorize
the removal of the objects. While the Plaintiff's complaint does
not specifically assert that Ms. Leblanc and Mr. Triche have
exercised ownership over the objects, it does allege that the
items have not been returned to Global Oil's possession. (See
Complaint, Rec. Doc. 1, pp. 16-19, ¶¶ 34, 49, 55, 59, 66 (noting
that the items have "disappeared")) Under Louisiana law,
"subsequent refusal to surrender [] goods to one who is entitled
to them may constitute conversion;" therefore, the Court finds
that the Plaintiff has sufficiently plead its claims of

44

conversion against Ms. Leblanc and Mr. Triche.[17]

### iv.   Tortious Interference with Business Relations

In order to state a claim for tortious interference with business relations, a plaintiff must allege "that a defendant improperly and maliciously influenced others not to deal with him." Sandolph v. P & L hauling Contractors, Inc., 430 So. 2d 102, 103 (La. App. 5 Cir. 1983); see also Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 601 (5th Cir. 1981).  To prove a claim for tortious interference with business relations a plaintiff "must show by a preponderance of the evidence that the defendant improperly influenced others not to deal with the plaintiff." Medx., Inc. of Fla. v. Ranger, No. 91-3099, 193 WL 21250, at *5 (E.D. La. Jan. 25, 1993) (citing McCoin v. McGehee, 498 So. 2d 272, 274 (La. App. 1 Cir. 1986)). A cause of action for tortious interference with business relations "is not restricted to officers of corporations." Restivo, 483 F. Supp. 2d at 537.

Plaintiff alleges that Defendants Triche and Leblanc "wantonly and maliciously" interfered with Global Oil's business

---

[17] Louisiana Health Care Grp., 32 So. 3d at 1143 (citing Kinchen v. Louie Dabdoub Sell Cars, Inc., 05-218 (La. App. 5 Cir. 10/6/05); 912 So. 2d 715, 718). It should also be noted that to the extent  that Defendants argue that they were authorized to take the objects because Wilfred Barnhill directed them to take them, Louisiana jurisprudence indicates that even though "a party may have rightfully come into possession of another's goods," the failure to return them still may constitute a conversion. Louisiana Health Care Grp., 32 So. 3d at 1143 (citing Kinchen, 912 So. 2d at 718).

relationships. (Complaint, Rec. Doc. 1, p. 41, ¶ 149) With respect to Ms. Leblanc, Plaintiff specifically alleges that on at least one occasion, Ms. Leblanc falsely informed a Global Oil customer/potential customer that Global Oil did not make a product, and then directed the customer away from Global and toward the competing DSM. (Complaint, Rec. Doc. 1, pp. 9-10, 14, ¶¶ 34, 39) Looking at these allegations in the light most favorable to the Plaintiff, it could certainly be inferred that Ms. Leblanc diverted a customer away from Global Oil out of malice. Moreover, Plaintiff's complaint states that she did act with malice.[18] As such, the Court finds that Plaintiff has adequately pleaded a cause of action for tortious interference with business relations against Defendant Leblanc.

However, with regard to Defendant Triche, Plaintiff has only alleged that Mr. Triche took tools and work product from Global Oil. (Complaint, Rec. Doc. 1, pp. 16 - 18, ¶¶ 55, 59, 62-63) While the implication is that those stolen products were then

---

[18] Whether Defendant Leblanc did or did not act with malice is a subjective question that can only be fully proven with more discovery. In this manner, it is akin to the elements of intent and knowledge that are required in fraud pleadings. When pleading these elements, plaintiffs are permitted to plead them generally, rather than specifically, precisely because they can only be verified by the defendant. See, e.g., Tel-phonic Servs., Inc., 975 F.2d at 1139. As such, the Court finds that the general pleading of "malice" coupled with the specific description of acts that constitute interference with business is sufficient for the purposes of the instant pleadings, which are only governed under the more lenient pleading standard in Rule 8.

misrepresented as GIT and DSM's products, there is no indication in the complaint that Mr. Triche actually directed customers to the competing companies to sell those products, and/or that Mr. Triche himself misrepresented the products and diverted business from Global Oil to competing companies. Therefore, the Court finds that the Plaintiff has not sufficiently pleaded tortious interference with business relations as to Defendant Triche. Accordingly,

**IT IS ORDERED** that Defendants motions are **GRANTED in part** and **DENIED in part** as follows.

With respect to RICO Count I, **IT IS ORDERED** that Plaintiff's claims are **DISMISSED without prejudice**. However, because it appears that the defects in Plaintiff's pleading can be cured by amendment, Plaintiff is **GRANTED** leave to amend its pleading as to Count I in accordance with this Order. Plaintiff must submit an amended complaint to this Court within twenty-one (21) days of entry of this Order. Failure to amend Plaintiff's complaint within the required period will result in complete dismissal of Plaintiff's claims under Count I.

With respect to RICO Count II, Plaintiff has sufficiently stated its 18 U.S.C.§ 1962(c) RICO claim against Defendants Wilfred Barnhill, Brian Barnhill, and Diane Barnhill.

Accordingly, **IT IS ORDERED** that Defendants' motions are **DENIED** with respect to this count.

With respect to RICO Count III, Plaintiff has sufficiently stated its 18 U.S.C. § 1962(d) RICO conspiracy claim against Defendants Wilfred Barnhill, Brian Barnhill, and Diane Barnhill. Plaintiff has failed to state a RICO conspiracy claim against Defendants GIT, DSM, Leblanc, and Triche. However, because it appears to the Court that the defects in this claim can be cured by amendment, Plaintiff is **GRANTED** leave to amend its pleading as to Count III in accordance with this Order. Plaintiff must submit an amended complaint to this Court within twenty-one (21) days of entry of this Order. Failure to amend Plaintiff's complaint within the required period will result in  dismissal of Plaintiff's claims against the aforementioned Defendants under Count III. Accordingly, **IT IS ORDERED** that Defendants' motions are **GRANTED in part** and **DENIED in part** with respect to this count.

With respect to Count IV, the Lanham Act claims, Plaintiff has sufficiently stated a claim against all Defendants under the Lanham Act. Accordingly, **IT IS ORDERED** that Defendants' motions are **DENIED** with respect to this count.

With respect to Count V, VI, VIII, the LUTPA, breach of

48

fiduciary duty, and conversion claims, Plaintiff has sufficiently stated claims against Defendants Leblanc and Triche. Accordingly, **IT IS ORDERED** that Defendants Leblanc and Triche's motion is **DENIED** with respect to this count.

With respect to Count VII and IX, the civil fraud and tortious interference with business relations claims, Plaintiff has sufficiently stated a claim against Defendant Leblanc. Plaintiff has failed to state a claim against Defendant Triche. Accordingly, **IT IS ORDERED** that Defendants Leblanc and Triche's motion is **GRANTED in part** and **DENIED in part** with respect to this count.

New Orleans, Louisiana this 19th day of November, 2012.


CARL J. BARBIER
UNITED STATES DISTRICT JUDGE