**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **GLOBAL OIL TOOLS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 12-1507** |
| **WILFRED J BARNHILL, ET AL.** | **SECTION: "J" (4)** |

## ORDER

Before the Court is Defendants, Wilfred J. Barnhill, ("Wilfred") Brian A. Barnhill, ("Brian") Diane Barnhill, ("Diane") and Barnhill Industries, Inc.'s, (collectively, the "Barnhills") **Motion to Quash Subpoena Duces Tecum Directed to Whitney Bank of New Orleans ("WBNO") (R. Doc. 31)**, seeking an order quashing the subpoena propounded on WBNO seeking production of certain financial records from Wilfred, Diane, Brian, and Barnhill Industries, Inc. The motion is opposed. (R. Doc. 34). The motion was heard by oral argument on October 3, 2012.

The Barnhills further filed a **Motion to Quash Subpoena Duces Tecum Directed to Whitney Bank of Gulfport Mississippi ( "WBGM") ( R. Doc. 68)**, seeking an order quashing the subpoena propounded on WBGM seeking production of Brian's personal financial records. The motion is opposed. (R. Doc. 86). The motion heard on the briefs on October 17, 2012.

The Barnhills further filed a **Motion to Quash Subpoena Duces Tecum Directed to Commerce Bank ("CCB") ( R. Doc. 99)**, seeking an order quashing the subpoena propounded on

CCB seeking the production of the personal bank records of Wilfred, Diane, Brian, as well records from the "Global International Tools Operating Account." The motion is opposed. (R. Doc. 105). The motion was heard by oral argument on November 21, 2012.

I. **Background**

This is a suit brought under The Racketeer Influence and Corrupt Organizations Act (18 U.S.C. § 1962) ("RICO"), the Lanham Act, 15 U.S.C. § 1125 ("Lanham Act"), as well as Louisiana law. (R. Doc. 1, p. 1). Global Oil alleges that it manufactures wireline tools and downhole flow control systems for the oil and gas industry. In 2007, Grifco sold Global Oil to Lyamec Corporation ("Lyamec."), and Wilfred, then the President of Global Oil, allegedly put in a request for additional administrative staff, and hired his wife, Diane, for the role. *Id* at 5. He then allegedly hired his son, Brian, to be Global Oil's Vice President, Financial Officer, and Treasurer, at which point Brian became responsible for all financial reporting, payroll, purchasing, tracking physical inventory, signing checks, signing of corporate tax returns, hiring, and marketing. *Id.*

According to the complaint, after several years of declining profits, Wilfred and Diane resigned on January 11, 2012, and Brian resigned on February 22, 2012. *Id.* at 6-7. Around this time, other Global Oil employees began to inform the new management about widespread corrupt and fraudulent behavior of the defendants. *Id.* at 6. Global Oil alleges that it began an investigation which later revealed that the Barnhills: (1) established of competing companies, (2) unlawfully discounted to entities owned by Wilfred, (3) stole business opportunities and customers, (4) used Global Oil's funds to pay competing businesses' expenses, and (5) stole Global Oil's labor, inventory, tools, and intellectual property. *See id.* at pp. 7-22.

On August 3, 2012 counsel for Global Oil issued a subpoena Whitney Bank seeking bank

2

statements, cancelled checks, deposit tickets held in either the names of Barnhill Industries, Inc. dba Global International Tools, Wilfred, Diane, and Brian. The subpoena also seeks all documents including checks cash receipts regarding cashier's check number 25705724.

On August 24, 2012, the Barnhills filed the subject motion to quash because the subpoena was allegedly overly broad, unduly burdensome and failed to seek any information that would be relevant to the underlying case.

On September 26, 2012, Global issued a subpoena to WBGM seeking all account records, statements and evidence of payment including checks, cash receipts and wire transfers for an account held in Brian's name.

On October 30, 2012, Global issued a subpoena to CCB seeking all bank statements, cancelled checks and deposit tickets for the operating account held by Global International Tools, as well as the personal and business accounts active or inactive held by Wilfred, Diane, and Brian.

The Barnhills filed motions to quash each of these subpoenas on the grounds that they are overly broad, unduly burdensome, and seek financial records with are not relevant to any issue in this case. Global opposed each of the motions. Regarding the WBGM subpoena, Global contends that the motion should be denied because it was filed in the wrong court and that this court does not have jurisdiction to address the subpoena.

**II.     Standard of Review**

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The

discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

Under Rule 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Id.* At 45(c)(1). A motion for a subpoena must be quashed or modified where, *inter alia*, the subpoena "(i) fails to allow a reasonable time to comply . . .(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Rule 45(c)(3)(A). A court may, in lieu of the above, "order appearance or production under specified conditions if the serving party (I) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the

4

subpoenaed person will be reasonably compensated." *Id.* at 45(c)(3)(C).

**III.     Analysis**

The Barnhills contend that Global Oil's subpoenas are overly broad and improperly request confidential and irrelevant records. Global Oil contends that the subpoenas are an attempt to obtain a competitive advantage over its competitor by gaining access to Barnhill Industries' confidential business information. The Barnhills contend that there is nothing that prevents them from competing against Global Oil and further that Global Oil has made no allegation that the Barnhills embezzled money in their personal accounts during their employment. Further, the Barnhills contend that the Global Oil subpoena is nothing more than an intrusive attempt to obtain the confidential records of a competition and harass the Barnhills by exposing their personal finances.

Specifically, regarding the WGCB subpoena, the Barnhills contend that it is technically deficient because it fails to comply with Revised Statute 6:333 which requires fifteen (15) day notice.

Regarding the CCB records, the Barnhills point out that the undersigned conducted a hearing on October 3, 2012 and issued an oral order indicating that the relevant time period was from May 24, 2010 to June 30, 2012. After that hearing but before the Court issued the written order regarding the same, Global issued the CCB subpoena and ignored the date range limitation. Further, the subpoena seeks the personal financial records of Brian, which the Barnhills contend is not relevant.

The Barnhills also contend that the subpoena to WBGM should be quashed by the Court even though the subpoena was issued out of the United States District Court for the Southern District of Mississippi. Regarding the subpoena to CCB, Global contends that it has a need for the discovery which will be subjected to a protective order. Global further contends that it has no intention of

using the Barnhills' financial information as some sort of competitive advantage. Global contends that defendants diverted business and customer records and used Global's assets including inventory and products for the benefit of DSM and/or Barnhill Industries companies.

Global Oil in response contends that the Barnhills' motion is untimely and that their argument regarding the meritless nature of the subpoena is incorrect. Global Oil contends that the subpoenas are specific and sufficiently limited in time and scope and seek relevant information. Finally, Global Oil contends that it has a substantial need for the documents, and as such the motion to quash should be denied.

Regarding the WBNO subpoena, the Court finds that it does not limit the information sought regarding the financials of Global International Tools. It does not attempt to limit the scope of financial data it seeks from Wilfred, Diane, and Brian, instead it seeks production from January 1, 2008 through the present date. ( R. Doc. 31-3). During the hearing on the subject matter, the undersigned orally limited the scope of the subject subpoena from May 24, 2010 to June 30, 2012 and now converts the oral ruling to its written finding as well. The court noted that the evidence submitted in support of the subpoenas scope failed to establish that 2008 was the first time that the alleged problem began between the parties. As a result, the Court finds that the subpoena is overbroad and the Motion to Quash WBNO is granted.

Next, the Court considers the subpoena issued to CCB which sought Brian's personal financial records. The allegations against Brian are set forth in paragraphs 22-23 of the Complaint, and indicate when Brian resigned from Global. Paragraph 38 further alleges that there was an email order in which Brian quoted the order from his Global International email address. The Complaint also alleges that Brian identified a new client who would be buying their tools and equipment from

6

Global Oil Tools, and that Brian took certain 401(k) deductions, state garnishment and short term/long term disability payments from Global employees' paychecks but failed to make the required contributions. *Id.* at ¶ 71. The Complaint further alleges that Brian erased data, including email from several of Global's computers, including his primary computer and misappropriated inventory. *Id.* at ¶¶ 78-89. The complaint goes on to allege that Brian, along with Wilfred and Diane, converted Global's assets, inventory, tools, business records, and customers to its own business. The Complaint does not set forth any allegation that Brian converted any of the money to his personal accounts. Consequently, the Court finds that the subpoena issued to CCB is not relevant to any of the issues set forth in the litigation. The subpoena to CCB is therefore quashed.

Finally, the subpoena to WBGM was issued out of the United States District Court for the Southern District of Mississippi. Rule 45(a)(3)(A) provides that the court by which a subpoena was issued shall quash or modify the subpoena. The subject subpoena was issued by the court in Mississippi and not Louisiana. As a result, the motion seeking to quash the subpoena issued by WBGM is denied.

**IV.** **Conclusion**

Accordingly,

**IT IS ORDERED** that Defendants, Wilfred J. Barnhill, ("Wilfred"), Brian A. Barnhill, ("Brian") Diane Barnhill, ("Diane") and Barnhill Industries, Inc.'s, (collectively, the "Barnhills") **Motion to Quash Subpoena Duces Tecum Directed to Whitney Bank of New Orleans ("WBNO") (R. Doc. 31)** is **GRANTED**.

**IT IS FURTHER ORDERED** that Brian's **Motion to Quash Subpoena Duces Tecum Directed to Whitney Bank of Gulfport Mississippi ( "WBGM") ( R. Doc. 68)** is **DENIED**.

7

**IT IS FURTHER ORDERED** that the Barnhills' **Motion to Quash Subpoena Duces Tecum Directed to Commerce Bank ("CCB") ( R. Doc. 99)** is **GRANTED**.

New Orleans, Louisiana, this 3rd day of December 2012.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**