# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GLOBAL OIL TOOLS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 12-1507** |
| **WILFRED J BARNHILL, ET AL.** | **SECTION: "J" (4)** |

## ORDER

Before the Court is Defendant Brian A. Barnhill, ("Brian") **Motion to Quash Subpoena Duces Tecum (R. Doc. 47)** seeking an order quashing the subpoena propounded by Plaintiff, Global Oil Tools, Inc., ("Global Oil") on Visa, Inc., ("Visa") seeking production of the personal financial records of Brian, its former employee. The motion is opposed. (R. Doc. 61). The motion was heard by oral argument on October 3, 2012.

### I.  Background

This is a suit brought under The Racketeer Influence and Corrupt Organizations Act (18 U.S.C. § 1962) ("RICO"), the Lanham Act, 15 U.S.C. § 1125 ("Lanham Act"), as well as Louisiana law. (R. Doc. 1, p. 1). Global Oil alleges that it manufactures wireline tools and downhole flow control systems for the oil and gas industry. *Id.* In 2007, Grifco sold Global Oil to Lyamec Corporation ("Lyamec."), and Wilfred, then the President of Global Oil, allegedly put in a request for additional administrative staff, and hired his wife, Diane, for the role. *Id* at 5. He then allegedly hired his son, Brian, to be Global Oil's Vice President, Financial Officer, and Treasurer, at which point Brian became responsible

for all financial reporting, payroll, purchasing, tracking physical inventory, signing checks, signing of corporate tax returns, hiring, and marketing. *Id.*

According to the complaint, after several years of declining profits, Wilfred and Diane resigned on January 11, 2012, and Brian resigned on February 22, 2012. *Id.* at 6-7. Around this time, other Global Oil employees began to inform the new management about widespread corrupt and fraudulent behavior of the defendants. *Id.* at 6. Global Oil alleges that it began an investigation which later revealed that the Barnhills: (1) established of competing companies, (2) unlawfully discounted to entities owned by Wilfred, (3) stole business opportunities and customers, (4) used Global Oil's funds to pay competing businesses' expenses, and (5) stole Global Oil's labor, inventory, tools, and intellectual property. *See id.* at 7-22.

On August 24, 2012 counsel for Global Oil issued a subpoena to Visa seeking all account records, statements and evidence of payment including checks, cash receipts, and wire transfers from January 1, 2008 through the present date.

## II. <u>Standard of Review</u>

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v.*

*American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

Under Rule 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Id.* At 45(c)(1). A motion for a subpoena must be quashed or modified where, *inter alia*, the subpoena "(i) fails to allow a reasonable time to comply . . .(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Rule 45(c)(3)(A). A court may, in lieu of the above, "order appearance or production under specified conditions if the serving party (I) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated." *Id.* at 45(c)(3)(C).

### III. **Analysis**

Brian filed the subject motion seeking to quash the subpoena to Visa for all of his account records and charges for the last four years. Barnhill contends that the subpoena is overly broad, unduly burdensome and fails to seek any information that is relevant to any "legitimate" allegation of wrongdoing in this case.

Barnhill contends that Global has not alleged any wrongful conduct that predates May 10, 2010 and yet Global is seeking to discover all financial records regardless of the date. Barnhill contends that the subject subpoena seeks many of the same documents requested in its Whitney Bank subpoena to which the Visa card is connected. Barnhill contends that because there was no enforceable non-compete agreement, he is not prevented from competing against Global Oil and that there has been no allegation that he embezzled money in his personal account.

Global Oil contends that the absence of a non-compete agreement does not give an employee, especially an officer, the green light to compete with his employer and damage the employer's business. Global Oil further contends that even if the Barnhill defendants were somehow allowed to compete against Global Oil while they were employees, they could not do so unfairly or unlawfully by soliciting Global Oil's customers, utilizing its assets and resources, and by providing their own companies self-dealt discounts. Global Oil contends that the subject documents are needed to assist it with proving its claims against the Barnhills and further suggest that the fact it is seeking Brian's credit card documents does not create a competitive advantage. Finally, Global Oil seeks the production of the documents dating to January 1, 2008.

According to the Complaint before Brian resigned from the company, he placed an email order to one of Global Oil's customers from his Global International email address. (R. Doc. 1, ¶ 38). The Complaint also alleges that Brian identified a new client who would be buying their tools and equipment from Global Oil, *id.* at ¶ 41, and that Brian took certain 401(k) deductions, state garnishment and short term/long term disability payments from Global employees' paychecks but failed to make the required contributions. *Id.* at ¶ 71. The Complaint further alleges that Brian erased data, including email from several of Global's computers, including his primary computer and misappropriated inventory. *Id.* at ¶¶ 78-89. The complaint goes on to allege that Brian, along

with Wilfred and Diane, converted Global's assets, inventory, tools, business records, and customers to its own business. The Complaint does not set forth any allegation that Brian converted any of the money to his personal accounts. The court finds that the information sought by the subject subpoena is irrelevant and the Court sustains Barnhills objection of relevance.

**IV.     Conclusion**

Accordingly,

**IT IS ORDERED** that Defendant, Brian A. Barnhill, ("Brian") **Motion to Quash Subpoena Duces Tecum (R. Doc. 47)** is **GRANTED**.

New Orleans, Louisiana, this 3rd day of December 2012.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**