UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GLOBAL OIL TOOLS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 12-1507** |
| **WILFRED J BARNHILL, ET AL.** | **SECTION: "J" (4)** |

## ORDER

Before the Court is Defendants, Wilfred J. Barnhill, ("Wilfred") Brian A. Barnhill, ("Brian") Diane Barnhill, ("Diane") and Barnhill Industries, Inc.'s, (collectively, the "Barnhills") **Motion to Quash Subpoena Duces Tecum Directed to M. Bergeron & Co., CPAs., LLC, High Tech Components, Inc., and Wisco, Inc. (R. Doc. 103)**, seeking an order quashing the subpoenas that seek to obtain federal and state tax returns of Barnhill Industries, Inc., as well as work papers and supporting documents and emails to and from the Barnhills from January 1, 2009. The motion is opposed. (R. Doc. 110). The motion was heard on the briefs on November 21, 2012.[1]

### I. Background

This is a suit brought under The Racketeer Influence and Corrupt Organizations Act (18 U.S.C. § 1962) ("RICO"), the Lanham Act, 15 U.S.C. § 1125 ("Lanham Act"), as well as Louisiana law. (R. Doc. 1, p. 1). Global Oil alleges that it manufactures wireline tools and downhole flow control systems for the oil and gas industry. In 2007, Grifco sold Global Oil to Lyamec Corporation

---

[1] The motion was discussed briefly during a November 21, 2012 oral argument on another motion in this case, although no ruling from the bench issued at that time.

("Lyamec."), and Wilfred, then the President of Global Oil, allegedly put in a request for additional administrative staff, and hired his wife, Diane, for the role. *Id* at 5. He then allegedly hired his son, Brian, to be Global Oil's Vice President, Financial Officer, and Treasurer, at which point Brian became responsible for all financial reporting, payroll, purchasing, tracking physical inventory, signing checks, signing of corporate tax returns, hiring, and marketing. *Id.*

According to the Complaint, after several years of declining profits, Wilfred and Diane resigned on January 11, 2012, and Brian resigned on February 22, 2012. *Id.* at 6-7. Around this time, other Global Oil employees began to inform the new management about widespread corrupt and fraudulent behavior of the defendants. *Id.* at 6. Global Oil alleges that it began an investigation which later revealed that the Barnhills: (1) established of competing companies, (2) unlawfully discounted to entities owned by Wilfred, (3) stole business opportunities and customers, (4) used Global Oil's funds to pay competing businesses' expenses, and (5) stole Global Oil's labor, inventory, tools, and intellectual property. *See id.* at pp. 7-22.

On November 7, 2012 a subpoena was issued to M. Bergeron & Company, CPAs, LLC seeking, *inter alia*, all of the feral and state tax returns it completed on behalf of Barnhill Industries, Inc., Downhole-Surface Manufacturing, LLC, Pro-Line Products & Services, Inc., Wilfred J. and Diane Barnhill, and Brian Barnhill from January 1, 2009 to the present. ( R. Doc. 103-3).

Also on November 7, 2012 a subpoena was issued to High Tech Components, Inc. seeking, *inter alia*, all communications to or from Global Oil Tools, Global International Tools, Downhole-Surface Manufacturing, W.J. Barnhill, Diane Barnhill, Brian Barnhill, Wireline Products & Supply, and Pro Line Products & Services, Inc. The subpoena further seeks all invoices, bills, receipts or order forms pertaining or relating to buying and or selling products and/or services to or from Global

2

Oil Tools, Global International Tools, Downhole-Surface, manufacturing, W.J. Barnhill, Diane Barnhill, Brian Barnhill, Wireline Products & Supply, and Pro Line Products & Services, Inc. (R. Doc. 103-4).

On that same date, a subpoena was issued to Wisco, Inc. which sought, *inter alia*, all communications to or from Global Oil Tools, Global International Tools, Downhole-Surface Manufacturing, W.J. Barnhil, Diane Barnhill, Brian Barnhill, Wiereline Products & Supply, and Pro Line Products & Services, Inc. from January 2008 through the presented date. (R. Doc. 103-5).[2]

The Barnhills filed motions to quash each of these subpoenas on the grounds that they are overly broad, unduly burdensome, and seek financial records with are not relevant to any issue in this case.

## II. **Standard of Review**

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

---

[2]The subpoenas propounded on High Tech and Wisco also requested records from "any related entity."

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

Under Rule 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Id.* at 45(c)(1). A motion for a subpoena must be quashed or modified where, *inter alia*, the subpoena "(i) fails to allow a reasonable time to comply . . .(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Rule 45(c)(3)(A). A court may, in lieu of the above, "order appearance or production under specified conditions if the serving party (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated." *Id.* at 45(c)(3)(C).

**III.   Analysis**

The Barnhills contend that Global Oil's subpoenas are overly broad and improperly request confidential and irrelevant records. Global Oil contends that the subpoenas are an attempt to obtain a competitive advantage over its competitor by gaining access to Barnhill Industries' confidential business information. The Barnhills contend that there is nothing that prevents them from

4

competing against Global Oil and further that Global Oil has made no allegation that the Barnhills embezzled money in their personal accounts during their employment. Further, the Barnhills contend that the Global Oil subpoena is nothing more than an intrusive attempt to obtain the confidential records of a competition and harass the Barnhills by exposing their personal finances.[3]

The subpoenas, in full, are as follows:

On November 7, 2012, Global Oil issued a subpoena to Bergeron, demanding the release of the following information on December 7, 2012:

1. Any and all federal and state tax returns completed on behalf of Barnhill Industries, Inc., Downhole-Surface Manufacturing, LLC, Pro-Line Products & Services, Inc., Wilfred J. And Diane Barnhill, and Brian Barnhill from 2009 to the present, including all attached schedules.

2. Any and all word papers and supporting documents pertaining or relating to all tax returns prepared on behalf of Barnhill Industries, Inc., Downhole-Surface Manufacturing, LLC, Pro-Line Products & Services, Inc., Wilfred J. And Diane Barnhill, and Brian Barnhill from 2009 to the present.

3. Any and all emails to and from Wilfred J. Barnhill, Diane Barnhill, and Brian Barnhill from January 1, 2009 to the present.

(R. Doc. 103-3, pp. 3, 6). Also on November 7, 2012, Global Oil issued a subpoena to High Tech, demanding the release of the following information on December 7, 2012:

1. Any and all communications to or from Global Oil Tools, Global International Tools, Downhole-Surface Manufacturing, W.J. ("Barney") Barnhill, Diane Barnhill, Brian Barnhill, Wireline Products & Supply, Pro Line Products & Services, Inc., and/or any related entity, from January 1, 2008 through the present date.

2. Any and all invoices, bills, receipts, or order forms pertaining or relating to buying and/or selling products and/or services to or from Global Oil Tools, Global International Tools, Downhole-Surface Manufacturing, W.J.

---

[3]The Barnhills argue that High Tech has already responded to the subpoena request, and therefore Global Oil's motion is moot. The Court notes, however, that Global Oil has not withdrawn this request and therefore the Court is obligated to consider this motion on its merits.

5

      ("Barney") Barnhill, Diane Barnhill, Brian Barnhill, Wireline Products & Supply, Pro Line Products & Services, Inc., and/or any related entity, from January 1, 2008 through the present date.

3. Any and all delivery tickets, shipping manifests, packing slips, and all other documents pertaining or relating to shipping to or from Global Oil Tools, Global International Tools, Downhole-Surface Manufacturing, W.J. ("Barney") Barnhill, Diane Barnhill, Brian Barnhill, Wireline Products & Supply, Pro Line Products & Services, Inc., and/or any related entity, from January 1, 2008 through the present date.

4. Any and all evidence of payment, including copies of checks and evidence of wire transfers, for materials, supplies, tools, products, and parts, to or from Global Oil Tools, Global International Tools, Downhole-Surface Manufacturing, W.J. ("Barney") Barnhill, Diane Barnhill, Brian Barnhill, Wireline Products & Supply, Pro Line Products & Services, Inc., and/or any related entity, from January 1, 2008 through the present date.

5. Any and all communications and/or documents pertaining or relating to an ISO or API certification for Global Oil Tools, Global International Tools, Downhole-Surface Manufacturing, Wireline Products & Supply, Pro Line Products & Services, Inc., or any related entity.

(R. Doc. 103-4, pp. 3, 6-7). Finally on November 7, 2012, Global Oil issued a subpoena to Wisco, demanding the release of the following information on December 7, 2012:

1. Any and all communications to or from Global Oil Tools, Global International Tools, Downhole-Surface Manufacturing, W.J. ("Barney") Barnhill, Diane Barnhill, Brian Barnhill, Wireline Products & Supply, Pro Line Products & Services, Inc., and/or any related entity, from January 1, 2008 through the present date.

2. Any and all invoices, bills, receipts, or order forms pertaining or relating to buying and/or selling products and/or services to or from Global Oil Tools, Global International Tools, Downhole-Surface Manufacturing, W.J. ("Barney") Barnhill, Diane Barnhill, Brian Barnhill, Wireline Products & Supply, Pro Line Products & Services, Inc., and/or any related entity, from January 1, 2008 through the present date.

3. Any and all delivery tickets, shipping manifests, packing slips, and all other documents pertaining or relating to shipping to or from Global Oil Tools, Global International Tools, Downhole-Surface Manufacturing, W.J. ("Barney") Barnhill, Diane Barnhill, Brian Barnhill, Wireline Products &

> Supply, Pro Line Products & Services, Inc., and/or any related entity, from January 1, 2008 through the present date.
>
> 4. Any and all evidence of payment, including copies of checks and evidence of wire transfers, for materials, supplies, tools, products, and parts, to or from Global Oil Tools, Global International Tools, Downhole-Surface Manufacturing, W.J. ("Barney") Barnhill, Diane Barnhill, Brian Barnhill, Wireline Products & Supply, Pro Line Products & Services, Inc., and/or any related entity, from January 1, 2008 through the present date.
>
> 5. Any and all communications and/or documents pertaining or relating to an ISO or API certification for Global Oil Tools, Global International Tools, Downhole-Surface Manufacturing, Wireline Products & Supply, Pro Line Products & Services, Inc., or any related entity.

(R. Doc. 103-5, pp. 3, 6-7). The Barnhills filed their motion to quash on November 13, 2012. In support of his motion to quash, Brian argues that the requests are overly broad, unduly burdensome, and seek information that is irrelevant to any allegation of wrongdoing in the underlying case. (R. Doc. 103-1, pp. 1-2).

The Court notes that the three subpoenas request records back as early as January 1, 2008 and as late as "2009." Both dates of which are plainly outside the "relevant period" for this suit, which was previously established as between May 24, 2010 and June 30, 2012. *See* (R. Doc. 114, pp. 5-6). Therefore, the Court finds that the subpoenas are overly broad, and quashes them on these grounds alone. The Court notes that nothing prevents Global Oil from re-issuing these subpoenas in conformity with the "relevant period."

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that Defendants, Wilfred J. Barnhill, ("Wilfred") Brian A. Barnhill, ("Brian") Diane Barnhill, ("Diane") and Barnhill Industries, Inc.'s, (collectively, the "Barnhills") **Motion to Quash Subpoena Duces Tecum Directed to M. Bergeron & Co., CPAs., LLC, High**

**Tech Components, Inc., and Wisco, Inc. (R. Doc. 103)** is **GRANTED**.

New Orleans, Louisiana, this 2nd day of January 2013.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**