UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GLOBAL OIL TOOLS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 12-1507** |
| **WILFRED J BARNHILL, ET AL.** | **SECTION: "J" (4)** |

## ORDER

Before the Court is Plaintiff, Global Oil Tools, Inc.'s, ("Global Oil") **Motion to Compel Discovery (R. Doc. 49)**, seeking an Order from this Court compelling Defendants, Wilfred J. Barnhill, ("Wilfred") Brian A. Barnhill, ("Brian") Diane Barnhill, ("Diane") Downhole-Surface Manufacturing, and Barnhill Industries, Inc.'s (collectively, the "Barnhills") to respond to discovery requests propounded on them by Global Oil. The motion is opposed (R. Doc. 64). The motion was heard by oral argument on October 3, 2012.

### I. Background

This is a suit brought under The Racketeer Influence and Corrupt Organizations Act (18 U.S.C. § 1962) ("RICO"), the Lanham Act, 15 U.S.C. § 1125 ("Lanham Act"), as well as Louisiana law. (R. Doc. 1, p. 1). Global Oil alleges that it manufactures wireline tools and downhole flow control systems for the oil and gas industry. In 2007, Grifco sold Global Oil to Lyamec Corporation ("Lyamec."), and Wilfred, then the President of Global Oil, allegedly put in a request for additional administrative staff, and hired his wife, Diane, for the role. *Id* at 5. He then allegedly hired his son, Brian, to be Global Oil's Vice President, Financial Officer, and Treasurer, at which point Brian

became responsible for all financial reporting, payroll, purchasing, tracking physical inventory, signing checks, signing of corporate tax returns, hiring, and marketing. *Id.*

According to the complaint, after several years of declining profits, Wilfred and Diane resigned on January 11, 2012, and Brian resigned on February 22, 2012. *Id.* at 6-7. Around this time, other Global Oil employees began to inform the new management about widespread corrupt and fraudulent behavior of the defendants. *Id.* at 6. Global Oil alleges that it began an investigation which later revealed that the Barnhills: (1) established competing companies, (2) unlawfully discounted to entities owned by Wilfred, (3) stole business opportunities and customers, (4) used Global Oil's funds to pay competing businesses' expenses, and (5) stole Global Oil's labor, inventory, tools, and intellectual property. *See id.* at pp. 7-22. As alleged in the complaint, the defendants allegedly attempted to cover up their misdeeds by destroying files and scrubbing computers.

Global Oil propounded Requests for Production of Documents on the Barnhills on July 24, 2012; on August 6, 2012 Interrogatories were propounded. Just before the production deadline expired, the Barnhills requested an extension of the response period. However despite the extension, the Barnhills failed to respond to the discovery and instead requested another extension after Global Oil filed the subject motion. Global Oil contends that at the time it filed the subject motion, its discovery remained outstanding.

The Barnhills oppose the motion, noting that while the Court set a discovery deadline of September 26, 2012 in connection with a preliminary injunction, neither party has either made or been obligated to make Rule 26 disclosures, and the Court has not issued an Order waiving the necessity of disclosures. Counsel for the Barnhills contends that the prior discovery extensions were made in a good faith attempt to comply with an " impossible deadline." Counsel also argues that ultimately

compliance was made impossible after Hurricane Isaac struck the Louisiana Gulf Coast during the week of August 27, 2012 - as this resulted in the closure of his law office for a week and triggered the subsequent request for an extension which was denied by counsel for the plaintiff. Counsel for the Barnhills further contend that Global Oil's counsel failed to comply with the discovery conference requirements of Rule 37. Counsel for the Barnhills further contends that despite the difficulty he experienced, he actually forwarded written responses to Global Oil's counsel on September 21, 2012. As a result, the Barnhills contend that the subject motion should be denied.

## II.      Standard of Review

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the

needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

Under Rule 26(d), "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) except . . . by court order." District Courts have found that ordering expedited discovery prior to a Rule 26(f) conference is appropriate when such discovery arises in connection with a preliminary injunction. *See, e.g.*, *Tracfone Wireless, Inc. v. King Trading, Inc.*, 2008 WL 918243, at *1 (N.D. Tex. Mar. 13, 2008); *El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F. Supp. 2d 986, 991 (S.D. Tex. 2004).

### III. Analysis

Specifically, each of Global Oil's four sets of Request for Production of Documents contain 30 questions. The questions therein are identical, and pertain to topics including (1) equipment and intellectual property taken from the premises of Global Oil; (2) invoices pertaining to Barnhill Industries, Global International Tools, and other Barnhill-controlled entities; and (3) tax returns of the various Barnhill-controlled companies. *See, e.g.*, (R. Doc. 49-6). The Interrogatories directed to Barnhill Industries, Inc. request information about, *inter alia*, the corporate formation of the company and location of corporate offices, although they are otherwise substantively identical.

There is no dispute as to whether the Barnhills were able to timely comply with the extended discovery deadline; they did not. (R. Doc. 64-1, p. 1).[1] Instead, the Barnhills promised a response on

---

[1]The specific course of dealing between the parties is as follows. On September 6, one day before responses were due under the extended discovery response deadline, the Barnhills' counsel sent a letter to Global Oil's counsel stating that:

> Because of [closure due to Hurricane Isaac] and due to other pending commitments and the shear [sic] amount of information you requested, we will be unable to comply with this deadline. Rest assured that we will make every effort to get the responses to you as soon as possible. I realize that you are concerned with deadlines and an upcoming hearing. I believe we will have responses

4

September 14, 2012, and on September 21, 2012 in a letter accompanying their discovery response, they provided (1) a list of the tools and other Global Oil property currently in "Mr. Barnhill's"[2] possession, and that "Mr. Barnhill" was prepared to turn them over to Global Oil; and (2) Secretary of State documentation that Barnhill Industries, Inc. was no longer using the "Global International Tools" trade name. (R. Doc. 64-4, p. 1).

The Court notes that the Barnhills clearly attempted to respond to the discovery requests and the Court assigned a discovery deadline to address the Preliminary Injunction hearing. As a result, the Court finds that the discovery does not clearly contravene Rule 26. Further, regarding Global Oil's non- compliance with Rule 37, given the voluminous nature of the requests and the nature of the litigation, the Court will proceed with the analysis of the discovery, despite the apparent procedural noncompliance required by Rule 37.

During the hearing on the matter, the parties focused on particular responses to Request for Production of Documents; namely, Requests for Production 1, 7, 8, 11, 12, 13, 14, 15, 16, 18, and 21.

---

to you by the end of business of September 14, 2012. If this is unacceptable, please advise and I can file the appropriate motion for extension with the court. Alternatively, I will be glad to entertain a discovery conference to discuss the issue.

In response, Global Oil's counsel sent a letter to Barnhill's counsel which stated that:

I granted your clients an extension, and then they filed a motion to quash the subpoena to Whitney Bank. Then they filed pleadings which contain factual misrepresentations. I therefore believe that your clients are trying to delay production of important information for strategic reasons. In light of the fact that you served as their counsel in several pre-2008 transactions, you undoubtedly are in possession of responsive records.

(R. Doc. 64-3, p. 1)

[2]The Barnhills do not state whether "Mr. Barnhill" refers to Wilfred Barnhill or Brian Barnhill. (R. Doc. 64-4, p. 1). However, in responses to interrogatories, both Wilfred and Brian were asked by Global to "[i]dentify each instance in which you or anyone on your behalf or at your direction, removed from the premises of Global Oil, any items, including by not limited to, tools, parts, inventory, gauges, and machinery . . . ." (R. Doc. 64-6, p. 5; R. Doc. 68-8, p. 5). In response to this interrogatory, Brian replied "none." (R. Doc. 64-6, p. 5). However, William responded, *inter alia*, "Mr. Barnhill cannot recall specific dates on which he removed tools or inventory. Any removed tools will be returned to Global Oil." (R. Doc. 68-8, p. 5). Since only Wilfred and Brian are listed as male "Barnhills" in Global Oil's Complaint, it is reasonable to conclude that "Mr. Barnhill" here means Wilfred Barnhill.

5

During the hearing, Global Oil did not raise any arguments as to the deficiencies in any specific interrogatory, but instead counsel jointly stated that they would "revisit" the Interrogatories and bring them into conformity with the Court's ruling on the Requests for Production of Documents.[3]

The subject Requests for Production sought, *inter alia*, the production of electronic communications removed from Global Oil's computers,[4] rental agreements for storage facilities rented to the Barnhills,[5] an inventory of items contained in the storage facilities,[6] invoices and other documents pertaining to Downhole-Surface Manufacturing,[7] invoices and other documents pertaining to Barnhill Industries,[8] federal and state tax returns for all of the Barnhill corporate entities,[9] the

---

[3] Midway through oral argument, counsel for Global Oil stated that the parties had reached an agreement regarding production of some of the other outstanding discovery, although any such "agreement" was not specified by the parties at that time. The hearing transcript also reflects that counsel for Global Oil stated to counsel for the Barnhills that "[w]ill you go through your interrogatories with this in mind," with "this" left undefined. Later, the parties agreed that the interrogatory responses would be supplemented and conformed to the Court's ruling in regards to the Requests for Production.

[4] REQUEST NUMBER 1:
Any and all electronic communications, including emails and electronic documents, which were coped and/or removed from Global Oil's computers.

[5] REQUEST NUMBER 7:
Any and all rental agreements for storage facilities rented to You at any time during the relevant period.

[6] REQUEST NUMBER 8:
Any and all inventories of items located in storage facilities rented by You during the relevant time period.

[7] REQUEST NUMBER 11:
Any and all invoices, receipts, agreements, contracts, and/or job tickets pertaining or relating to any transaction involving Downhole-Surface Manufacturing.

[8] REQUEST NUMBER 12:
Any and all invoices, receipts, agreements, contracts, and/or job tickets pertaining or relating to any transaction involving Barnhill Industries, Inc. d/b/a Global International Tools.

[9] REQUEST NUMBER 13:
Any and all federal tax returns and state tax returns, including all attachments, for Barnhill Industries, Inc. d/b/a Global International Tools, Downhole-Surface Manufacturing, LLC, Pro Line Products & Services, Inc., Global Resources of Louisiana, Inc., Global Oil Tools, Inc. Of Texas, WW Supply Company, Inc., and Flow Tubes, Inc. for the relevant time period.

personal tax returns Wilfred Barnhill,[10] Diane Barnhill,[11] and Brian Barnhill,[12] financial documents of Wilfred Barnhill,[13] and emails from suppliers and customers.[14]

In considering the subject discovery, the parties engaged in significant argument about the relevant time period for the production of documents. After listening to the argument of the parties and considering the relevant evidence, the Court found that the "relevant time period" for all discovery was between May 24, 2010 and February 28, 2012, with several exceptions until June 30, 2012, as discussed below. *See also* (R. Doc. 114, pp. 5-6). In connection with this finding, the Court further ordered the Barnhills to tailor their responses to the relevant period as set by the undersigned and not as detailed in the definition section of the Request for Production of Documents or Interrogatories.

Regarding Request No. 1, the Barnhill's contended that they provided documents in response to this request. However, upon questioning by the Court, counsel for the Barnhill's conceded that the responses were not correlated with Bates Stamped documents, or otherwise meaningfully

---

[10]REQUEST NUMBER 14:
Any and all personal federal tax returns and state tax returns, including all attachments, for defendant Wilfred J. Barnhill, individually, for the relevant time period.

[11]REQUEST NUMBER 15:
Any and all personal federal tax returns and state tax returns, including all attachments, for defendant Diane Barnhill, for the relevant time period.

[12]REQUEST NUMBER 16:
Any and all personal federal tax returns and state tax returns, including all attachments, for defendant Brian Barnhill, for the relevant time period.

[13]REQUEST NUMBER 18:
Any and all personal financial documents, including but not limited to, balance sheets, income statements, bank statements, and copies of checks written and received, for defendant Wilfred J. Barnhill, for the relevant time period.

[14]REQUEST NUMBER 21:
Any and all emails to or from any suppliers and customers to and from any defendant during the relevant time period. (This includes, *but is not limited to*, all emails sent or received by the domain @globalinternationaltools.com or through ginttools@yahoo.com).

7

organized. As a result, the Court ordered the Barnhills to supplement their response to Request No. 1. As to Request No. 7, the Court ordered the Barnhills to provide a listing of the rental agreements requested therein. The Court ordered production of both Requests no later than 7 days after the October 3, 2012 hearing.

As to Request No. 8, the Barnhills argued that the "storage" facilities" were personal, and not used for business. The Court noted that an inventory of all items contained in the storage facility during the relevant time period, whether personal or otherwise, should be produced. As to Requests Nos. 11 and 12, the Court ordered production of documents during the relevant time period, and for these two requests allowed an additional four months for discovery - until June 30, 2012 - due to the fact that there could have been "back-dating" of invoices.

As to Requests Nos. 13, 14, counsel for the Barnhill's argued that the personal returns and financial records of the Barnhill's should not be produced as the claims in Global Oil's original Complaint were that Global Oil's assets were transferred to Barnhill Industries; there were no allegations that the Barnhills personally transferred any of the funds to their individual accounts.[15] In considering the appropriateness of requiring Wilfred Barnhill to produce his personal tax returns and financial documents, the Court was advised by counsel that Barnhill Industries is a limited liability corporation created by Wilfred Barnhill, and has no other members.

The court in considering appropriateness of the request noted that because Wilfred Barnhill was the only member of Barnhill Industries, the income and expenses would pass through to him personally. As a result, Mr. Barnhill was ordered to produce his 2010 and 2011 personal income

---

[15]Global Oil has since amended its Complaint (R. Doc. 116). However, as this motion to compel was argued prior to the filing of the Amended Complaint and was subject to specific rulings from the bench which would have been carried out prior to the filing, the Court need not consider whether the Amended Complaint would alter the production analysis here.

returns. The Court also ordered production of the business tax returns of Barnhill Industries d/b/a Global International Tools, Downhole-Surface Manufacturing, LLC, Pro Line Products & Services, Inc., Global Resources of Louisiana, Inc., Global Oil Tools, Inc. Of Texas, WW Supply Company, Inc., and Flow Tubes, Inc for 2010 and 2011.[16]

However, regarding Response Nos. 15 and 16, the personal tax returns of Diane Barnhill and Brian Barnhill, the requests were not relevant as they are not members of the limited liability company and nor are there any allegations suggesting that they transferred any of Global Oil's assets to themselves personally.[17] The Court found that as to Request No. 18, which sought Wilfred's "personal financial documents," was currently overbroad and sustained an objection to production accordingly.

Finally, Request for Production 21, sought production of emails to suppliers and customers at the @globalinternationaltools.com or ginttools@yahoo.com email address. The court found that the request was relevant but limited by the modified "relevant" period, i.e., May 24, 2010 to February 28, 2012. The Court further noted that the Barnhills were permitted to exclude from production any emails which were not relevant.

Upon the conclusion of the hearing, the parties advised the undersigned that they had reached agreement with Global Oil as to production of the other outstanding discovery requests. The parties further indicated that they would be conforming their outstanding discovery to the relevant time period, May 24, 2010 to February 28, 2012.

---

[16] Although counsel for Global Oil noted that the request pertained to "Downhole Global," and later discussed whether the "LLC," in this case Downhole Surface Manufacturing LLC, was a pass-through entity as applied to Wilfred Barnhill, it is clear that the request encompasses the other corporate entities listed herein and their tax returns were discoverable.

[17] The Court stated, however, that to the extent that Wilfred and Diane filed a joint personal tax return, Diane's return was discoverable.

9

**IV.    Conclusion**

Accordingly,

**IT IS ORDERED** that Plaintiff, Global Oil Tools, Inc.'s ("Global Oil") **Motion to Compel Discovery (R. Doc. 49)** is **GRANTED IN PART** and **DENIED IN PART**.

It is **GRANTED** as to **Requests for Production Nos. 1, 7, 8, and 21**, as specified above at the October 3, 2012 oral argument, and as limited to a time period between May 24, 2010 and February 28, 2012.

It is **GRANTED** as to **Requests for Production Nos. 11 and 12** as specified above at the October 3, 2012 oral argument, , and as limited to a time period between May 24, 2010 and June 30, 2012.

It is **GRANTED** as to **Requests for Production No. 13**, as specified above at the October 3, 2012 oral argument, and as limited to business returns for the 2010 and 2011 tax years for all requested parties.

It is **GRANTED** as to **Request for Production No. 14**, as limited to Defendant, Wilfred J. Barnhill's, ("Wilfred") personal returns for the 2010 and 2011 tax years.

It is **DENIED** as to **Requests for Production Nos. 15, 16, and 18**, except insofar as Defendant, Diane Barnhill, ("Diane") may have filed a joint personal tax return with Wilfred for the 2010 and 2011 tax years.

It is **DENIED AS MOOT** as to any Requests for Production not specifically raised at the October 3, 2012 oral argument or mentioned in this Order.

**IT IS FURTHER ORDERED** that as specified at oral argument, Defendants, Wilfred, Diane, Brian A. Barnhill, ("Brian") Downhole-Surface Manufacturing, and Barnhill Industries, Inc.'s (collectively, the "Barnhills") shall supplement both their Requests for Production and Interrogatories

no later than seven days after October 3, 2012, as either agreed to by the parties or ordered by the Court at oral argument subject to the limitation set herein.

New Orleans, Louisiana, this 3rd day of January 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**