## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GLOBAL OIL TOOLS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 12-1507** |
| **WILFRED J BARNHILL, ET AL.** | **SECTION: "J" (4)** |

### ORDER

Before the Court is Defendants, Wilfred J. Barnhill, Brian A. Barnhill, Diane Barnhill, and Barnhill Industries, Inc.'s, (collectively, the "Barnhills") **Defendants' Motion to Quash Subpoena Duces Tecum Directed to M. Bergeron & Co., CPAs, LLC (R. Doc. 125)**, seeking an Order from the Court quashing a subpoena duces tecum propounded by Plaintiff, Global Oil Tools, Inc., ("Global Oil") upon a third party, M. Bergeron & Co., ("Bergeron") which seeks Brian Barnhill's personal financial information.  The motion is opposed (R. Doc. 128).  The motion was heard by oral argument on January 30, 2013.

I.     **Background[1]**

A.     **Global Oil's Allegations**

Global Oil alleges that it manufactures wireline tools and downhole flow control systems for the oil and gas industry.  *Id.* at 4.  In 2007 Global Oil was sold to a third party, Lyamec.  *Id.* at 4.  Wilfred, then the President of Global Oil, allegedly put in a request for additional administrative staff,

---

[1]Nos. 12-1507J and 12-3041J were consolidated on January 4, 2013, with 12-1507J being the "master docket." (R. Doc. 120).

and hired his wife, Diane, for the role.  *Id* at 5.  He then allegedly hired his son, Brian, to be Global Oil's Vice President, Financial Officer, and Treasurer, at which point Brian became responsible for all financial reporting, payroll, purchasing, tracking physical inventory, signing checks, signing of corporate tax returns, hiring, and marketing.  *Id.*  Allegedly, no job description for Diane was ever provided.  *Id.*

According to the Complaint, after several years of declining profits, Wilfred and Diane resigned on January 11, 2012, and Brian resigned on February 22, 2012.  *Id.* at 6-7.  Around this time, other Global Oil employees allegedly began to inform the new management about widespread corrupt and fraudulent behavior of the defendants.  *Id.* at 6.  This behavior allegedly included (1) unlawful discounts to entities owned by Wilfred, (2) stolen business opportunities and customers, (3) use of Global Oil's funds to pay competing businesses' expenses, and (4) theft of Global Oil's labor, inventory, tools, and intellectual property.  *See id.* at pp. 7-22.  As alleged in the Complaint, the defendants allegedly attempted to cover up their misdeeds by destroying files and scrubbing computers.

The instrument of these misdeeds were allegedly the Barnhills' own corporate entities. Specifically, on May 24, 2010, Wilfred and Diane allegedly directed Barnhill Industries, Inc. to register the trade name "Global International Tools" with the Louisiana Secretary of State, identifying the company's field as "retail - oil field products."  *Id.* at 7.  GIT's office was located near Global Oil's business office, and Global Oil alleges that "[t]rucks often arrived at Global Oil . . . with deliveries for [GIT] and were directed" by either Wilfred or Brian to the GIT office.  *Id.* at 8-9.[2]

Further, in January 2011, Wilfred and Brian "started" defendant Downhole Surface

---

[2]The Barnhills subsequently agreed to cease using the trade name "Global International Tools" pursuant to a Consent Judgment entered by the presiding U.S. District Judge.  *See* (R. Doc. 84).

Manufacturing ("DSM").  *Id.* at 9.  DSM's operating location was also occupied by GIT.  *Id.*  Brian and Barnhill are DSM's officers.  Under the direction of Wilfred and Brian,[3] Global Oil was directed to sell products to DSM at discounted prices.  *Id.* at 10.  Brian's Visa credit card was "used to make purchases for . . . DSM while he was employed by Global;" the Complaint then goes on to illustrate several examples of purchases made on behalf of DSM.  *See id.* at 13-18.  Based on this conduct, Global Oil alleges that "it is believe [the defendants'] fraud extends back to 2008."  *Id.* at 18.

Global Oil has brought suit under The Racketeer Influence and Corrupt Organizations Act (18 U.S.C. § 1962) ("RICO"), the Lanham Act, 15 U.S.C. § 1125 ("Lanham Act"), as well as Louisiana state law.  (R. Doc. 116, p. 1).[4]

### B.   The Barnhills' Counterclaim

In its Answer to Global Oil's Amended Complaint, the Barnhills included a counterclaim which alleges that the "prehistory" of Global Oil's Complaint is more complicated than the brief gloss it receives therein.  Specifically, the Barnhills allege that Wilfred owned and operated Global Oil for over twenty-five years between 1979 and 2005, building it into a successful family business.  (R. Doc. 124, p. 20).  The Barnhills then allege that Wilfred then sold Global Oil to another company, Grifco, for $4.5 million.  *Id.* Wilfred's sale of Global Oil to Grifco was originally contemplated a cash transfer of the $4.5 million.  *Id.*  Grifco's CEO, David Dial, ("Dial") was installed as President and Director of Global Oil.  *Id.*

The Barnhills allege that thereafter, another company, Lyamec, acquired a "significant interest" in Grifco.  *Id.* at 21.  The Barnhills further allege that Grifco subsequently renegotiated Wilfred's

---

[3]Global Oil also alleges that another defendant, Denise LeBlanc, was also involved in this transfer.  (R. Doc. 116, p. 10).

[4]Global Oil duly amended its Complaint on December 10, 2012.  (R. Doc. 116).

purchase contract of Global Oil to include $2.2 million in case, plus 3.7 million shares of Grifco stock. (R. Doc. 124, p. 21).[5]  The Barnhills then allege that the Grifco stock was, after "various misrepresentations," exchanged for stock in another company controlled by Lyamec, Global Oil Tools Libya ("Global Libya").  *Id.* at 21.  Allegedly, the Global Libya stock was eventually found to be worthless, and even here requests to redeem the stock have gone unheeded.  *Id.* at 21, 26.

The Barnhills allege that around the same time, Grifco and its owner, David Dial, ("Dial") became subject to a federal criminal investigation which alleged that "Dial and his co-conspirators defrauded investors . . . [by] artificially inflat[ing] the stock prices of Grifco through issuance of false press releases."  (R. Doc. 124, p. 22).  The Barnhills allege that "Dial was sentenced to five years in prison after pleading guilty and admitting to the scheme."  *Id.* at 23.  Allegedly, Dial and his co-conspirators are also subject to an SEC investigation which remains pending in the U.S. District Court for the Southern District of Texas.  *Id.* at 23.

The Barnhills further allege that several months after the criminal investigation against Dial commenced, on July 10, 2007, Dial resigned his position as President and Director of Global Oil.  *Id.* Lyamec's owner/controller, Riad Ghariani, ("Ghariani") became Director, President, and CEO of Global Oil, after which the company's financial health began a drastic decline.  *Id.*  According to the Barnhills, Ghariani required Global to obtain loans from his own financing company at "unreasonably high interest rates," including financing to pay Ghariani's own salary.  *Id.*  Ghariani also allegedly "deplete[d] Global's cash reserves by making large cash purchases, such as truck, and vans . . . .  Many of these cash purchases were unrelated to Global's business."  *Id.* at 25.  Ghariani also allegedly "diverted over $300,000.00 of Global funds to a separate bank account that was under his control."

---

[5]Although Global Oil's original Complaint explicitly stated that Wilfred had sold Global Oil to Grifco in 2005, its Amended Complaint states only that "[i]n 2007, Lyamec . . . acquired ownership of Global Oil Tools."  (R. Doc. 116, p. 5).

*Id.* The Barnhills contend that as a result of these and other actions, Ghariani depleted Global's cash reserves. *Id.*

The Barnhills have brought claims for fraud, alleging that Dial obtained control of Global Oil from Wilfred without paying full consideration. *Id.* at 26. The Barnhills also re-alleged their state-law claims against Global Oil for, *inter alia*, breach of contract, return of Global Oil stock, and unpaid wages and vacation pay. *See* (No. 12-3041, R. Doc. 1-1).

### C.   Prior Proceedings and Re-Issued Subpoena

On January 2, 2013, the Court issued an Order quashing a subpoena directed towards Bergeron. (R. Doc. 117). The Court's grounds for doing so included the fact that the subpoena fell outside of the "relevant period." *Id.* at 7. The Court's Order stated that "nothing prevents Global Oil from re-issuing [the] subpoena[] in conformity with the 'relevant period.'" *Id.*

Later that day, Global Oil propounded a new subpoena upon Bergeron (R. Doc. 125-3, p. 3).[6] This second subpoena requested "federal and state tax returns" and "work papers and supporting documents" from Barnhill Industries, Inc., DSM, Pro-Line Products & Services, Inc., ("Pro-Line") as well as Wilfred, Diane, and Brian Barnhill. (R. Doc. 125-3, p. 6). It also requested "emails to and from Wilfred J. Barnhill, Diane Barnhill, and Brian Barnhill." *Id.* The information was limited to the

---

[6]At an October 3, 2012 motion to quash a subpoena issued in this case, the Court found that the "relevant period" for discovery was between May 24, 2010 and June 30, 2012. Prior to entry of a written Order, Global Oil moved for reconsideration of the "relevant period." (R. Doc. 85). At the November 21, 2012 oral argument on Global Oil's Motion for Reconsideration, counsel for Global Oil indicated that re-issuing the subpoenas would be costly to his client, and also indicated his intention to appeal the Undersigned's ruling denying the motion to reconsider. Subsequently, on December 3, 2012, the Court issued an Order regarding three other subpoenas issued by Global Oil, in which it defined the scope of the "relevant period" as between May 24, 2010 and June 30, 2012, as stated at the October 3, 2012 oral argument. (R. Doc. 114, p. 6). The Court then denied Global Oil's Motion for Reconsideration of the "relevant period" on January 3, 2013. (R. Doc. 118). After the Court issued its January 3, 2013 Order denying Global Oil's Motion for Reconsideration, on January 15, 2013, Global Oil indeed appealed not only that ruling, but also every other discovery motion which the Undersigned has issued in this case which relied upon the "relevant period." (R. Doc. 126, p. 1). This included the prior subpoena to Bergeron. *Id.* However, if Global Oil was concerned about the costs of prosecuting the instant suit, as indicated to the Court at the November 21, 2012 oral argument, then it is not clear to the Court why Global Oil *immediately* re-issued its subpoena to Bergeron on January 2, 2013, when its Motion for Reconsideration of the "relevant period" was still under submission.

period between May 24, 2010 and June 30, 2012.  *Id.*  The Barnhills have opposed the motion.

## II.    <u>Standard of Review</u>

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense."  Rule 26(b)(1).  The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*  The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials.  *Herbert v. Lando*, 441 U.S. 153, 177 (1979).  Nevertheless, discovery does have "ultimate and necessary boundaries."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  Further, it is well established that "control of discovery is committed to the sound discretion of the trial court . . . ."  *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit.  *Id.*  In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues.  *Id.* at 26(b)(2)(C)(iii).

Under Rule 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

*Id.* At 45(c)(1).  Where a party fails to reasonably avoid imposing undue burdens on non-parties, "[t]he issuing court must enforce this duty and impose an appropriate sanction - which may include lost earnings and reasonably attorney's fees."  *Id.*

A motion for a subpoena must be quashed or modified where, *inter alia*, the subpoena "(i) fails to allow a reasonable time to comply . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."  Rule 45(c)(3)(A).  A court may, in lieu of the above, "order appearance or production under specified conditions if the serving party (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and (ii) ensures that the subpoenaed person will be reasonably compensated."  *Id.* at 45(c)(3)(C).

## III.   <u>Analysis</u>

### A.   <u>Subpoena at Issue</u>

In support of its motion, the Barnhills argue that Global Oil's subpoena is overbroad, in that the Court has already determined that Brian's personal tax returns are not relevant at this time.  (R. Doc. 125-1, p. 4). The Barnhills point out that in the Court's prior Order on Global Oil's Motion to Compel, it had found that Brian's personal tax return information was not relevant.  *Id.* at 2.[7]

In opposition, Global Oil argues that the Court's oral ruling at the October 3, 2012 hearing was

---

[7]The fact that the subpoena was directed to a third party in this case is of no moment.  "A motion to quash or modify a subpoena under Rule 45(c)(3) may ordinarily be made by the person to whom the subpoena is directed because only that person has standing to attach the subpoena."  *200 South Broad Street, Inc. v. Allstate Insurance Co.*, 07-9238, 2009 WL 1649721, at *2 (E.D. La. June 11, 2009).  However, "when a plaintiff claims a *personal* interest in the confidentiality of the information requested by a Rule 45 subpoena, he/she has standing to challenge the subpoena on that basis even though it is directed to a third party."  *Frazier v. Radio Shack Corp.*, 2012 WL 832285, at *2 &n.9 (M.D. La. Mar. 12. 2012) (citing, *e.g.*, *Brown v. Braddick*, 595 F.3d 961, 967 (5th Cir. 1979)).  Unquestionably, personal tax returns qualify as a "personal" interest.  *See Marshall v. GE Marshall, Inc.*, 2012 WL 5831195, at *6 (N.D. Ind. Nov. 15, 2012).  Here, even if it is true that tax records are not absolutely privileged, in this instance, given the Court's ruling at the October 3, 2012 oral argument regarding the discoverable nature of tax returns, Brian has standing to oppose this third-party subpoena.

that "for now" production of tax returns would be limited to business returns.  (R. Doc. 128-3, p. 34). The Court went on to state that, "that doesn't mean not ever."  *Id.*  Global Oil also argues that in fact the Court indicated that Wilfred's personal tax returns were relevant, as the parties agreed that he was an owner of DSM; now that the Barnhills have admitted that Brian is an owner of DSM, Global Oil should be entitled to inspect his tax returns.  *Id.* at 8.  Global Oil further contends that its subpoena was limited to the "relevant time period" which the Court established during the October 3, 2012 oral argument.  *Id.* at 9.

At oral argument, the Court asked whether the facts had changed since the last time the Court considered the issue of personal tax returns.  The Barnhills contended that notwithstanding Global Oil's filing of an Amended Complaint in which it more particularly alleged fraud, the underlying facts had not changed.  For example, even though Global Oil had now alleged that Brian owns Pro-Line, this issue is a red herring because Global Oil never alleges that Pro-Line competed with Global Oil. The Barnhills further argued that although Brian is an owner of DSM, which they concede does in fact compete with Global Oil, the Barnhills have provided them information from DSM which indicated that the company performed its own accounting.

In opposition, Global Oil indicated that at the October 3, 2012 oral argument, counsel for the Barnhills stated that DSM was a pass-through entity; however, subsequent discovery indicated that was not true, as Brian was the co-owner of this company.[8]  Global Oil also argued that Brian never informed it that he was the majority owner of DSM, even though Global Oil had propounded discovery on Brian which requested that he identify every company for which he was, *inter alia*, either a manager or a stockholder.  Although Brian admittedly indicated that he was a manager of Pro-Line and

---

[8]Global Oil's counsel explicitly stated that he did not believe counsel for the Barnhills had misled the Court, but that the Barnhills themselves had sought to mislead the Court.

DSM, he never indicated that he was the majority stockholder of DSM.

The Court found that because DSM was apparently jointly owned, there was even less reason to grant Brian's personal financial information.[9]  Although Global argued that DSM was a flow-through for both parties, the Court disagreed with their characterization of the law.[10]

Global Oil then directed the Court to a check written on behalf of Barnhill Industries to Pro-Line.  The Court noted that this check was not immediately relevant to the suit, as it was ordinary for the owner of one business to write a check to another business.  Although Global Oil argued that it had alleged fraud in its Complaint, the Court found that there was no direct correlation between the check and the allegations of fraud, and no indication in any case how production of that check now made Brian's personal financial information relevant enough to entitle Global Oil to discover it.  For these reasons, the Court found that the Barnhills had met their burden to quash the subpoena, and granted their motion accordingly.

### B.    Attorney's Fees

The Barnhills also sought attorney's fees in this case.  They argue that although "Global may not agree with the parameters set by this Court for discovery, but it cannot simply continue to act as if this Court's orders do not exist. . . . [B]ecause Global's subpoena is a willful violation of the Court's ruling denying Global's Motion to Compel, Defendants request sanctions pursuant to Rule 45(c)(1), including reasonable attorney's fees."  *Id.*

Here, the Court finds that attorney's fees are not appropriate.  At oral argument, the Court

---

[9]At the October 3, 2012 oral argument, the parties had indicated that DSM was a pass-through entity.  (R. Doc. 128-3, pp. 31-33).  Counsel for Global Oil also indicated that DSM was owned solely by Wilfred Barnhill.  *Id.* at 35. Later at oral argument, counsel for the Barnhills stated this as well.  *Id.* at 36.  Therefore, the Court denied production of Brian's personal tax returns for those years, as based on the information provided by counsel they were not relevant.

[10]Counsel represented that there were in fact two owners of DSM, Wilfred and Brian.

indicated that its prior rulings, both as to the length of the "relevant period" and as to the applicability of tax returns, were subject to reconsideration in the event more evidence was presented.[11]  Global Oil has presented new evidence supporting its entitlement to Brian's personal financial information in accordance with that Order.  The fact that the Court found their position was not legally tenable is plainly distinguishable from the Barnhills' contention that Global Oil's conduct is a "willful violation" of the Court's October 3, 2012 Order.

IV.    **Conclusion**

Accordingly,

**IT IS ORDERED** that Defendants, Wilfred J. Barnhill, Brian A. Barnhill, Diane Barnhill, and Barnhill Industries, Inc.'s, (collectively, the "Barnhills") **Defendants' Motion to Quash Subpoena Duces Tecum Directed to M. Bergeron & Co., CPAs, LLC (R. Doc. 125)** is **GRANTED** in part and **DENIED** in part.

It is **GRANTED** as to its request to quash the subpoenas at issue in this case.

It is **DENIED** as to attorney's fees.

New Orleans, Louisiana, this 22nd day of February 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[11]Admittedly, it is unclear why Global has sought to discover Brian's tax returns from a third party, and not from Brian himself.  However, the mere fact that Global Oil has sought this information from a third party does not, without more, warrant imposition of sanctions, especially as the Barnhills do no argued that the subpoena is burdensome.