UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

GLOBAL OIL TOOLS, INC.                          CIVIL ACTION

                                                NO: 12:1507 C/W
VERSUS                                          12-3041
                                                REF: ALL CASES

BARNHILL, ET AL.                                SECTION: "J" (4)


**ORDER AND REASONS**

Before the Court are Consolidated Defendants'[1] **Motion to Dismiss (Rec. Doc. 145)**, Consolidated Plaintiffs'[2] opposition thereto **(Rec. Doc. 159)**, and Consolidated Defendants' reply to same **(Rec. Doc. 167)**. Consolidated Defendants' motion was set for hearing on April 10, 2013, on the briefs. The Court, having considered the motion and memoranda of counsel, the record, and the applicable law, finds that motion should be **GRANTED in part** and **DENIED in part** for the reasons set forth more fully below.

---

[1] As used herein, "Consolidated Defendants" refers to Global Oil Tools, Inc., Lyamec Corp., Global Oil Libya, Inc., and Ray Ghariani.

[2] As used herein, "Consolidated Plaintiffs" refers to Wilfred, Diane, and Brian Barnhill, and Down-Hole Surface Manufacturing, LLC. These Consolidated Plaintiffs may also be referenced as "the Barnhills."

## PROCEDURAL HISTORY AND BACKGROUND FACTS

This consolidated action arises out of claims brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 *et seq.*, the Lanham Act, 15 U.S.C. § 1125 *et seq.*, state law claims for breach of fiduciary duties, civil fraud, misappropriation and conversion, tortious interference with business relations, and claims under the Louisiana Unfair Trade Practices Act, La. Rev. Stat. § 51:1401 *et seq*. On July 13, 2012, Global Oil Tools, Inc. ("Global Oil") filed Civil Action No. 12-1507, naming Wilfred, Diane, and Brian Barnhill, and Downhole-Surface Manufacturing, LLC, Global International Tools, Denise Leblanc, and Daniel Triche as Defendants.

On November 28, 2012, Wilfred, Diane, and Brian Barnhill filed a separate suit in the 32nd Judicial District Court for the Parish of Terrebonne naming Global Oil, Lyamec Corp. ("Lyamec"), and Global Oil Tools Libya, Inc. ("Global Libya") as Defendants. The state court suit alleged that the Defendants were liable for breach of contract, return of stock, and unpaid wages claims. On December 27, 2012, the Consolidated Defendants removed the state action to this Court as Civil Action No. 12-3041. Case No. 12-3041 was consolidated with the previously filed case, No. 12-1507, on January 4, 2013. Case No. 12-1507 became the lead case

in this matter.

On January 10, 2013, Wilfred, Diane, and Brian Barnhill, and Downhole-Surface Manufacturing, LLC filed a Counterclaim and Third-Party Demand ("CC/TP DEMAND") in case No. 12-1507. The Barnhills' CC/TP DEMAND incorporated all of the allegations from the petition in case No. 12-3041 as counterclaims in case No. 12-1507, thereby adding Lyamec and Global Libya as parties to No. 12-1507. Furthermore, the CC/TP DEMAND specifically added Ray Ghariani as a Third-Party Defendant, and also brought an additional counterclaim, Count V, which alleged fraud as to all of the newly added counterclaim parties (Lyamec and Global Libya), the third-party defendant (Ray Ghariani), and the opposing party (Global Oil).

For the purposes of this Order, the Court will describe the facts and claims in this case as taken from the Barnhills' CC/TP DEMAND and their petition in case No. 12-3041. Those facts are as follows.

Global Oil is a company that manufactures wireline tools and downhole flow control systems for the oil and gas industry. In 2005, Grifco International, Inc. ("Grifco") purchased Global Oil pursuant to a Definitive Acquisition and Purchase Agreement. At the time of the purchase, James Dial was the president of Grifco

and Wilfred Barnhill was the president of Global Oil. The Barnhills report that as part of the agreement, Wilfred Barnhill was to receive consideration valued at $4,300,000 in cash and stock. If he did not receive the full consideration, then Global Oil was to be returned to him in full ownership. The Barnhills assert that Wilfred Barnhill was paid $1 million of the consideration. Wilfred, Diane, and Brian Barnhill remained employees of Global Oil after the sale.

At some point after Grifco purchased Global Oil, Lyamec acquired ownership of Global Oil from Grifco.[3] Wilfred and Brian Barnhill remained in their respective positions following the acquisition. In 2006, the Barnhills report that Grifco refused to close the deal to purchase Global Oil and reduced its offer to $2.2 million plus $3.7 million in shares of Grifco stock. Therefore, on May 31, 2006, the parties entered an "Addendum" to the Definitive Acquisition and Purchase Agreement. Under the Addendum, half of the Grifco stock that had been issued to Wilfred Barnhill for purchase of Global Oil "became free and clear to exchange at a guaranteed strike price of a minimum of

---

[3] At the time that Lyamec acquired ownership of Global Oil, Ray Ghariani was the reported owner of Lyamec as well as Global Libya. The Barnhills allege that via this purchase, Lyamec became the lawful successor in interest to Grifco. They also allege that in the alternative, Lyamec, Global Oil, Global Libya, and Grifco are all alter egos of each other and/or are a single business enterprise.

4

0.35 cents per share and the remaining half became free and clear to exchange on the same terms on the second anniversary date."[4] The Barnhills report that "[t]thereafter, Grifco and Lyamec, through Ghariani, through various misrepresentations, convinced [Wilfred] Barnhill to exchange his Grifco stock for shares in Global Libya."[5]

On December 14, 2006, Wilfred Barnhill entered into a Voluntary Stock Assignment Agreement with Global Libya, becoming the owner of 901,000 shares of Global Libya's stock. In 2007, due to James Dial's resignation, Ray Ghariani became Global Oil's Director and President.[6]

The Barnhills report that they resigned from their positions at Global Oil in 2012. They assert that at the time of resignation, Global Oil owed all three of them thousands of dollars of unpaid wages and unused vacation time. They contend that despite repeated demands, Global Oil has refused to pay them these wages. Likewise, Wilfred Barnhill asserts that on September 13, 2012, he sent a written request to Global Libya to redeem his

---

[4] Petition, No. 12-3041, Rec. Doc. 1-1, pp. 3-4 ¶ 22.

[5] Petition, No. 12-3041, Rec. Doc. 1-1, p. 4 ¶ 23.

[6] The Barnhills note that James Dial resigned from his position due to fraud charges on which he was later convicted. Petition, No. 12-3041, Rec. Doc. 1-1, pp. 4-5  ¶¶ 27 - 31.

shares of Global Libya stock pursuant to the Voluntary Stock Assignment Agreement. He contends that he has never received a response. He further asserts that he never received full consideration for the sale of his original Global Oil stock to Grifco.

Count I of the Barnhills' petition and CC/TP DEMAND seeks specific performance for a breach of contract claim against Global Libya. Specifically, it seeks specific performance of the redemption of Wilfred Barnhill's Global Libya stock. Likewise, the Barnhills' also assert that Lyamec is the successor in interest to, alter ego of, and/or  a single business enterprise with Global Libya and, therefore, is liable  to Wilfred Barnhill as well.

Count II of the Barnhills' petition and CC/TP DEMAND asserts a claim for the return of Global Oil Stock to Wilfred Barnhill from Lyamec. Specifically, it asserts that the Definitive Acquisition Purchase Agreement is a binding contract that was entered into between Wilfred Barnhill and Grifco as well as Grifco's successors and assigns. The Barnhills state that "[o]n information and belief, Lyamec is the assignee and/or successor in interest to Grifco and/or Grifco is the alter ego of Lyamec and/or Lyamec and Grifco constitute a single business

6

enterprise."[7]  Thus,  the  Barnhills  assert  that  under  the Definitive  Acquisition  and  Purchase  Agreement  Wilfred  Barnhill has  never  received  full  compensation  owed  to  him  for  the  sale  of stock  and,  as  such,  Lyamec  must  return  the  stock  to  him.

Count  III  of  the  Barnhills'  petition  and  CC/TP  DEMAND asserts  various  claims  for  unpaid  wages  and  vacation  pay.  Count IV  asserts  a  claim  for  statutory  penalties  and  attorney's  fees based  on  those  same  unpaid  wages  claims.

On  March  5,  2013,  the  Consolidated  Defendants  filed  the instant  Motion  to  Dismiss.  The  Barnhills'  responded  on  April  1, 2013,  with  the  Consolidated  Defendants  replying  on  April  10, 2013.

On  June  14,  2013  in  an  order  and  reasons  issued  concurrently with  the  instant  Order,  the  Court  found  that  Global  Oil  had  been improperly  joined  to  the  Barnhills'  state  court  petition.  As such,  it  severed  Counts  III  and  IV,  the  Barnhills'  claims  against Global  Oil  for  unpaid  wages,  vacation  pay,  statutory  penalties, and  attorney's  fees,   from  case  No.  12-3041,  leaving  only  Lyamec and  Global  Libya  as  Defendants  in  that  suit.  Accordingly,  with reference  to  case  No.  12-3041,  the  Court  only  addresses  Counts  I and  II.  As  to  case  No.  12-1507,  the  Court  will  address  all  claims

---

[7] Petition, No. 12-3041, Rec. Doc. 1-1, p. 7 ¶ 54.

(Counts I - V), even those that were severed from case No. 12-3041, since they were incorporated prior to severance.

## THE PARTIES' ARGUMENTS

The Consolidated Defendants request that the Court dismiss the Barnhills' CC/TP DEMAND in suit No. 12-1507 and their petition in suit No. 12-3041. The Consolidated Defendants contend that the Barnhills have failed to state a claim upon which relief can be granted in both actions. First, the Consolidated Defendants argue that any and all claims related to the Definitive Acquisition Purchase Agreement were previously settled between the parties and, therefore, abandoned. This argument specifically refers to Count II. In support of this argument, the Consolidated Defendants introduce a settlement agreement between Wilfred Barnhill, Grifco, and James Dial. The Consolidated Defendants assert that the Court may take this agreement into consideration under its Rule 12(b)(6) analysis because it is central to the Barnhills' claims.

In addition, the Consolidated Defendants argue that Count II should be dismissed because (1) Lyamec is not a party to the Definitive Acquisition and Purchase Agreement; (2) the Barnhills have not alleged sufficient facts to show that Lyamec is a successor in interest, alter ego, or single business entity of

8

any person/organization that was a party to the Definitive Acquisition and Purchase Agreement; (3) the execution of the Voluntary Stock Assignment Agreement relieved Grifco of any obligations under the Definitive Acquisition Purchase Agreement; and (4) the Voluntary Stock Assignment Agreement effected a novation of the Definitive Acquisition and Purchase Agreement.

First, the Consolidated Defendants contend that under Texas Law, the Barnhills have not alleged sufficient facts to show that Lyamec is an alter ego of Grifco or that Grifco and Lyamec are a single business entity and, therefore, they assert that the corporate veil cannot be pierced. The Consolidated Defendants argue that Texas law takes a strict approach to disregarding corporate structure and requires that a party make a showing of fraud in order to pierce the corporate veil. Thus, the Consolidated Defendants argue that because the Barnhills have not pleaded fraud with particularity, their alter ego and single business enterprise claims under Count II must be dismissed. Furthermore, with regard to the Barnhills allegation that Lyamec is a single business enterprise, the Consolidated Defendants contend that even if the theory were viable, under Texas law, you cannot impute the contract of one organization, i.e. Grifco, to another, i.e. Lyamec. Thus, they contend that these claims also

fail.

Second, the Consolidated Defendants argue that the execution of the Voluntary Stock Assignment Agreement relieved Grifco of any obligations under the Definitive Acquisition and Purchase Agreement. Specifically, they contend that if Wilfred Barnhill traded his Grifco stock for shares in Global Libya, then it is clear that he cannot redeem the Grifco stock because he has divested himself of it. Along these same lines, the Consolidated Defendants also argue that because the Definitive Acquisition Purchase Agreement is governed by Nevada law,[8] the Voluntary Stock Assignment Agreement actually effected a novation of the earlier agreement.[9] The Consolidated Defendants assert that under Nevada law, "'the substitution of a new obligation for an existing one effects a novation, which thereby discharges the parties from all of their obligations under the former agreement inasmuch as such obligations are extinguished by the novation.'"[10]

---

[8] The Definitive Acquisition Purchase Agreement contains a choice of law clause which provides that Nevada law shall govern disputes over the contract. Ex. 1 to Mot., Rec. Doc. 145-2, p. 17 ¶ 10.8.

[9] The Consolidated Defendants also note that the Voluntary Stock Assignment Agreement is governed by Wyoming law, which also recognizes a novation as an agreement between all parties that discharges a valid existing obligation by substitution of a new one. Mem. in Supp. to Mot., Rec. Doc. 145-1, p. 12n.8.

[10] Mem. in Supp. of Mot., Rec. Doc. 145-1, p. 12 (quoting <u>Nevada Bank of Commerce v. Esquire Real Estate, Inc.</u>, 468 P. 2d 22, 23 (Nev. 1970)).

Next, the Consolidated Defendants assert that Count I of the petition should also be dismissed. The Consolidated Defendants argue that this count, which seeks the redemption of Global Libya stock, does not state a claim against Lyamec or Global Libya. As to Lyamec, the Consolidated Defendants assert that it is not a party to the Voluntary Stock Assignment Agreement and, therefore, not liable under it. Likewise, the Consolidated Defendants raise the same arguments that they asserted in Count II with respect to Lyamec's status as a successor in interest, alter ego, or single business entity. Furthermore, the Consolidated Defendants argue that under the Voluntary Stock Assignment Agreement, resale was only provided for in connection with any distribution or initial public offering and it was clearly not guaranteed under the contract. Thus, they contend that Wilfred Barnhill is not entitled to specific performance under the Voluntary Stock Assignment Agreement.[11]

As to Count IV, the Consolidated Defendants assert that the Barnhills' claims for penalties for unpaid wages under Louisiana

---

[11] The Consolidated Defendants also report that Counts I and II do not mention Brian or Diane Barnhill (Count IV does), but the general prayer for relief seeks damages on behalf of all of the Barnhills. Thus, the Consolidated Defendants argue that, to the extent that Count I and Count II attempt to state claims for damages on behalf of Brian and Diane Barnhill, these claims should be dismissed. In response, the Barnhills specifically note that they never sought or intended to seek relief for either Brian or Diane Barnhill under Counts I and II.

Revised Statute § 23:632 must be dismissed because the Consolidated Defendants, namely Global Oil, did not act in bad faith in withholding the disputed wages. The Consolidated Defendants assert that because the penalties can only be awarded where someone has acted in bad faith, Count IV fails to state a claim because, in this case, a bona fide dispute exists as to whether wages were owed. In support, the Consolidated Defendants point to their own allegations against the Barnhills in case No. 12-1507 as evidence that they were justified in withholding wages.

With respect to Count V, the Barnhills' fraud claim, the Consolidated Defendants argue that it must be dismissed because the settlement agreement that was executed after the Definitive Acquisition Purchase Agreement, Addendum, and Voluntary Stock Assignment Agreement settled all matters between the parties, thereby precluding the current allegations of fraud with respect to these contracts. Furthermore, the Consolidated Defendants contend that the Barnhills have not alleged fraud with sufficient particularity. Moreover, they assert that there are no specifics with regard to any alleged misrepresentations in connection with the various stock purchases. Likewise, they contend that in addition to the general fraud claims contained in Count V, it

also contains a fraudulent mismanagement claim that is lodged against Ray Ghariani as the President of Global Oil. The Consolidated Defendants assert that the Barnhills lack standing to bring a claim for fraudulent mismanagement because they were not shareholders of Global Oil during the time period that the alleged mismanagement took place.

Furthermore, the Consolidated Defendants allege that all of the claims in Count V are time barred. They assert that Count V alleges that the Consolidated Defendants conspired with each other and Jim Dial to acquire Global Oil. The Consolidated Defendants assert that this fraud allegedly arose out of the various transactions that led to Global Oil's sale, specifically, the three agreements mentioned herein, which were executed on August 5, 2005, May 31, 2006, and December 13, 2006, respectively. Thus, they assert that because fraud is governed by a prescriptive period of one year in Louisiana, the claims are time barred.

Next, the Consolidated Defendants assert that the entire CC/TP DEMAND in case No. 12-1507 must be dismissed. Specifically, the Consolidated Defendants argue that it was impermissible for the Barnhills to incorporate the complaint from case No. 12-3041 into the CC/TP DEMAND because, although consolidated, the case

remained a separate case. Furthermore, the Consolidated Defendants assert that under Federal Rule of Civil Procedure 13(h), a party may be added via counterclaim when the conditions for permissive joinder under Rule 20 are satisfied. However, Consolidated Defendants argue that a counterclaim may not be asserted solely against a person who is not already a party to the original action. Rather, the counterclaim must involve at least one existing party. Thus, they assert that joining Lyamec and Global Libya as parties via the incorporation of Counts I and II was improper. Furthermore, the Consolidated Defendants note that Count V of the CC/TP DEMAND, which is the only count in the CC/TP DEMAND that was alleged against all of the parties, does not provide an avenue for joinder because it fails to comply with the rules for permissive joinder. Specifically, Consolidated Defendants assert that the claims against all of these parties do not arise out of the same transaction, occurrence, or series of transactions and do not contain common questions of law or fact. Likewise, the reiterate that Count V fails to state a claim. Furthermore, the Consolidated Defendants argue that even if incorporation of the petition in case No. 12-3041 was proper, it was only proper as to Counts III and IV, which meet the joinder criteria.

Lastly, the Consolidated Defendants argue that the Third-Party Demand against Ray Ghariani should be dismissed because it is not proper pursuant to Rule 14. Specifically, they argue that the Barnhills cannot show a basis for the Third-Party Defendant's liability as he owes no indemnity to the Barnhills, and his liability is not contingent upon the main claims in the original suit, No. 12-1507.

In response to Global Oil's assertion that the Court may look at the settlement agreement, the Barnhills contend that the settlement agreement is outside of their pleadings and, therefore, cannot be reviewed under a Rule 12(b)(6) analysis. The Barnhills note that (1) they did not mention the settlement agreement in their petition; (2) this action does not seek to enforce it; and (3) they have not asserted that it has been breached. Therefore, they contend that it is not central to their claims and can only be introduced if the Court converts this motion to a motion for summary judgment.

With regard to the arguments lodged against Count I, the Barnhills assert that they have sufficiently alleged that Lyamec is a successor in interest, alter ego and/or single business

enterprise under Texas law.[12] They point to the following allegations as evidence thereof: (1) Lyamec exploited its control over Grifco; (2) Lyamec acquired control over Grifco and renegotiated the Definitive Acquisition Purchase Agreement; (3) Lyamec made misrepresentations to Wilfred Barnhill which caused him to exchange Grifco stock for Global Libya stock; and (4) Lyamec "committed or conspired to commit fraud against" Wilfred Barnhill.[13] Furthermore, the Barnhills contend that Nevada law, rather than Texas law, may actually be the appropriate law to follow. They assert that Grifco's place of incorporation is Nevada, and that, under Nevada law, there is no requirement that fraud be alleged in order to plead alter ego. Thus, the Barnhills assert that their alter ego claim survives under either Nevada or Texas law.

With respect to their single business enterprise allegations, the Barnhills contend that Texas will impose liability on one corporation for the obligations of another in several circumstances. Specifically, (1) where a fiction is used

---

[12] The Barnhills make arguments under Texas law without conceding that Texas law applies to this case. The Court notes that neither the Barnhills nor the Consolidated Defendants make any choice of law arguments or specifically advocate for the law they have chosen with respect to alter ego, single business enterprise, and veil-piercing theories. Rather, both parties merely assert that the law they rely on applies.

[13] Barnhill Opp., Rec. Doc. 159, p. 8.

to perpetrate a fraud, (2) where a corporation is a tool or conduit of another corporation, (3) where a corporate fiction is used to evade an existing legal obligation, (4) where a corporate fiction is used to perpetuate a monopoly, (5) where a corporate fiction is used to circumvent a statute, and (6) where a corporate fiction is used to protect from a crime. They claim that one or more of those circumstances are evidenced in their complaint and, therefore, Count II survives under Texas law.

In response to the Grifco stock redemption and novation arguments, the Barnhills note that the Consolidated Defendants have not cited any authority for their argument that Wilfred Barnhill cannot redeem the Grifco stock. Furthermore, they note that the argument is irrelevant because Wilfred Barnhill is not seeking to recover the Grifco stock, but rather, is seeking to recover the Global Oil stock that was sold to Grifco and transferred to Lyamec. Therefore, they contend that this argument is of no moment. Moreover, the Barnhills argue that nothing in the Voluntary Stock Assignment Agreement modified, amended, or superseded the Definitive Acquisition and Purchase Agreement. They note that the Voluntary Stock Assignment Agreement does not mention the Definitive Acquisition and Purchase Agreement or contain any language indicating that the parties entered into it

17

with the intent to release Grifco of any obligations. The Barnhills assert that under Louisiana law, while express or tacit remission of a debt does extinguish an obligation, such remission is never presumed and the burden of proving it lies with the Consolidated Defendants. The Barnhills argue that the Consolidated Defendants have not proven remission in the instant filings and, therefore, Count II cannot be dismissed on those grounds.

As to novation, the Barnhills assert that under either Nevada law or Wyoming law, no novation occurred. The Barnhills contend that in both states, the intent of the parties to cause a novation must be clear. They argue that nothing in the pleadings, taken in the light most favorable to them, indicates that the parties intended for the Voluntary Stock Assignment Agreement to act as a novation of the Definitive Acquisition and Purchase Agreement. Thus, they assert that this argument is without merit and that Count II cannot be dismissed on this basis.

With respect to Count I, the Barnhills argue that (1) the Consolidated Defendants' positions are not supported by the language of the Voluntary Stock Assignment Agreement, and that (2) the claims cannot be resolved on a 12(b)(6) motion. The Barnhills assert that nothing in the Voluntary Stock Assignment

18

Agreement indicates that the right to redemption was premised upon an initial public offering or conditional in any way. Furthermore, the Barnhills assert that these arguments look well beyond the face of the pleadings and are not appropriate for a motion to dismiss.

In regard to Count IV, the Barnhills contend that they have pleaded all of the essential elements of Louisiana Revised Statute § 23:632 and that the arguments raised by the Consolidated Defendants are merely defenses to the Barnhills' well pleaded claims. As such, the Barnhills contend that these arguments go to the merits and are not appropriate for a 12(b)(6) motion.

As to Count V, the Barnhills argue that they have pleaded fraud with particularity and that their claims should not be dismissed. To the extent that the Court may find that the Barnhills have failed to plead fraud with particularity, the Barnhills request that the Court grant them leave to amend. Likewise, the Barnhills also assert that they have not alleged a derivative claim, but rather, are making a claim for their own damages. The Barnhills contend that because Global Oil's Amended Complaint alleges that the Barnhills caused the financial decline of Global Oil through fraud and mismanagement, it is only proper

that the Barnhills be allowed to add Ray Ghariani in order to allege that it was in fact his mismanagement that led to Global Oil's downfall. Thus, the Barnhills maintain that their allegations and their addition of Ray Ghariani are proper under Rule 14. Furthermore, the Barnhills assert that Count V is not prescribed because they have alleged that this was a continuing tort and/or the doctrine of contra non valentem applies.

Lastly, the Barnhills assert that their CC/TP DEMAND cannot be dismissed for alleged technical defects in pleading. First, citing Rule 21, the Barnhills assert that where there is a misjoinder, the court's only remedies are to drop the misjoined parties and/or sever misjoined claims, allowing them to proceed on their own. Thus, the Barnhills assert that even if the Consolidated Defendants' arguments with regard to improper joinder have merit, the Court could not dismiss on that basis. Likewise, the Barnhills also note that Rule 10(c) specifically allows for incorporation by reference, thereby indicating that the Court should accept their incorporation of the counts from case No. 12-3041. Furthermore, the Barnhills assert that even if the incorporation was improper, they should be allowed to amend their CC/TP DEMAND because "[m]ere technical defects in a

pleading do not provide a basis for dismissal."[14] Additionally, the Barnhills assert that Rule 20 only requires one common question of law or fact, and it does not require that all questions of law and fact be common. Thus, the Barnhills assert that there is overlap among their claims and the newly added parties and, therefore, all of these parties have been permissively joined. Lastly, the Barnhills assert that they have properly pleaded their Third-Party Demand against Ray Ghariani under Rule 14.

## DISCUSSION

### A. Legal Standard

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005). The allegations "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is

---

[14] Barnhill Opp., Rec. Doc. 159, p. 21 (quoting Jones v. State of La. through Bd. of Tr. for State Coll. & Univs., 764 F.2d 1183, 1185 (5th Cir. 1985)).

plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678. "The purpose of a motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the sufficiency of the complaint, not to judge the merits of the case." First National Bank of Louisville v. Lustig, 809 F. Supp. 444, 446 (E.D. La.1992). "Dismissal is appropriate only if the district court could not afford relief to the plaintiff under any set of facts consistent with the allegations in the complaint." Shaffet v. Marquette Transp. Co., LLC, No. 10-54, 2010 WL 3943647, at *2 (E.D. La. Oct. 1, 2010) (citing Westfall v. Miller, 77 F.3d 868, 870 (5th Cir. 1996)).

**B. Analysis**

Before proceeding with its substantive analysis of the Barnhills' claims, the Court addresses a few threshold issues in this matter. First, for the purposes of the instant 12(b)(6) motion, the Court will not take the settlement agreement introduced by the Consolidated Defendants into consideration. The settlement agreement was neither mentioned in the Barnhills' complaint, nor is it central to, the Barnhills' claims.[15] As such, it is extrinsic evidence that is not appropriate under a 12(b)(6) analysis. See Fed. R. Civ. Proc. 12(d) (noting that under Rule 12(b)(6), matters outside of the pleadings must be excluded by the court or the motion must be treated as one for summary judgment). However, the Court will consider the Definitive Acquisition and Purchase Agreement, Addendum, and Voluntary Stock Assignment Agreement, as all of these documents are directly referenced in the petition/CC/TP DEMAND and form the basis of the Barnhills' claims. Collins v. Morgan Stanley Dean

---

[15] In particular, the Court notes that Global Oil cites Borders v. Chase Home Financial LLC, No. 09-3020, 2009 WL 1870916, at *1 (E.D. La. June 29, 2009), in support of its argument. In Borders, the action actually concerned the breach of the settlement agreement. Therefore, as the entire case rested on the settlement agreement itself, it was central to the plaintiff's claims. Unlike Borders, the instant action involves claims for breach of contract and return of Global Oil stock, not a breach of the settlement agreement. Thus, while the settlement agreement may be probative evidence of whether such stock needs to be returned, it is not essential to a determination before the Court, and is extrinsic to the pleadings.

<u>Witter</u>, 224 F.3d 496, 498 (5th Cir. 2000) (noting that documents attached to a motion to dismiss may be considered to be part of the pleadings when they are referenced in the plaintiff's complaint and are central to the plaintiff's claim).

Second, the Court addresses the Consolidated Defendants' arguments regarding incorporation by reference. Federal Rule of Civil Procedure 10(c) provides that, "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." Fed. R. Civ. Proc. 10(c). Rule 10(c) is not expressly limited to pleadings in the same action; however, as the Consolidated Defendants noted in their reply, on at least one occasion, the Fifth Circuit has held that a party could not adopt a cross claim that was posed in a separate action. See <u>Texas Water Supply Corp. v. RFC</u>, 204 F.2d 190, 197 (5th Cir. 1953). In <u>Texas Water Supply Corp.</u>, the court found that a party's reference to claims brought in a separate action proceeding before a different court was not sufficient to raise a claim in the suit before it. <u>Id.</u>

This Court finds that the instant case is distinguishable from <u>Texas Water Supply Corp.</u> In particular, the Court notes that, although the pleading in case No. 12-3041 was a pleading in a separate case from case No. 12-1507, No. 12-3041 had been

24

consolidated with case No. 12-1507 for pretrial purposes. As such, the cases share the same docket sheet and file under the same case number. Thus, while the cases themselves remain separate for judgment purposes, their pretrial pleadings and filings are all concentrated in one location. Accordingly, in this instance, the Court does not find that incorporating the allegations of case No. 12-3041 by reference was fatal to the Barnhills' CC/TP DEMAND. Likewise, even though the Court has severed Counts III and IV from case No. 12-3041, at the time that they were incorporated into the CC/TP DEMAND they were before this Court and, as has been explained, located in one consolidated docket. Thus, the Court will consider them as well. While the Court, in its discretion, has chosen to allow this form of pleading in the instant matter, it cautions the Barnhills that this kind of "shotgun pleading" is not favored, and will likely be ignored in the future.

### 1. CC/TP DEMAND

Accordingly, the Court moves on to its substantive analysis of the Consolidated Defendants' arguments, beginning with Count V of the CC/TP DEMAND.  The Consolidated Defendants argue that the Barnhills' fraud claim fails because they have failed to plead it with particularity. This Court agrees.

When a party pleads claims of fraud, such claims must be plead with particularity. FED. R. CIV. P. 9(b). The claimant must assert more than mere conclusory allegations or technical elements. Id. The claim must contain "particularized allegations of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation." Castillo v. First City Bancorporation of Texas, Inc., 43 F.3d 953, 961 (5th Cir. 1994) (citing Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1139 (5th Cir. 1992)).

Count V of the Barnhills' CC/TP DEMAND alleges that "Counterclaim/Third-Party Defendants committed or conspired to commit fraud against the [Barnhills]."[16] Notably, other than this statement, the Barnhills do not explain who committed the fraud, i.e. what individual, when the fraud was committed, what misrepresentations were made, and where they were made.[17] Such allegations are wholly insufficient under Rule 9(b). Nevertheless, the Court notes that "although a court may dismiss

---

[16] No. 12-1507, Rec. Doc. 124, p. 26 ¶ 52.

[17] To the extent that the Barnhills have argued that the pertinent misrepresentation was that Grifco promised it would pay the full contracted amount and failed to do so, the Court does not find that this is sufficient to state a claim for fraud. If such broad allegations satisfied the Rule 9(b) particularity standard , then all breach of contract claims would necessarily include an overarching claim for fraud. In this context, the Barnhills allegation of misrepresentation is merely reiterates their claim that the Consolidated Defendants breached their contract(s).

[a] claim [for failure to plead with particularity], is should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." Hart v. Bayer Corp., 199 F.3d 239, 248n.6 (5th Cir. 2000). As such, because it is possible that the Barnhills *could* properly plead their fraud claim, the Court finds that rather than dismissing Count V, the proper course of action is to allow the Barnhills' leave to amend Count V in order to attempt to cure the defects in the claim.

Having found that Count V is insufficient, the Court is faced with an interesting dilemma. Count V is the only claim which includes an existing party, Global Oil, as well as the new parties that the Barnhills joined via the CC/TP DEMAND, namely, Lyamec and Global Libya. Accordingly, without Count V, there is no basis for either Lyamec or Global Libya to remain joined to this suit. As the Court discussed in its related Order and Reasons regarding subject matter jurisdiction, Counts I and II are wholly separate from any claims against Global Oil and pose no joint or several liability. While they may be an early precursor to the R.I.C.O. and Lanham Act claims alleged in case No. 12-1507, they do not arise out of those claims; they do not

27

relate to them; and they do not meet the rules for permissive joinder under Rule 20.[18] Therefore, Lyamec and Global Libya are not proper counter claimants or cross claimants in case No. 12-1507.[19]

Under Rule 21, where a party has been misjoined, the court "may at any time, on just terms, add or drop a party." Fed. R. Civ. Proc. 21. Because these claims could not have been brought absent Count V, and because the Court has found that Count V is insufficient, the Court finds that it is appropriate to drop both Lyamec and Global Libya from the instant action. Furthermore, although the Barnhills have argued that the proper action is not dismissal, but rather, severance with the opportunity to be afforded a separate suit, the Court notes that the Barnhills will not be prejudiced if the Court drops their claims against Lyamec and Global Libya from suit No. 12-1507. The Barnhills have asserted these exact claims against Lyamec and Global Libya in case No. 12-3041; thus, the Barnills may pursue their claims in that suit. Furthermore, dismissing these parties, even without

---

[18] For a more complete discussion of permissive joinder, See June 14 2013 Order and Reasons on Subject Matter Jurisdiction; see also Fed. R. Civ. Proc. 13 (explaining that a party may bring a counterclaim against an opposing party and that a crossclaim may be brought against a coparty only if it "arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim").

[19] They are also not proper Third-Parties because the Barnhills cannot recover from them in the event that they lose their case against Global Oil.

the existence of case No. 12-3041, does not violate Rule 21 because it is not a complete dismissal of the action, i.e. the entirety of case No. 12-1507.[20] Thus, the Court will dismiss Lyamec and Global Libya from case No. 12-1507. The Court notes, however, that this dismissal will be without prejudice as it is possible that the Barnhills may effectively replead Count V.

The Court also finds that the Barnhills' claims against Ray Ghariani must be dismissed.[21] Under Rule 14(1), a third-party demand may be brought against "a nonparty who is or may be liable to [a defendant] for all or part of the claim against it." Fed. R. Civ. Proc. 14(1). Even assuming that the allegations in the Barnhills' CC/TP DEMAND are true, the Barnhills' allegations do not set out a claim upon which they can obtain relief. As the Consolidated Defendants have noted, the Barnhills' allege that Ray Ghariani is liable  to them for fraudulently mismanaging Global Oil. Allegations of mismanagement are derivative claims

---

[20] Rule 21 provides that,

Misjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court  may at  anytime, on just terms, add or drop a party. The court may also sever any claim against a party.

[21] The Court is cognizant that the only count lodged against him is Count V, which, as the Court has noted, is insufficient; however, the Court finds it pertinent to address Ray Ghariani specifically because the CC/TP DEMAND asserts factual allegations which indicate that he "fraudulently mismanaged" Global Oil. These facts are alleged outside of the scope of Count V and, therefore, the Court addresses them specifically.

that are only available to shareholders of a corporation. <u>Crochet</u> <u>v. Cisco Sys., Inc.</u>, No. 2002-1357 (La. App. 3 Cir. 5/28/03); 847 So. 2d 253, 256 ("'The general rule is that the right to an action against officers and directors for mismanagement or fraud that causes loss to the corporation is an asset of the corporation and may be asserted secondarily by a shareholder through a shareholder's derivative suit.'"(quoting <u>Landry v.</u> <u>Thibaut</u>, 523 So. 2d 1370, 1376 (La. App. 5 Cir. 1988)).[22] None of the Barnhills were shareholders at the time that the alleged mismanagement occurred. As such, they cannot recover, even if Ray Ghariani did mismanage Global Oil. Rather, as the Consolidated Defendants have explained, the Barnhills have asserted a defense to the claims that Global Oil has lodged against them. While the Barnhills are certainly allowed to assert defenses, they are not permitted to join Third-Party Defendants against whom they cannot recover in order to assert those defenses. Thus, the Court finds that Ray Ghariani and the claims against him should be dismissed for failure to state a claim.

Lastly, with regard to Count IV of the CC/TP DEMAND, the Court finds that the Barnhills have effectively stated a claim

---

[22] The Court notes that the Consolidated Defendants cited to Louisiana law when discussing the claims against Ray Ghariani. The Barnhills did not propose any particular state's law. As such, the Court looks to Louisiana law.

against Global Oil. In order to state a claim under Louisiana Revised Statute § 23:632, a plaintiff must allege that "(1) wages were due and owing; (2) demand for payment was made where the employee was customarily paid; and (3) the employer did not pay upon demand." Culotta v. Sodexo Remote Sites P'ship, 864 F. Supp. 2d 466, 477 (E.D. La. 2012) (internal quotations omitted). As the Barnhills aptly pointed out, the Consolidated Defendants concede that the Barnhills have alleged these requisite elements.[23] Accordingly, the Barnhills' allegations are sufficient to survive a Rule 12(b)(6) motion. Moreover, the Court notes that the arguments that the Consolidated Defendants did raise against Count IV are actually arguments that go to the merits of the claims. These arguments that are not appropriate for a rule 12(b)(6) motion and will not be considered.

### 2. Petition Case No. 12-3041

#### i.      Count II

Next, the Court looks at the sufficiency of Count II of case No. 12-3041. The Consolidated Defendants argue that Count II fails because the Barnhills have failed to sufficiently plead that Lyamec is a successor in interest to, alter ego of, or

---

[23] See Mem. in Supp. of Mot., Rec. Doc. 145-1, p.15 ("Barnhills allege that in March 2012 and November 2012, they demanded payment for wages and unused vacation, respectively, and that Global Oil Tools refused to pay.").

single business entity with Grifco under Texas law. In response, the Barnhills assert that they have successfully pleaded successor in interest, alter ego, and single business entity theories under Texas law, and/or that Nevada law is the applicable law to this suit. "When faced with a conflict of law issue, a federal court, sitting in diversity, is bound to apply the conflict of laws rules prevailing in the state in which the federal court sits." Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Therefore, this Court must look at the Louisiana conflicts of law rules to determine which state's law is applied. Truxillo v. Johnson & Johnson, No. 07-2883, 2007 WL 1853363, at *2-4 (E.D. La. June 27, 2007). Louisiana choice of law rules have been codified in Louisiana's Civil Code. They state that,

> Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.

> That state is determined by evaluating the strength and pertinence of the relevant policies of all involved

states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

La. Civ. Code Ann. art. 3515.

Because the Louisiana Civil Code does not provide any specific rules for determining which state's law applies to the claims at issue in this suit, the default rule applies.

In the instant case, neither party has expressly briefed the relevant policies underlying Texas or Nevada law with respect to alter ego. However, it does appear that the two states differ in their treatment of these areas of law. In particular, Texas's law is more restrictive, requiring an actual showing of fraud in connection with an alter ego claim, as well as a single business enterprise claim. Texas also requires that a successor in interest expressly assume the liabilities of its predecessor. In contrast, Nevada only requires that there be a sufficient showing of shared control and overlap between companies for an alter ego

and single business enterprise claim.

While the Court does not have extensive briefing on the policies behind each states' laws, the parties do discuss the relationship of each state to the parties in the dispute. Of importance, Lyamec, the party facing liability under Count I, is incorporated in Texas. Lyamec has no known ties to Nevada. Grifco, the alleged predecessor to Lyamec and the actual party to the Definitive Acquisition and Purchase Agreement is incorporated in Nevada. However, the Court notes that Grifco is not a party to this suit and faces no potential liability under the allegations in the petition. As such, the Court finds that the only relevant relationship is the relationship between Lyamec and Texas, and it is clear that Texas, like any state, has an interest in the treatment of its corporations. Nevada, however, has little interest in the treatment of an entity that was not formed under its laws. Thus, the Court finds that Texas has a greater interest in determining whether Lyamec is an alter ego of Grifco and that, as to the claims lodged against Lyamec, Texas law should apply.

The United States District Court for the Southern District of Texas explained Texas law regarding corporate successors in interest as follows,

Texas law does not generally recognize successor
liability for subsequent purchases of corporate
assets.There is no successor in interest when the
acquiring corporation did not expressly agree to assume
the liabilities of the party to the agreement because
successor has a specialized meaning beyond simple
acquisition. . . .

Furthermore the Texas legislature has refused to
recognize the theory that a successor corporation is a
mere continuation of its predecessor as an exception to
the traditional rule that a successor corporation does
not assume the liabilities of a predecessor. Section
10.254 provides,

(a) A disposition of all or part of the property of a
domestic entity, regardless of whether the disposition
requires the approval of the entity's owners or
members, is not a merger or conversion for any purpose.

(b) Except as otherwise expressly provided by another
statute, a person acquiring property described by this

> section may not be held responsible or liable for a
> liability or obligation of the transferring entity that
> is not expressly assumed by the person.

Allied Home Mortgage Corp. v. Donovan, 830 F. Supp. 2d 223, 233 (S.D. Tex. 2011).

Thus, in order for an entity to face liability as a successor in interest in Texas, a plaintiff must allege that the entity expressly assumed the predecessor's liabilities and obligations. In the instant matter, the Barnhills have not alleged that Lyamec expressly assumed Grifco's obligations when it allegedly purchased Grifco and/or Global Oil's stock. Therefore, on the face of the petition, the Barnhill's successor in interest claim is insufficient. However, to the extent that the Barnhills could successfully plead their claim, the Court finds that it is appropriate to grant them leave to amend, rather than to dismiss.

With respect to alter ego, Texas law provides that, in order to show that an entity is liable as an alter ego, a plaintiff must demonstrate, in pertinent part, that,

> the holder, beneficial owner, subscriber, or affiliate
> caused the corporation *to be used for the purpose of*

36

> *perpetrating and did perpetrate an actual fraud* on the
> obligee primarily for the direct personal benefit of
> the holder, beneficial owner, subscriber, or affiliate.

Tex. Bus. Org. § 21.223( b)(emphasis added). As the Court has already noted, the Barnhills allegations of fraud and misrepresentation do not meet the standard of particularity required by Rule 9(b) and, therefore, are also not sufficient for the purposes of meeting all of the elements of alter ego required by the Texas statute. As such, their allegations of alter ego fail to state a claim under Texas law. However, as the Court noted in its earlier discussion of the Barnhills' pleading, because it is possible that the Barnhills *could* properly plead the fraud elements of their alter ego claim, the Court will grant them leave to amend.

Furthermore, the Texas Supreme Court has made it clear that entities will not be held jointly liable merely because there is a significant overlap in their operations. <u>SSP Partners v. Gladstrong Investments (USA) Corp.</u>, 275 S.W. 3d 444, 456 (Tex. 2009) ("We hold that the single business enterprise liability theory . . . will not support the imposition of one corporation's obligations on another."). Thus, the Court finds that the single

business enterprise theory is insufficient to impose Grifco's liability on Lyamec and, accordingly, must be dismissed.

Lastly, to the extent that the Consolidated Defendants have asserted that the Voluntary Stock Assignment Agreement displaces and/or preempts the Definitive Purchase Agreement, the Court finds that these two contracts are two separate agreements. In particular, nothing in the Voluntary Stock Assignment Agreement references the Definitive Acquisition Purchase Agreement or the Addendum such that it would signal the parties' intent to have the Voluntary Stock Assignment Agreement supercede the previous agreement. As such, the Court finds that the Consolidated Defendants' arguments fail on this point.

### ii.   Count I

Consolidated Defendants also argue that Count I fails to properly assert a claim for Breach of Contract and/or Specific Performance. First, the Consolidated Defendants argue, as they did in Count II, that the Barnhills have failed to sufficiently allege that Lyamec is a successor in interest, alter ego, or single business enterprise of Global Libya. This Court agrees for the reasons previously stated in its discussion of Count II. Therefore, the Court finds that Count I fails to state a claim against Lyamec. However, as noted, the Barnhills will be granted

38

leave to amend this claim with respect to Lyamec's status as a successor in interest to Global Libya and/or as an alter ego of Global Libya.

While the Court finds that the Barnhills have failed to sufficiently plead their claim against Lyamec, it does, however, find that the Barnhills have successfully stated a claim against Global Libya. In particular, the Barnhills seek stock that Wilfred Barnhill contracted for under the Voluntary Stock Assignment Agreement. Global Libya was the signatory to the contract, and the contract provides for a redemption of stock. The Barnhills have alleged that they have requested to have the stock redeemed and that Global Libya has not complied. Thus, the Court finds that the Barnhills have sufficiently stated a breach of contract claim against Global Libya.[24]

For the foregoing reasons,

_____

[24] The Court finds that Consolidated Defendants' arguments that Wilfred Barnhill is precluded from receiving specific performance under the Voluntary Stock Assignment Agreement are without merit. In particular, under the Court's plain reading of the contract, it did not note any requirement that there be an initial public offering before stock could be redeemed and/or that Wilfred Barnhill was required to exercise his right to "piggy back" before redeeming his stock. To the contrary, the only restriction that the Court found in the contract stated that, "holders then may, at anytime after August 5th 2007, submit their shares for "GOTL" to retire as treasury it [sic] shares for the face value of $1.50 Per share." Ex. 3 to Mot., Rec. Doc. 145-4, p. 5 ¶ 8. Wilfred Barnhill alleges that he attempted to redeem his stock in 2012. As such, he can seek specific performance from Global Libya.

**IT IS ORDERED** that Consolidated Defendants' motion is **GRANTED in part** and **DENIED in part**.

With respect to Count IV of the Barnhills' CC/TP DEMAND in case No. 12-1507, the Consolidated Defendants' motion is **DENIED.** The Court finds that the Barnhills have sufficiently stated a claim.

With respect to the Barnhills' Third-Party Demand against Ray Ghariani in case No. 12-1507, the Consolidated Defendants' motion is **GRANTED**. The Court finds that the Barnhills have failed to state a claim against Ray Ghariani and, accordingly, the Barnhills claims against him are **DISMISSED with prejudice.**

With respect to Count V of the Barnhills' CC/TP DEMAND in case No. 12-1507, the Consolidated Defendants' motion is **GRANTED** as follows. The Court finds that the Barnhills have failed to state a claim, therefore, Count V is **DISMISSED without prejudice.** However, because it appears to the Court that the defects in this claim may be cured by amendment, the Barnhills are **GRANTED** leave to amend their pleading as to Count V in accordance with this Order. The Barnhills must submit an amended complaint to this Court within twenty-one (21) days of entry of this Order. Failure to amend within the required period will result in the dismissal with prejudice of Count V.

With respect to the Barnhills' counterclaims against Lyamec and Global Libya in case No. 12-1507, the Consolidated Defendants' motion is **GRANTED** as follows. The Court finds that the Barnhills have failed to state a claim against Lyamec and Global Libya and, accordingly, the Barnhills claims against them are **DISMISSED without prejudice**. However, because it appears to the Court that the defects in these claims may be cured by amendment to Count V, the Barnhills are **GRANTED** leave to amend these claims with their amendment of Count V. The Barnhills must submit an amended complaint to this Court within twenty-one (21) days of entry of this Order. Failure to amend within the required period will result in the dismissal with prejudice of Lyamec and Global Libya from case No. 12-1507. The Court notes that should the Barnhills choose to amend their CC/TP DEMAND to join Lyamec and Global Libya, the amended counts must also be in conformity with the rest of this Order.

With respect to the Barnhills' pleading of the single business entity theory against Lyamec in Counts I and II of case No. 12-3041, the Consolidated Defendants' motion is **GRANTED.** The Court finds that the Barnhills have failed to state a claim and, therefore, their claims against Lyamec under the single business enterprise theory are **DISMISSED with prejudice.**

41

With respect to the Barnhills' pleading of the successor in interest and alter ego theories against Lyamec in Counts I and II of case No. 12-3041, the Consolidated Defendants' motion is **GRANTED** as follows. The Court finds that the Barnhills have failed to state a claim and, therefore, their claims against Lyamec under the successor in interest and alter ego theories are **DISMISSED without prejudice**. However, because it appears to the Court that the defects in these claim may be cured by amendment, the Barnhills are **GRANTED** leave to amend their pleading as to these theories in accordance with this Order. The Barnhills must submit an amended complaint to this Court within twenty-one (21) days of entry of this Order. Failure to amend within the required period will result in the dismissal with prejudice of these theories in Count I and Count II and, consequently, the complete dismissal of Lyamec from case No. 12-3041.

With respect to the Barnhills' claim for return of stock from Global Libya in Count I of case No. 12-3041, the Consolidated Defendants' motion is **DENIED**. The Court finds that the Barnhills have sufficiently stated a claim.

New Orleans, Louisiana this 14th day of June, 2013.

42

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE