```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


GLOBAL OIL TOOLS, INC.                         CIVIL ACTION

VERSUS                                         NO: 12-1507
                                               REF: 12-3041

BARNHILL, ET AL.                               SECTION: "J" (4)
```

**ORDER AND REASONS**

Before the Court are Defendants' Notice of Removal (No. 12-3041, Rec. Doc. 1), Plaintiffs' court-ordered brief on jurisdiction (No. 12-1507, Rec. Doc. 170), and Defendants' court-ordered reply brief thereto (No. 12-1507, Rec. Doc. 171). The Court, having considered the memoranda of counsel, the record, and the applicable law, finds that Defendant Global Oil Tools, Inc. was improperly joined to Plaintiffs' state court petition and, consequently, that this Court has diversity jurisdiction over the claims brought against Lyamec Corp. and Global Oil Tools Libya, Inc.

**PROCEDURAL HISTORY AND BACKGROUND FACTS**

This action arises out of breach of contract, return of

1

stock, and unpaid wages claims brought under Louisiana law. On November 28, 2012, Wilfred Barnhill, Diane Barnhill, and Brian Barnhill (collectively, "the Barnhills") filed suit in the 32nd Judicial District Court for the Parish of Terrebonne, naming Global Oil Tools, Inc. ("Global Oil"), Lyamec Corp. ("Laymec"), and Global Oil Tools Libya, Inc. ("Global Libya") as Defendants. On December 27, 2012, Defendants removed the state action to this Court on the basis of diversity jurisdiction. Once removed, the case became Civil Action No. 12-3041 and was then consolidated with a previously filed suit, Civil Action No. 12-1507, on January 4, 2013. Civil Action No. 12-1507 is a RICO/Lanham Act case involving the Barnhills and Global Oil.

In their state court petition, the Barnhills allege that in 2005, Global Oil was purchased by Grifco International, Inc. ("Grifco") pursuant to a Definitive Acquisition and Purchase Agreement. At the time of the purchase, James Dial was the president of Grifco and Wilfred Barnhill was the president of Global Oil. The Barnhills report that as part of the agreement, Wilfred Barnhill was to receive consideration valued at $4,300,000 in cash and stock. If he did not receive the full consideration, then Global Oil was to be returned to him in full ownership. The Barnhills assert that Wilfred Barnhill was paid $1

million of the consideration. Wilfred Barnhill, Brian Barnhill, and Diane Barnhill remained employees of Global Oil after the sale.

At some point after Global Oil was sold to Grifco, the Barnhills assert that Lyamec acquired Global Oil's stock from Grifco and/or, in the alternative, Lyamec acquired Grifco stock and Global Libya stock.[1] The Barnhills remained in their respective employee positions following the acquisition. In 2006, the Barnhills report that Grifco refused to close the deal to purchase Global Oil and reduced its offer to $2.2 million plus $3.7 million shares in Grifco stock. Therefore, on May 31, 2006, Wilfred Barnhill and Grifco entered into an "Addendum" to the Definitive Acquisition and Purchase Agreement. Under the Addendum, half of the Grifco stock that had been issued to Wilfred Barnhill for purchase of Global Oil "became free and clear to exchange at a guaranteed strike price of a minimum of 0.35 cents per share and the remaining half became free and clear to exchange on the same terms on the second anniversary date."[2] The Barnhills report that "[t]hereafter, Grifco and Lyamec, through Ghariani, through various misrepresentations, convinced

---

[1] At the time that Lyamec allegedly acquired Global Oil's stock, Ray Ghariani was the reported owner of Lyamec as well as Global Libya.

[2] Petition, No. 12-3041, Rec. Doc. 1-1, pp. 3-4 ¶ 22.

[Wilfred] Barnhill to exchange his Grifco stock for shares in Global Libya."[3]

Subsequently, on December 14, 2006, Wilfred Barnhill entered into a Voluntary Stock Assignment Agreement with Global Libya, becoming the owner of 901,000 shares of Global Libya's stock. In 2007, due to James Dial's resignation, Ray Ghariani became Global Oil's Director and President.[4]

The Barnhills report that they resigned from their positions at Global Oil in 2012. They assert that at the time of resignation, Global Oil owed all three of them thousands of dollars of unpaid wages and unused vacation time. They contend that despite repeated demands, Global Oil has refused to pay them the amounts owed. Likewise, Wilfred Barnhill asserts that on September 13, 2012, he sent a written request to Global Libya to redeem his shares of Global Libya stock pursuant to the Voluntary Stock Assignment Agreement. He contends that he has never received a response. He further asserts that he never received full consideration for the sale of his original Global Oil stock to Grifco. As such, he seeks damages from Global Libya and/or

---

[3] Petition, No. 12-3041, Rec. Doc. 1-1, p. 4 ¶ 23.

[4] The Barnhills note that James Dial resigned from his position due to fraud charges on which he was later convicted. Petition, No. 12-3041, Rec. Doc. 1-1, pp. 4-5 ¶¶ 27-31.

Lyamec. He alleges that they are the lawful successors in interest to Grifco and each other, and/or they are Grifco and each others' alter egos, and/or they all operate as a single business enterprise.

Count I of the Barnhills' petition seeks specific performance for a breach of contract claim against Global Libya. Specifically, it seeks specific performance of the redemption of Wilfred Barnhills' Global Libya stock under the Voluntary Stock Assignment Agreement. Likewise, the Barnhills' also assert that Lyamec is the alter ego and/or successor in interest of Global Libya and, therefore, is liable to Wilfred Barnhill as well for the return of Global Libya stock.

Count II of the Barnhills' petition asserts a claim for the return of Global Oil stock to Wilfred Barnhill from Lyamec. Specifically, it asserts that the Definitive Acquisition Purchase Agreement is a binding contract that was entered into between Wilfred Barnhill and Grifco as well as Grifco's successors and assigns. The Barnhills' state that "[o]n information and belief, Lyamec is the assignee and/or successor in interest to Grifco and/or Grifco is the alter ego of Lyamec and/or Lyamec and Grifco constitute a single business enterprise."[5] Thus, the Barnhills

---

[5] Petition, No. 12-3041, Rec. Doc. 1-1, p. 7 ¶ 54.

assert that under the Definitive Acquisition and Purchase Agreement Wilfred Barnhill has never received the full compensation owed to him for the sale of stock and, as such, Lyamec must return the stock to him.

Count III of the Barnhills' petition asserts various claims for unpaid wages and vacation pay on behalf of Wilfred, Brian, and Diane Barnhill against Global Oil. Count IV asserts a claim for statutory penalties and attorney's fees based on those same unpaid wages claims.

As noted, the Defendants' removed this case to federal court on December 27, 2012, on the basis of diversity jurisdiction. In their Notice of Removal, Defendants assert that Global Oil was improperly joined to the state court action in order to defeat federal subject matter jurisdiction. Therefore, they contend that because Global Oil, a nondiverse defendant, was improperly joined, and because all other Defendants are diverse from the Plaintiffs, jurisdiction is proper in this Court.

On May 21, 2013, the Court, *sua sponte*, ordered the parties to brief the question of subject matter jurisdiction over case No. 12-3041.  The Barnhills complied with the Court's order on May 30, 2013, filing their brief and asserting that Global Oil was properly joined in this action. On June 3, 2013, Defendants

filed their opposition brief.

## THE PARTIES' ARGUMENTS

Defendants argue that a party is improperly joined where "a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability, and when the claims against the diverse defendant have no real connection to the claims against the nondiverse defendant."[6] They contend that state law governs the joinder analysis under this standard, as it was the law applicable at the time of joinder.

Defendants assert that Louisiana law provides that, "[t]wo or more parties may be joined in the same suit, either as plaintiff or as defendants, if . . . there is a community of interest between the parties joined."[7] Defendants aver that "community of interest" has been defined as "the parties' causes of actions (or defenses) 'arising out of the same facts, or presenting the same factual and legal issues."[8] Thus, the Defendants argue that Counts I and II of the Barnhills' petition do not arise out of or assert the same facts as Counts III and IV

---

[6] Defs.' Brief, Rec. Doc. 171, p. 3 (citing Davis v. Cassidy, No. 11-1563, 2011 WL 6180054, at *2 (E.D. La. Dec. 3, 2011)).

[7] Defs.' Brief, Rec. Doc. 171, p. 4 (quoting La. Code of Civ. Proc. art. 463).

[8] Defs.' Brief, Rec. Doc. 171, p. 5 (citing Davis, 2011 WL 6180054, at *4).

of the petition. Specifically, they note that Counts I and II both involve the initial sale of Global Oil's stock and various transactions allegedly related to that sale, which took place afterwards. Furthermore, they note that those two counts include the same parties. In contrast, Defendants argue that Counts III and IV do not involve any of the Defendants implicated in the previous counts and, more importantly, do not concern the same contracts and transactions. Defendants contend that there is no relation between the unpaid wages claims, which revolve around the Barnhills' employment contracts with Global Oil, and the earlier contractual claims. As such, Defendants contend that Global Oil was improperly joined and, consequently, that this Court has diversity jurisdiction.

In response, the Barnhills assert that the correct standard for determining improper joinder is Federal Rule of Civil Procedure 20, which states that parties may be joined where "[a]ny right to relief is asserted against them jointly, severely, or in the alternative with respect to or arising out of the same transaction, occurrence or series of transactions or occurrences."[9] They contend that their petition clearly shows a

---

[9] Barnhills' Brief, Rec. Doc. 170, p. 3 (quoting Fed. R. of Civ. Proc. 20(a)).

"series of transactions or occurrences" involving all of the named Defendants, thereby indicating that Global Oil was properly joined. In particular, they assert that Global Oil is/was under the direction of Ray Ghariani, who is also the president of Lyamec and Global Libya. Furthermore, the Barnhills argue that even if Louisiana law applies, they have still demonstrated a sufficient nexus between the various counts and underlying events such that it is "'commonsensical to litigate them together.'"[10]

## DISCUSSION

**A.   Subject Matter Jurisdiction**

In deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), "the district court is 'free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case.'" Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005).  The party asserting jurisdiction must carry the burden of proof for a Rule 12(b)(1) motion to dismiss. Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 762 (5th Cir. 2011).  The standard of review for a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to

---

[10] Barhills' Brief, Rec. Doc. 170, p. 6 (quoting Mauberret - Lavie v. Lavie, Nos. 03-99, 03-100 (La. App. 4 Cir. 6/11/03); 850 So.2d 1, 2).

Rule 12(b)(6). United States v. City of New Orleans, No. 02-3618, 2003 WL 22208578, at *1 (E.D. La. Sept. 19, 2003).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). The court is not, however, bound to accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678.

    B.   **Removal**

Generally, a defendant may remove a civil action filed in state court if a federal court would have had original jurisdiction. See 28 U.S.C. § 1441(a). Original diversity jurisdiction exists where the matter in controversy exceeds $75,000 and is between citizens of different states. 28 U.S.C. § 1332(a)(1). A defendant bears the burden of proving by a

preponderance of the evidence that jurisdiction exists. De Aquilar v. Boeing Co., 47 F.3d 1404, 1412 (5th Cir. 1995). The jurisdictional facts supporting removal are examined as of the time of removal. Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 883 (5th Cir. 2000). Ambiguities are construed against removal and in favor of remand because removal statutes are to be strictly construed. Manguno v. Prudential Prop. & Cas. Ins., 276 F.3d 720, 723 (5th Cir. 2002).When a nondiverse party is properly joined as a defendant, no defendant may remove the case under 28 U.S.C. § 1332. However, a defendant may remove where he shows that the nondiverse party was improperly joined. Smallwood v. Ill. Cent. R.R. Co., 352 F.3d 220, 222 (5th Cir. 2003).

**C. Analysis**

In the instant case, the applicable improper joinder rule was established in Tapscott v. MSDealer Service Corp., 77 F.3d 1353 (11th Cir. 1996), abrogated on other grounds by Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir. 2000). Although this rule was established in the Eleventh Circuit, it has been subsequently recognized by the Fifth Circuit in Ross v. Citifinancial, Inc., 344 F.3d 458, 461 (5th Cir. 2003), and has been applied in this District as well. See, e.g., Davis, 2011 WL 6180054 at *2 (explaining the Fifth Circuit's recognition of the

Tapscott rule and applying it to the case before it). The Tapscott rule holds that improper joinder may have occurred where a diverse defendant is joined with a nondiverse defendant with whom it does not have joint, several or alternative liability, and the claims brought against the nondiverse defendant have no real connection to claims brought against the diverse defendant. See Tapscott, 77 F.3d at 1359-60. "Under Tapscott, only 'egregious' misjoinder of parties with no real connection to each other, and not 'mere' misjoinder, constitutes improper joinder under federal law." Davis, 2011 WL 6180054 at *2 (quoting Tapscott, 77 F.3d at 1360). Furthermore, courts in this District have determined that when applying Tapscott, the joinder analysis should proceed under state law, as it is the procedural law that governed the parties' at the time that the suit was originally filed. Davis, 2011 WL 6180054 at *3 - 4; Accardo v. LaFayette Ins. Co., No. 06-8568, 2007 WL 325368, at *4 - 5 (E.D. La. Jan. 20, 2007). As such, this Court applies Louisiana law in determining whether Global Oil was improperly joined.

Under Louisiana law, "[c]umulation of actions is the joinder of separate actions in the same judicial demand, whether by a single plaintiff against a single defendant, or by one or more plaintiffs against one or more defendants." La. Code Civ. Proc.

art. 461. Article 463 provides a three part test for joinder which states that,

> Two or more parties may be joined in the same suit, either as plaintiffs or as defendants, if:
>
> (1) There is a community of interest between the parties joined;
>
> (2) Each of the actions cumulated is within the jurisdiction of the court and is brought in the proper venue; and
>
> (3) All of the actions cumulated are mutually consistent and employ the same form of procedure.

La. Code Civ. Proc. art. 463. In the instant case, the parties do not argue that prongs two and three have not been met. Rather, they contend that this case turns on the community of interest prong.

A "community of interest" is defined as "the parties' causes of actions (or defenses) 'arising out of the same facts, or presenting the same factual and legal issues.'" Stevens v. Bd. of Trustees of Police Pension Fund of City of Shreveport, 309 So.2d 144, 147 (La. 1975). It is generally deemed to be present where

there is "enough factual overlap . . . between [] cases to make it commonsensical to litigate them together." Mauberret-Lavie v. Lavie, 850 So.2d at 2. The community of interest requirement "reflects a policy-value . . . to avoid where possible multiplicity of actions in the interests of judicial efficiency, providing it can be done without unfairness to the parties affected." La. Code Civ. Proc. art. 463, Comment (c).

Defendants argue that there is no community of interest between Counts I and II and Counts III and IV and, therefore, that Global Oil was improperly joined. This Court agrees. In making this determination, the Court finds the reasoning of the court in Laborde v. American National Property & Casualty Companies, No. 00-01091 (La. App. 3 Cir. 1/31/01); 780 So.2d 501, persuasive. In Laborde, the court considered whether a plaintiff had improperly joined defendants with whom she had been in three separate car accidents. 780 So.2d at 502-03. The plaintiff argued that her claims were related because the second two accidents necessarily aggravated the injury that she had obtained in the first accident. Id. The court reasoned that there were no common facts among the three tortfeasors relating to liability, and that the plaintiff would need to prove liability and injuries separately as to each party. Id. Thus, it found that there was no

14

community of interest. Id.

In the instant case, while Global Oil was the subject of the sale that led to the Barnhills' claims in Counts I and II, it has no other involvement with those claims and cannot face any liability for the transactions at issue in the claims. Likewise, the claims in Counts III and IV, which arose approximately five to six years after the claims in Counts I and II, have no relation to Lyamec or Global Libya and, as alleged, do not arise out of any of the previous transactions involving the sale of Global Oil. Rather, the claims in Counts III and IV are wholly separate both legally and factually and will stand or fail on an independent determination of liability.[11] As such, they do not constitute a community of interest and were improperly joined.

In addition, the Court also finds that two Eastern District cases support this determination.[12] In Savoie v. Safeco Insurance Co. of America, No. 06-7808, 2007 WL 675304 (E.D. La. Feb. 27,

---

[11] To the extent that it may be argued that there is overlapping liability because Lyamec owns Global Oil, the Court notes that Global Oil is a separate legal entity from Lyamec and Global Libya. Furthermore, the Barnhills' do not allege that either of these two organizations are responsible for the alleged unpaid wages.

[12] The Court notes that the Eastern District cases discuss joinder under Federal Rule of Civil Procedure 20, rather than the Louisiana rule for joinder. However, because the standards are similar, the Court finds them persuasive. Furthermore, the Court notes that the Barnhills have actually argued for the application of Federal Rule of Civil Procedure 20 and have asserted that the analysis comes out the same under both standards. Accordingly, the Court does not find that its review of cases under Rule 20 prejudice the Barnhills in anyway.

2007), the court considered whether plaintiff had improperly joined claims against a home insurer for hurricane coverage and a contractor for improper post-hurricane repair. Id. at *1. In that case, the court found that claims were independent because they did not involve common questions of law or fact. Id. In particular, the court noted that the claims against the insurance company were contract claims, whereas the claims against the contractor were negligence claims. Id. As such, the court found that they were not dependent upon one another and should be determined separately. Id. at *1-2.

Likewise, in Berthelot v. Boh Brothers Construction Co., No. 05-4182, 2006 WL 1984661 (E.D. La. June 1, 2006), the court considered whether claims against the Board of Commissioners for the Orleans Levee District were properly joined with claims brought against insurers that arose out of damage cause by the failure of the 17th Street Canal after Hurricane Katrina. 2006 WL 1984661 at *1. The court found that the alleged tortuous actions of the Orleans Levee District were separate from the contractual claims lodged against the insurers and, therefore, the joinder of the two was improper. Id. at *11 - 12.

In the instant case, like the claims in Savoie and Berthelot, the claims lodged against Global Libya and Lyamec are

16

separate and distinct from the claims lodged against Global Oil. In particular, the Court notes that the common thread in all three of the aforementioned cases is the court's recognition that the potential liability of one defendant was wholly independent of the other. See Hospitality Enter., Inc. v. Westchester Surplus Lines Ins. Co., No. 11-234, 2011 WL 1303954, at *5 (E.D. La. March 31, 2011) (evaluating joinder under Louisiana law and noting that a key factor in cases finding improper joinder is the independent nature of the liability that the defendants face). That is true in the instant case as well, neither Global Libya or Lyamec face any liability for the claims lodged against Global Oil in Counts III and IV and vice versa. As such, the Court finds that Global Oil was improperly joined and, as these actions are wholly separate and independent of each other, that such joinder was egregious. Consequently, the Court finds that it has subject matter jurisdiction over Counts I and II because the Defendants in those claims are diverse from the Plaintiffs and the amount in controversy exceeds $75,000. Accordingly,

**IT IS ORDERED** that Counts III and IV of case No. 12-3041 are **SEVERED** and **REMANDED** back to the 32nd Judicial District for the Parish of Terrebonne, Louisiana.

New Orleans, Louisiana this 14th day of June, 2013.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE