UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


GLOBAL OIL TOOLS, INC.                    CIVIL ACTION

VERSUS                                    NO: 12-1507

WILFRED J. BARNHILL ET AL.                SECTION: "J" (4)


## ORDER AND REASONS

Before the Court is Counterclaim and Third Party Defendants'
("Counter-defendants") **Motion to Dismiss the Barnhills' Amended
Counterclaim in 12-1507 and Amended Complaint in 12-3041 (Rec.
Doc. 176)**, Counter-plaintiffs' opposition (Rec. Doc. 179), and
Counter-Defendants' reply thereto (Rec. Doc. 186). Counter-
Defendants' motion was set for hearing on August 28, 2013 on the
briefs. The Court, having considered the motions and memoranda of
counsel, the record, and the applicable law, finds that Counter-
defendants' motion should be **GRANTED IN PART** and **DENIED IN PART**
for the reasons set forth more fully below.

1

## PROCEDURAL HISTORY AND BACKGROUND FACTS

**A. Background Facts**

The following factual summary is compiled from Counter-plaintiffs' Wilfred J. Barnhill ("Barnhill"), Brian Barnhill, and Diane Barnhill, (collectively, "the Barnhills")'s Amended Counterclaim and Amended Complaint. Though many of these facts are contested, they will be taken as true for the purposes of the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Barnhill started Global Oil Tools, Inc. ("Global Oil Tools") in 1979, operating it on his own, as a family business, for decades. In December 2004, Ray Ghariani ("Ghariani"), representing Lyamec, Inc. ("Lyamec"), approached Barnhill concerning a possible partnership that would allow Global Oil Tools to expand into the African market, especially in Ghariani's home country of Libya. As a result, Barhnhill entered into several agreements to transfer certain information to Ghariani in April and May of 2005.

Barnhill alleges that, concurrently, James Dial ("Dial"), CEO of Grifco International, Inc. ("Grifco") approached Barnhill about Grifco purchasing Global Oil Tools. At this time, Ghariani intervened to facilitate negotiations between Global Oil

2

Tools/Barnhill and Grifco/Dial. During these negotiations, Ghariani assured Barnhill that Ghariani and Lyamec would "take care to protect [Barnhill] and Global [Oil Tools] correctly." Rec. Doc. 174, p. 4, ¶ 14. Barnhill further alleges that, during this time, Lyamec/Ghariani and Grifco/Dial were negotiating a hidden side deal that would allow Dial to participate in the Libya partnership.

Barnhill alleges that Ghariani drafted a "Definitive Agreement Between Global Oil Tools, Inc. And Grifco, International" wherein:

> Grifco promised to pay Barnhill $4,500,000.00 in cash and stock for the purchase of Global Oil Tools. The consideration was to be paid in phases, which included: (a) a $500,000.00 deposit; (b) $500,000.00 in cash and $1,250,000.00 in stock at closing; (c) $500,000.00 in cash and $750,000.00 in stock on the first anniversary date; and (d) $500,000.00 in cash and $500,000.00 in stock on the second anniversary date.

Rec. Doc. 174, p. 4, ¶ 16. In addition to the sums above, there was also a promise that Grifco would pay an additional $1.5 million, which was to be paid directly to Barnhill by Libyan investors. Barnhill alleges that, in reliance on these promises, the Barnhills sold their stock in Global Oil Tools to Grifco on August 5, 2005 pursuant to a "Definitive Acquisition Purchase Agreement" ("DAPA"). Barnhill asserts that he received one million dollars but never received the balance of the

consideration promised, and that Dial never intended to honor the terms of the DAPA. Following the DAPA, Barnhill, his wife, Diane, and his son, Brian, continued to be employed by Global Oil Tools; however, Dial replaced Barnhill as the President, Director, and CEO of Global Oil Tools.

In 2005, unbeknownst to Barnhill, and while Ghariani purported to represent his best interests, Lyamec acquired over three million dollars in Grifco stock, which gave Lyamec a significant interest in Grifco. Then, in March 2006, Grifco refused to close the deal to purchase Global Oil, which resulted in a renegotiation of the purchase price. Lyamec/Ghariani once again offered to mediate the negotiations, eventually negotiating an Addendum to the DAPA that was signed on May 31, 2006. Under the terms of the Addendum, the price that Grifco paid for Global Oil Tools was reduced to $ 2.2 million plus $ 3.7 million in Grifco stock. The Addendum provided that "half of the Grifco stock issued to W. J. Barnhill became free and clear to exchange at a guaranteed strike price of a minimum of 0.35 cents per share and the remaining half became free and clear to exchange on the same terms on the second anniversary date." Rec. Doc. 174, p. 7, ¶ 38.

Over the course of 2006, Ghariani gradually took control of

Global Oil Tools, despite the fact that Grifco owned Global Oil Tools and Dial was the President and Director of Global Oil Tools. In September 2006, Ghariani announced a merger of Global Oil Tools and Global Libya so that Lyamec would have "complete and full control for the unified oversight on Global Oil Tools (Houma) and Global Oil Tools (Libya)." Rec. Doc. 174, p. 8, ¶ 41. A few days later, Dial appointed Lyamec, represented by Ghariani, as the Director of Global Oil Tools.

Once Ghariani officially assumed control of Global Oil Tools, Ghariani and Lyamec conspired with Grifco to convince the Barnhills to exchange their stock in Grifco, which was acquired under the Addendum to the DAPA, for stock in Global Libya. Barnhill claims that Lyamec and Grifco, through Ghariani, made several misrepresentations, including: (1) that Ghariani would fulfill Grifco's obligation to pay off some of Global Oil Tools' debts that Barnhill had personally guaranteed, (2) that Ghariani would pay Brian Barnhill a deficiency to which he was entitled because he could not sell his Grifco stock for the minimum strike price in the Addendum, (3) that Barnhill would get 10% of all royalties for Global Libya products sold, (4) that Global Libya was Global Oil Tools' parent company, thus giving the Barnhills an indirect interest in Global Oil Tools if they were

5

to exchange their Grifco stock, (5) that their Grifco stock was worthless because of Dial's stock fraud investigation, and (6) that Global Libya was capitalized by millions of dollars from Libyan investors. On December 14, 2006, allegedly based on these representations, Barnhill entered into a Voluntary Stock Assignment Agreement ("VSAA") with Global Libya, under which he obtained 901,000 shares in Global Libya at a guaranteed price of $1.50 per share. Barnhill alleges that this price was false, that neither Dial nor Ghariani had any intention to honor the VSAA, and that the stock proved to be worthless.

In 2007, while Dial was under investigation by the Harris County District Attorney's Office, and eventually the Federal Bureau of Investigation, as well as by the United States Securities and Exchange Commission, Dial resigned as President and CEO of Global Oil Tools, officially appointed Ghariani as Global Oil Tools' sole Director, President, and CEO, and transferred ownership of Global Oil Tools to Lyamec. Barnhill alleges that, on information and belief, Lyamec did not pay Grifco when it acquired Global Oil Tools. Ghariani thereafter severely mismanaged Global Oil Tools, depleting its cash reserves and funneling its assets into Global Libya.

Barnhill remained employed by Global Oil Tools until

6

January 2012 when he and Diane Barnhill resigned. On September 13, 2012, Barnhill sent a written request to Global Libya for redemption of his shares as permitted by the VSAA, but never received a response. Moreover, Barnhill alleges that he has only received a fraction of any consideration that he was promised in the sale of Global Oil to Grifco.

**B. Procedural History**

Global Oil Tools, Inc. filed suit on June 13, 2012 against the Barnhills, Denise LeBlanc ("LeBlanc"), Daniel Triche ("Triche"), Downhole-Surface Manufacturing ("DSM"), and Barnhill Industries, Inc. d/b/a Global International Tools, ("GIT"). The Complaint alleged violations of 18 U.S.C. § 1962 ("RICO"), 15 U.S.C. § 1125 (the "Lanham Act"), and various Louisiana state law claims. This matter will be referred to as matter number 12-1507.[1]

On November 14, 2012, after matter number 12-1507 had already commenced, the Barnhills filed suit in the 32nd Judicial District Court for the Parish of Terrebone against Global Oil Tools, Lyamec, and Global Libya. The Complaint demanded specific

_____

[1] The underlying facts of these claims are not related to the claims at issue in the instant motion and are fully set out in the Court's Order and Reasons dated November 10, 2012 (Rec. Doc. 108), thus will not be summarized.

performance due to an alleged breach of the VSAA, return of stock due to a breach of the DAPA, unpaid wages, vacation pay, statutory penalties, and attorneys' fees, all under Louisiana state law. Defendants removed the matter to the Eastern District of Louisiana, and it was assigned matter number 12-3041. This Court then consolidated cases 12-3041 and 12-1507 on January 4, 2013.

On January 10, 2013, once 12-3041 was transferred and consolidated, the Barnhills filed a Counterclaim and Third Party Demand in matter number 12-1507 against Global Libya, Global Oil Tools, Lyamec and Ghariani (collectively, the "Counter-defendants"). The Counterclaim and Third Party Demand incorporated the allegations from the Barnhills' Complaint in 12-3041 and added Count V, which alleged fraud in relation to the DAPA Addendum and the VSAA.

Counter-defendants  filed a 12(b)(6)  motion to dismiss, seeking dismissal of all of the counts in the Barnhill's Counterclaim in 12-1507 and Counts I, II, and IV of the Complaint in 12-3041. On June 17, 2013, the Court issued two separate Orders and Reasons in which the Court (a) severed Counts III and IV in 12-3041 and remanded the claims to state court (Rec. Doc. 173), and (b) granted the Counter-defendants' motion to dismiss

in part (Rec. Doc. 172). Specifically, the Court (1) dismissed Ghariani from the suit with prejudice, (2) dismissed Count V in the Counterclaim in 12-1507 without prejudice, (3) dismissed Counts I and II in the Counterclaim in 12-1507 without prejudice conditioned on the dismissal of Count V, and (4) dismissed Lyamec without prejudice from Counts I and II in 12-3041.[2]

The Court granted the Barnhills leave to amend all claims that were dismissed without prejudice. On July 3, 2013, the Barnhills filed an Amended Complaint in 12-3041, wherein they only asserted Count I for breach of the DAPA against Lyamec and Count II for breach of the VSAA against Lyamec and Global Libya. (Rec. Doc. 174) On the same day, the Barnhills filed an Amended Counterclaim in 12-1507, which alleged the same counts against the same parties as did the original Counterclaim. (Rec. Doc. 175) The Counter-defendants filed the instant motion to dismiss on July 22, 2013, seeking dismissal of both the Amended Counterclaim in 12-1507 and the Amended Complaint in 12-3041, and the Barnhills filed their opposition on August 20, 2013. (Rec. Docs. 176, 179). The Counter-defendants filed a reply memorandum

---

[2] Note that earlier in the proceedings, the Barnhills filed a motion to dismiss in 12-1507. (Rec. Doc. 21) The Court granted the motion in part but gave the plaintiffs leave to amend (Rec. Doc. 108). Plaintiffs filed an Amended Complaint (Rec. Doc. 116), and the Barnhills have not challenged the amended pleadings.

on August 27, 2013. (Rec. Doc. 188).

## PARTIES' ARGUMENTS

The Counter-defendants seek dismissal of both the Amended Counterclaim in 12-1507 and the Amended Complaint in 12-3041. Specifically, they seek: (1) the dismissal of all Counterclaims against Lyamec, Global Libya, and Ghariani, (2) the dismissal of Lyamec, Global Libya, and Ghariani from 12-1507, (3) the dismissal with prejudice of Count I in both the Amended Complaint and the Amended Counterclaim, and (4) the dismissal of Lyamec with prejudice from Count II in the Amended Complaint and the Amended Counterclaim.

Counter-defendants argue that the Barnhills' amendments are insufficient to avoid dismissal. Specifically, Counter-defendants argue that the Barnhills improperly attempt to add Ghariani as a third party defendant in 12-1507 when the Court has already dismissed Ghariani with prejudice. Initially, Counter-defendants claim that *res judicata* bars this claim, but then retreat from that assertion in their reply memorandum, simply noting that, though *res judicata* may not bar the claim, the new claim against Ghariani cannot be brought because he was dismissed with prejudice from the suit.

10

As to Count V of the Amended Counterclaim, wherein Barnhill alleges fraud against Global Oil, Lyamec, Global Libya, and Ghariani, Counter-defendants assert that the claim should be dismissed because: (a) the claim is insufficiently pled under Federal Rule of Civil Procedure 9(b), (b) the fraud claims are prescribed, and (c) the Counterclaim fails to state a claim for fraud.

Further, Counter-defendants argue that, even if Counts I and II of the Amended Counterclaim state a claim against any of the Counter-defendants, Lyamec, Global Libya, and Ghariani must nonetheless be dismissed from matter number 12-1507. Counter-defendants argue that Global Oil is not implicated in Count V of the Amended Counterclaim, which was originally the only claim that involved all of the Counter-defendants. With the dismissal of Global Oil from Count V, the only parties remaining in the Counterclaim are those who are not part of the original Complaint filed by Global Oil Tools. Therefore, these three parties are improperly joined under Federal Rules of Civil Procedure 13 and 20 and must be dismissed.

As to Counts I and II in 12-3041's Complaint, which demand a return of stock pursuant to the DAPA and breach of the VSAA, Counter-defendants essentially argue that the Barnhills may only

11

assert Count I against Grifco and Count II against Global Libya, because these entities were parties to the contract. The Counter-defendants argue that the Barnhills cannot assert either of these claims against Lyamec because it was not a party to either contract. Moreover, Counter-defendants argue that the Counterclaim fails to plead sufficient facts to show that Lyamec was an alter ego or successor-in-interest of Global Libya or Grifco under Texas law, thus the claim fails in regards to Lyamec. Therefore, as Grifco is not part of the suit, Count I must be dismissed and Count II may only be maintained against Global Libya.

Barnhill opposes the motion, arguing that his amendments have remedied any issues present in his original Complaint and Counterclaim. Barnhill clarifies that his Amended Counterclaim asserts five counts against Global Oil Tools, Global Libya, Lyamec, and Ghariani. As to Count Five, which alleges fraud and was dismissed without prejudice by this Court, Barnhill argues that he added sufficient allegations, such as who committed fraud and when it was committed, so as to survive the instant motion. Barnhill avers that he asserts two specific claims, one for fraudulent concealment of material facts in connection with the Addendum to the DAPA, and one for fraudulent inducement in

connection with the VSAA. He further contends that his newly pled allegations are sufficient under Federal Rule of Civil Procedure 9(b) and show a prima facie case for each claim. In their reply, Counter-defendants contend that Barnhill does not allege sufficient facts to create a *prima facie* showing on either of these claims. As to the inducement claim, Counter-defendants argue that Barnhill did not allege how Counter-defendants obtained an unjust advantage, whether Barnhill would have executed the VSAA regardless of the events that occured, and what damage Barnhill obtained as a result of the inducement. Moreover, Counter-defendants aver that Barnhill's concealment claim must fail because the allegedly concealed information was set forth in published documents available to Barnhill.

As to Count V, Barnhill further notes that he makes these claims individually against Ghariani and Lyamec, thus there is no need to implicate Texas Business Organizations § 21:223, which implicates alter ego claims. Moreover, Barnhill refutes the Counter-defendants' assertion that Count V does not implicate Global Oil. Though Barnhill agrees that he focuses his allegations on the conduct of Lyamec and Ghariani, he reminds the Court that Lyamec and Ghariani controlled Global Oil at the relevant time periods, and thus are necessarily implicated in

Count V. In their reply, Counter-defendants argue that, when comparing the original Complaint and the Amended Complaint, it is clear that Global Oil is no longer implicated in Count V. Further, even if it is implicated, fraud is insufficiently pled because Global Oil is only mentioned in passing.

Barnhill also opposes the Counter-defendants' assertion that Count V is prescribed. Barnhill argues that either *contra non valentem* or the continuing tort doctrines operates to interrupt the running of liberative prescription on his claim. Furthermore, Barnhill claims that he has sufficiently pled his prescription arguments, and that the arguments advanced by the Counter-defendants speak to the merits of prescription, and thus should be denied at this time. In their reply, Counter-defendants assert that any facts referred to in their motion that come from outside of the pleadings were referenced by Barnhill, thus can be relied on for equitable reasons. Moreover, even without such references, Counter-defendants assert that, based on the pleadings, prescription is clear. Counter-defendants claim that, contrary to Barnhill's assertions, it is proper to make legal arguments about prescription based on the facts alleged in the pleading.

As to Counts I and II, Barnhill asserts that he sufficiently pled facts to support an alter ego theory under Federal Rule of

14

Civil Procedure 8, thus Lyamec should not be dismissed as to those claims. In their reply, Counter-defendants claim that Barnhill's alter ego theory fails because he has failed to allege actual fraud and facts showing unity between Lyamec and Global Libya or Lyamec and Grifco. Moreover, Counter-defendants contend that Barnhill's assertion that Lyamec expressly assumed Grifco's liabilities and obligations would be sufficient if a factual basis was asserted, but as it stands, the allegation is merely a threadbare recital of the law.

Finally, Barnhill urges the Court to allow him another chance to amend his pleadings in the event that the Court grants any part of the instant motion. Barnhill argues that the parties are still in the pleading stages and do not have a trial date, thus there would be no prejudice or undue delay in allowing him leave to amend. In their reply, Counter-defendants assert that leave to amend should not be granted because Barnhill has had four "shots" to get his pleading right: the original and Amended Complaints in 12-3041 and the original and Amended Counterclaim in 12-1507.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a Complaint must contain "a short and plain statement of the claim showing that

the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  The Complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005).  The allegations "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996).  The court is not, however, bound to accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678.

## DISCUSSION

Counter-defendants' motion is captioned as a motion to dismiss all claims in both matters, but the parties only address Counts I, II, and V in the Counterclaim to 12-1507 and Counts I

16

and II in 12-3041. Therefore, the Court will restrict its analysis to these issues.

## A. Count V in the Barnhill's Amended Counterclaim to 12-1507

### 1. Prescription of Count V of the Amended Counterclaim to 12-1507

"A Rule 12(b)(6) motion to dismiss for failure to state a claim is an appropriate method for raising a statute of limitations defense." <u>Mann v. Adams Realty Co., Inc.</u>, 556 F.2d 288, 293 (5th Cir. 1977). "In Louisiana,[3] the prescriptive period for delictual actions, which include actions for fraud, is one year from the date injury or damage is sustained." <u>In re Ford Motor Co. Bronco II Prod. Liab. Litig.</u>, 982 F. Supp. 388, 394 (E.D. La. 1997) (Sear, J.) When the issue of prescription is raised, "[t]he burden of proof generally rests on the party asserting prescription. However, when a Complaint reveals on its face that the prescriptive period has lapsed, the plaintiff bears the burden of establishing a suspension or interruption of the prescriptive period." <u>Frank v. Shell Oil Co.</u>, 828 F. Supp. 2d 835, 842 (E.D. La. 2011) <u>on reconsideration in part,</u> No. 11-871,

---

[3] Given that the reasoning is sound and the Counter-plaintiff does not dispute the choice of law issue, the Court accepts Counter-defendants' assertion that "although Texas law applies to whether the corporate veil can be pierced, Louisiana law applies to the underlying cause of action for fraud." Rec. Doc. 176-1, p. 10, n. 3.

2012 WL 1230736 (E.D. La. Apr. 12, 2012)(internal citations omitted).

The actionable events alleged in Barnhill's Counterclaim occurred no later that December 13, 2006 (the date when the VSAA was executed), making Barnhill's claims prescribed on their face.[4] Therefore, Barnhill bears the burden of establishing interruption of the prescriptive period. To meet this burden, Barnhill asserts that prescription was interrupted because the alleged fraud constitutes a continuing tort, or, in the alternative, because the doctrine of *contra non valentem* applies.

The Court finds that a continuing tort theory is not applicable in this case. "A continuing tort is occasioned by continual unlawful acts, not the continuation of ill effects of an original, wrongful act." Crump v. Sabine River Auth., 98-2326, (La. 6/29/99), 737 So.2d 720,728); Young v. U.S., No. 13-30094, 2013 WL 4458876 *3 (5th Cir. Aug. 21, 2013). Here, it is clear that the alleged unlawful acts ceased long ago. Barnhill alleges that he was fraudulently induced into entering into the VSAA and

---

[4] The "actionable" fraud referred to concerns Barnhill's claims that he was fraudulently induced into entering into the VSAA and that certain defendants worked in concert to reduce the consideration paid to Barnhill pursuant to the Addendum to the DAPA. The fraud allegations arising from events after the signing of the VSAA are all claims of mismanagement which this court has already held are derivative claims that cannot be brought by Mr. Barnhill in this suit. Rec. Doc. 172, pps. 29-30.

that certain defendants worked in concert to reduce the consideration paid to Barnhill pursuant to the Addendum to the DAPA. Thus, the alleged fraud necessarily ceased once each of these contracts was signed. W & T Offshore, Inc. v. Apache Corp., 918 F. Supp. 2d. 601, 618 (S.D. Tex. 2013) (refusing to apply the continuing tort doctrine when "the tortious conduct stopped in 2007, when Apache stopped processing WTI's oil," and noting that the plaintiffs only alleged that the cover up was ongoing.) Thus, because the Addendum to the DAPA was signed on May 31, 2006 and the VSAA was signed in December 2007, Barnhill's continuing tort theory will not apply to interrupt prescription beyond those dates.

Barnhill also asserts interruption of prescription due to *contra non valentem*. The Louisiana Supreme Court recognizes four bases for the application of *contra non valentem*:

> (1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) Where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; and (3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action [...(4)] Where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant.

<u>Corsey v. State, Through Dep't of Corr.</u>, 375 So. 2d 1319, 1321-22 (La. 1979)

Here, it appears that Barnhill relies on the third or fourth category. The Court finds that the third category does not apply to this matter. The Louisiana Supreme Court has declined to find that the third category applies when a plaintiff was "lulled" into inaction, but not affirmatively kept from investigating the situation. <u>Marin v. Exxon Mobil Corp.</u>, 2009-2368 (La. 10/19/10), 48 So. 3d 234, 252 ("[w]hile [Defendant] misled plaintiffs by not disclosing the extent of the contamination when they learned of it, they certainly did nothing to prevent plaintiffs from investigating the cause of the sugarcane loss for themselves.") In the instant matter, Barnhill simply alleges that "until September 2012, Counter-plaintiffs did not know that Global Libya was a worthless company." Rec. Doc. 174, p. 20, ¶ 73. This statement does not indicate why Barnhill did not know this information, nor does it indicate what the Counter-defendants did to prevent him from discovering this information. Instead, Counter-plaintiff's Complaint focuses on the scheme to fraudulently induce Barnhill into entering into certain agreements, but does not allege any facts concerning the Counter-defendants' actions after the signing of the agreements.

Therefore, Barnhill's allegations, taken as true, do not meet his burden of proving that prescription was interrupted by the third type of *contra non valentem*.

As to the fourth category, the Louisiana Supreme Court cautions that it will not apply where the plaintiff's "ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned." <u>Corsey</u> 375 So. 2d. at 1321-22. As noted above, Barnhill merely states that *contra non valentem* applies and that he did not know that he had a claim for fraud until September 2012. Such concise and conclusory statements provide the Court with very little basis for deciding whether or not Barnhill's ignorance of his claim stems from his own neglect or true ignorance.

With regard to the DAPA negotiations, Barnhill's assertion that he was ignorant of his claim is certainly at odds with the rest of the alleged facts. For example, Barnhill claims he did not know that Lyamec/Ghariani had an interest in Grifco during negotiations of the DAPA, yet he alleges in his Counterclaim that Dial put Lyamec/Ghariani in charge of Global Oil Tools while Barnhill was working there and that, in 2007, Dial appointed

Ghariani to succeed him as the Director of Global Oil Tools. Rec. Doc. 174, pps. 6, 8, 11. Moreover, Barnhill cites to an announcement made by Dial wherein Dial refers to Lyamec and Ghariani as Global Libya's "significant partner." Rec. Doc. 174, p. 8. Barnhill also states in his pleading that Dial was being investigated for wrongdoing while these negotiations were ongoing, and public record shows that Dial pled guilty in March 2011. Even though these events occurred after the DAPA negotiations, it is very difficult for the Court to believe that Barnhill, a successful business owner of over thirty years, did not realize that wrongdoing could have occurred during the DAPA and DAPA Addendum negotiations with Dial and Ghariani, until September 2012.[5]

---

[5] In the cases where the fourth category was found to interrupt prescription, the facts were more severe. In Nathan, the Court applied *contra non valentem* when the "defendants threatened [plaintiff] with termination of her compensation benefits if she ever contacted an attorney." Nathan v. Carter, 372 So.2d 560 (La. 1979). In Corsey, a prisoner was so severely injured by the alleged tortfeasors that he suffered brain injuries and was mentally incapable of understanding that he had a claim until after prescription had expired. Corsey, 375 So. 2d at 1320. These cases are extreme when compared to the instant matter. Though it is certain that all of the parties involved in the instant matter engaged in some questionable and perhaps unethical behavior, the Court must recognize that *all* allegations of fraud will involve allegations of lies and deceit, as that is the nature of a fraud claim, but not all fraud claimants may avail themselves of the doctrine of *contra non valentem*. Let us not forget that Mr. Barnhill is a successful business owner, not a duped widow, as was Nathan, or brain damaged prisoner, as was Corsey. Certainly it seems that a sophisticated businessman such as Barnhill would reasonably know to proceed into such transactions with caution. See Dufrene v. Tracy, 94 So. 2d 297, 303 (La. 1957) (applying *contra non*

As to the allegations of fraud regarding the VSAA, the Court cannot determine from the face of the pleadings whether Barnhill's ignorance was reasonable. There are fewer facts with which to work concerning whether Barnhill ever knew that the Global Libya stock was worthless or that there was no intent to perform. Therefore, Barnhill failed to meet his burden to establish interruption of prescription as to the fraud relating to the VSAA. Accordingly, the Court finds that Count V is prescribed. Generally, the Court would grant leave to amend in this situation; however, as the Court has determined that Count V will be dismissed on other grounds, which will be discussed below, leave to amend would be futile.

## 2.  Is Global Oil Tools Implicated in Count V as Amended?

Barnhill clearly focuses the allegations in his Counterclaim on Ghariani, Lyamec, Dial, and Grifco. Any mention of Global Oil Tools indicates that it at most played a passive role in the alleged scheme to defraud Barnhill. Counter-defendants argue that, for this reason, Global Oil Tools must be dismissed from

_____

*valentem* when dealing with an "officer of the Court dealing with clients ignorant of legal procedure."); and compare Hendrick v. ABC Ins. Co., No. 00-2403 (La. 5/15/01), 787 So. 2d 283, 293 (refusing to apply *contra non valentem* where the plaintiff "was a sophisticated businessman who had managed a large car dealership, who had a doctorate, and who once taught college courses.")

Count V. Barnhill argues that Global Oil Tools is very much implicated in the fraud claim, specifically in the claim involving the VSAA. Barnhill alleges that "Ghariani and Lyamec had already taken over control of Global Oil Tools when the VSAA was executed and used Global to further their fraudulent scheme." Rec. Doc. 179, p. 12. Barnhill further alleges that Ghariani made misrepresentations that he would pay off Global Oil Tools' debt when negotiating the VSAA.

It is clear that the role that Global Oil Tools had in the alleged fraud scheme, if it had any role at all, was that of a pawn. Thus, the issue here is whether Global Oil Tools' passive role is sufficient to make Global Oil Tools potentially liable for a fraud scheme allegedly perpetrated by its Director. The Court answers this question in the negative. Global Oil Tools may not be implicated in this scheme to defraud simply because its director allegedly committed fraud for his own personal gain and/or the gain of one of his other companies, namely, Lyamec.[6]

_____

[6] As Barnhill alleges that Ghariani was the Director of Global Oil Tools, the Court recognizes that this is not a situation in which vicarious liability is at issue. However, the Court finds that the case law on vicarious liability is instructive and bears mentioning. Courts have noted that, in situations where the owner of a corporate entity is also the alleged tortfeasor, "[t]he line between 'business' and 'personal' activity is often a hazy one," and "there is no black letter rule on when liability should attach in such situations." Ermert v. Hartford Ins. Co., 559 So. 2d. 467, 477 (La. 1990). Courts often impose vicarious liability, however, when "the conduct in

This conclusion is supported by Barnhill's own statement in a different section of his opposition, wherein he asserts that "Count V is a *direct* claim against Lyamec and Ghariani for their own tortious conduct. Count V does not seek to hold Lyamec or Ghariani liable for the tortious conduct of another corporation. It seeks to hold them liable for their own conduct." Rec. Doc. 179, p. 20. Therefore, upon the determination that the allegations, even when taken as true, do not implicate Global Oil Tools as a defendant to the fraud claim, Global Oil Tools must be dismissed from Count V.

### 3. Must Lyamec, Global Libya, and Ghariani be Dismissed pursuant to Rules 13 and 19?

Having determined that Global Oil Tools must be dismissed with prejudice from Count V, the Court now turns to the issue of whether Lyamec, Global Libya, and Ghariani must also be dismissed pursuant to Federal Rules of Civil Procedure 13 and 19. The Court already determined that, without Global Oil Tools, these parties

---

question was at least partially motivated by an intent to serve the interests of the business." Ermert, 559 So. 2d at 477. The discretion to find vicarious liability is broad in such circumstances; however, it must be born in mind that "[o]ne of the advantages of creating a separate entity for the operation of the enterprise is that the business enterprise is not liable for all of the torts of its owner." Though this authority is not directly on point with the current issue, the Court finds that, under this standard, Global Oil Tools would not be subject to liability because Ghariani was not acting to benefit Global Oil Tools in anyway. Thus, even if Ghariani were the owner of Global Oil Tools, which he was not, Global Oil Tools would not be a proper defendant.

must be dismissed.  The Court stated that:

> Having found that Count V is insufficient, the Court is faced with an interesting dilemma. Count V is the only claim which includes an existing party, Global Oil, as well as the new parties that the Barnhills joined via the CC/TP DEMAND, namely, Lyamec and Global Libya. Accordingly, without Count V, there is no basis for either Lyamec or Global Libya to remain joined to this suit. As the Court discussed in its related Order and Reasons regarding subject matter jurisdiction, Counts I and II are wholly separate from any claims against Global Oil and pose no joint or several liability. While they may be an early precursor to the R.I.C.O. and Lanham Act claims alleged in case No. 12-1507, they do not arise out of those claims; they do not relate to them; and they do not meet the rules for permissive joinder under Rule 20. Therefore, Lyamec and Global Libya are not proper counter claimants or cross claimants in case No. 12-1507.

Rec. Doc. 172, pps. 11-12.  The same may be said for Ghariani.

Thus, the Court must dismiss Lyamec, Global Libya, and Ghariani

from the Counterclaim.[7] Consequently, Counts I and II must also

---

[7]As was explained in the Court's previous Order and Reasons:

> Under Rule 21, where a party has been misjoined, the court "may at any time, on just terms, add or drop a party." Fed. R. Civ. Proc. 21. Because these claims could not have been brought absent Count V, and because the Court has found that Count V is insufficient, the Court finds that it is appropriate to drop both Lyamec and Global Libya from the instant action. Furthermore, although the Barnhills have argued that the proper action is not dismissal, but rather, severance with the opportunity to be afforded a separate suit, the Court notes that the Barnhills will not be prejudiced if the Court drops their claims against Lyamec and Global Libya from suit No. 12-1507. The Barnhills have asserted these exact claims against Lyamec and Global Libya in case No. 12-3041; thus, the Barnills may pursue their claims in that suit. Furthermore, dismissing these parties, even without the

dismissed because they are brought against Global Libya and Lyamec.

### 4. Leave to Amend

As to Barnhill's request for leave to amend, the request is denied. The Court has already afforded Barnhill the chance to amend his fraud claim, and, upon Barnhill's addition of facts, it became clear that Global Oil Tools had no role in the alleged fraud. Further, Barnhill's fraud claim, as discussed above, is prescribed. Thus, amendment would be futile at this stage.

### B. Counts I and II in 12-3041

Though Counts I and II were dismissed in 12-1507, the dismissal was based on procedural defects that do not apply in 12-3041; therefore, the Court must address the merits of Counts I and II.

Barnhill asserts Count I against Lyamec despite the fact that the contract at issue, the DAPA, is between Barnhill and Grifco. Similarly, Barnhill asserts Count II against Lyamec and

---

existence of case No. 12-3041, does not violate Rule 21 because it is not a complete dismissal of the action, i.e. the entirety of case No. 12-1507.

Rec. Doc. 172, p. 28.

Global Libya despite the fact that the contract at issue, the VSAA, is only between Barnhill and Global Libya. In its prior Order and Reasons (Rec. Doc. 172), the Court dismissed Count I entirely and Count II as it pertains to Lyamec upon a finding that Barnhill's successor-in-interest, alter ego, and same enterprise theories were insufficiently pled. The Court stated that, to succeed on a successor-in-interest claim under Texas law, Barnhill would need to allege that Lyamec expressly assumed Grifco's and/or Global Libya's liabilities, which he did not sufficiently plead in his original Complaint. Rec. Doc. 172, p. 36. With respect to Barnhill's alter ego theory, the Court found that he would have to allege actual fraud on the part of Lyamec. Thus, based on its finding that Count V was not alleged with sufficient particularity under FRCP Rule 9(b), the Court dismissed Counts I and II inasmuch as Barnhill asserted an alter ego theory.  The Court granted Barnhill leave to amend his pleading on the successor-in-interest and alter ego theories only.

Barnhill has now amended these claims, and the Counter-defendants argue that they are still insufficient. The Counter-defendants contend that Barnhill's allegation that Lyamec is the

28

assignee/and or successor-in-interest to Grifco and Global Libya is merely based on information and belief, and does not provide any factual basis for this belief. As such, these statements are mere recitals of the required elements of a claim and are not entitled to be taken as true. As to the alter ego theory, the Counter-defendants argue that the Rule 9(b) heightened pleading standard applies, and the allegations are insufficient under this standard.

**1. Successor-in-Interest**

The Court recognizes that, in regards to the successor-in-interest claim, Barnhill amended his Complaint to essentially recite verbatim the element that the Court determined his Complaint lacked. While this normally would not suffice to survive a motion to dismiss, the Court is also cognizant of the fact that more information on this issue may not be available to Barnhill at this time. Documentation of any assignment of liability to Lyamec by Grifco and/or Global Libya would necessarily be in the hands of those entities, thus the Court cannot require Barnhill to produce this evidence before discovery has even commenced. See U.S. ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 190-91 (5th Cir. 2009) ("alleged scheme to submit false

claims and details leading to a strong inference that those claims submitted—-such as dates and descriptions of recorded, but unprovided, services and a description of the billing system that the records were likely entered into—-gives defendants adequate notice of the claims. In many cases, the defendants will be in possession of the most relevant records.") Thus, under the liberal pleading standards of Rule 8, the Court finds that Counter-defendants have been sufficiently put on notice of Barnhill's allegations, and that proof of further support of this theory is best left for discovery. Id. at 191. ("Discovery can be pointed and efficient, with a summary judgment following on the heels of the Complaint if [relevant evidence can] discredit the Complaint's particularized allegations.")

### 2. Alter Ego

Under Texas Law, an entity cannot be liable for contractual claims on an alter ego theory unless that entity "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate." TX BUS ORG § 21.223(b). Therefore, to assert an alter ego theory as a basis for recovery, Barnhill must

allege that (1) Lyamec is an alter ego of Grifco and/or Global Libya and (2) Lyamec committed actual fraud.

### a. Alter Ego Status

Entites are alter egos when there is "unity between the corporation and the individual to the extent that the corporation's separateness has ceased and holding only the corporation liable would be unjust." In re Ryan, 443 B.R. 395, 406 (Bankr. N.D. Tex. 2010) The traditional factors that courts would use to determine whether this unity exists are:

> (1) the payment of alleged corporate debts with personal checks or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) the diversion of company profits to the individual for personal use; (4) inadequate capitalization; and (5) other failures to keep corporate and personal assets separate

Id., n. 11.

The Court finds that Barnhill sufficiently alleges that Lyamec is an alter ego of Global Libya. Barnhill alleges that in inducing him to entered into the VSAA, Ghariani, as the CEO of Lyamec, made several representations that Ghariani would pay certain amounts to Barnhill and Global Oil. Barnhill also alleges that Global Libya is essentially a worthless company without any bank accounts. Rec. Doc. 175, p. 8 at  ¶ 44, 45 &  p. 16 ¶ 85,

31

86.   At this early stage of litigation, these allegations are sufficient.

Conversely, Barnhill fails to allege enough facts to show that Lyamec is an alter ego of Grifco as the Complaint does not allege a single fact that would support this allegation. Further, the Court will not grant Barnhill leave to amend as he has already had a chance to remedy his Complaint, and because he will be able to proceed against Grifco under a successor-in-interest theory.

**b. Actual Fraud**

Having determined that Barnhill alleged sufficient facts as to Lyamec's status as an alter ego of Global Libya, the Court must now turn to whether there are sufficient facts to state a claim for actual fraud. <u>Thrift v. Hubbard</u>, 44 F.3d 348, 353 (5th Cir.1995). "Any actual fraud must relate to the transaction at issue;" therefore, as Global Libya is the only alter ego, the only transaction that may be considered here is the VSAA. <u>Ocram, Inc. v. Bartosh</u>, 2012 WL 4740859 *3 (Tex.App.-Hous. (1 Dist.) 2012) To determine if actual fraud was committed, the parties cite to Louisiana law, as it is the law that would govern the substantive

fraud claim.[8] Counter-defendants have laid out the elements of a fraud claim:

> Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. La. Civ.Code art. 1953. The two essential elements of fraud are the intent to defraud or gain an unfair advantage and actual or probable damage. *Dutton & Vaughan, Inc. v. Spurney*, 600 So.2d 693, 698 (La.App. 4 Cir. 1992). Reliance is an element of a claim for fraud in Louisiana. *See Abbott v. Equity Group, Inc.,* 2 F.3d 613, 624 (5th Cir.1993); *Sun Drilling Products Corp. v. Rayborn*, 2000-1884 (La. App. 4 Cir.10/3/01), 798 So.2d 1141, 1153. Moreover, for fraud or deceit to have caused plaintiff's damage, he must at least be able to say that had he known the truth, he would not have acted as he did to his detriment. *Rayborn*, 798 So.2d at 1153. Whether this element is labeled reliance, inducement, or causation, it is an element of a plaintiff's case for fraud. *Id*.

Rec. Doc. 176-1, p. 13. Further, the Fifth Circuit has explained that, "generally, there is no inference of fraudulent intent not to perform from the mere fact that a promise made is subsequently

---

[8] Under Texas law, to state a claim for fraud, a party must allege: (1) a material representation, (2) that was false, (3) that was either known to be false when made or was asserted without knowledge of the truth, (4) that was intended to be acted upon, (5) was relied upon, and (6) that caused injury. Concept Clothing Co., Inc. v. Dabney, CIV.A. 302CV1838M, 2003 WL 23208272 (N.D. Tex. Aug. 14, 2003) (citing Dunbar Med. Systems, Inc. v. Gammex Inc. 216 F.3d 441, 453 (5th Cir.2000) (citing Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc., 960 S.W.2d 41, 47 (Tex.1998)). "A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made. Dunbar Med. Sys. Inc., 216 F.3d at 453. Thus, even if Texas law were to apply, it is similar enough to Louisiana law that the result would be the same.

not performed." <u>U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.</u>, 336 F.3d 375, 386 (5th Cir. 2003) (internal citation omitted). Rather "the requisite intent must be coupled with prompt, substantial nonperformance to demonstrate fraud in the inducement. It must be shown that the defendant promptly followed through on its intent not to perform by substantially failing to carry out its obligations under the contract." <u>U.S. ex rel. Willard</u>, 336 F.3d at 386

Based on the principles of <u>Willard</u>, the Court finds that Barnhill does not state a claim for fraud in relation to the VSAA. There are no facts alleged that would allow the Court to find that this is not merely a breach of contract claim that Barnhill attempts to disguise and re-plead as a fraud claim. Many factors changed between the time of the entering into the VSAA and Global Libya's refusal to comply--most notably that the parties entered into litigation wherein each side accuses the other of improper conduct. Even taking the allegations of the Complaint as true, the Court does not find it reasonable to infer that Global Libya or Lyamec entered into the VSAA with no intent to honor it, but rather that they just did not honor it, making

this a breach of contract claim and not a fraud claim. Therefore, Barnhill may not rely on an alter ego theory in this litigation.

Accordingly,

Counter-defendants' Motion to Dismiss (Rec. Doc. 176) is **GRANTED IN PART and DENIED IN PART.**

**IT IS ORDERED** that Counts I, II, and V of the Counter-plaintiff's claim in 12-1507 are **DISMISSED WITH PREJUDICE.**

New Orleans, Louisiana this 23rd day of September, 2013.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE