UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GLOBAL OIL TOOLS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 12-1507** |
| **WILFRED J BARNHILL, ET AL.** | **SECTION: "J" (4)** |

## ORDER

Before the Court are Defendants, Wilfred J. Barnhill, Brian Barnhill, Diane Barnhill and Barnhill Industries, Inc., (collectively "Defendants") **Motion to Compel Production of Documents (R. Doc. 231)** and **Motion to Compel Production of Chase Bank Financial Records (R. Doc. 235).** These motions are also opposed. *See* R. Doc. 237-38. The motion was noticed for submission and originally scheduled to be heard on April 9, 2014, but was reset and heard by oral argument on April 16, 2014.

### I.  Background

This is not a matter of first instance before this Court.[1] This action was instituted on behalf of Plaintiff, Global Oil Tools ("Global Oil")[2] pursuant to the Racketeer Influence and Corrupt Organizations Act (18 U.S.C. § 1962) ("RICO"), the Lanham Act, 15 U.S.C. § 1125 ("Lanham Act"), as well as Louisiana law, for an allegedly fraudulent scheme whereby Defendants, Wilfred and Diane Barnhill, established competing companies, Downhole-Surface Manufacturing, LLC., and

---

[1] A full background of this case is set forth in this Court's Order and Reasons (R. Doc. 193) granting in part and denying in part Plaintiffs' Global Oil Tools, Inc., Lyamec Corporation, Global Oil Tools Libya, Inc., and Riad Ghariani's Motion to Dismiss (R. Doc. 176).

[2] *See* R. Doc. 116, p. 1-3. Wilfred Barnhill allegedly served as Global Oil Tools' president until 2011. Wilfred Barnhill's wife, Diane Barnhill, was also employed by Global Oil Tools. *Id.* Brian Barnhill, Wilfred and Diane Barnhill's son, was Global Oil Tool's Vice President, Financial Officer, and Treasurer. According to the amended complaint, in 2007, Lyamec Corporation, Inc., acquired ownership of Global Oil.

Global International Tools, misappropriated trade secrets, company resources, business opportunities, customers, and stole Global Oil's property and inventory (R. Doc. 201-1, p. 1-2).

As to the instant motions, the Court shall first address Defendants' **Motion to Compel Production of Documents (R. Doc. 231)**, which seeks an Order from this Court compelling production of documents of monies paid by Global Oil for salaries, expenses, and investor dividends that would explain Global Oil's financial decline, from Global Oil, Lyamec, Inc., and Global Oil Lybia, Inc. *See* R. Doc. 231. Defendants contend that this information is relevant to their defense and their successor-in-interest claims in the consolidated matter. *Id.*

The next motion before the Court is Defendants' **Motion to Compel Production of Chase Bank Financial Records (R. Doc. 235),** seeking an Order from this Court compelling Global Oil to produce said records as Defendants contend that they are relevant to the instant matter because they support the Barnhills' defense and bear on the credibility of Global Oil and Riad Ghariani. *See* R. Doc. 235. Defendants contend that this information is relevant because they recently deposed a corporate secretary of Global Oil, who gave testimony that Ghariani divested financial control from the Barnhills by depositing all the funds from an $800,000, letter of Credit into a Chase Bank account that the Barnhills could not access. *Id.* at 1. As a result, Defendants contend that Ghariani took control of the day to day operations, also allegedly issued false invoices in order to receive a greater advance of the letter of credit and then misappropriated the excess funds for his own benefit. *Id.* Therefore Defendants seek an Order from this Court compelling production of these account documents from Global Oil.

**II.   Standard of Review**

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P.

26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando*, 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. *Id.* In assessing whether the burden of the discovery outweighs its benefit, a court must consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id.* at 26(b)(2)(C)(iii).

Rule 34 provides that a party may request another party to produce "any designated documents or electronically stored information ... stored in any medium from which information can be obtained." *Id.* at 34(a)(1)(A). This request "must describe with reasonable particularity each item or category of items to be inspected." *Id.* at 34(b)(1)(A). "The party to whom the request is directed must respond in writing within 30 days after being served." *Id.* at 34(b)(2)(A). "For each item or category, the response must either state that inspection ... will be permitted as requested or state an objection to the request, including the reasons." *Id.* at 34(b)(2)(B). Although Rule 34 does not

3

provide that untimely objections are waived, the Fifth Circuit has found that the waiver provision applies equally to Rule 34. *See In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989).

## III. Analysis

### A. Defendants' Motion to Compel Production of Documents

Defendants seek an Order from this Court compelling production of documents of the finances of Global Oil for salaries, expenses, and investor dividends that would explain Global Oil's financial decline, from Global Oil, Lyamec, Inc., and Global Oil Lybia, Inc. *See* R. Doc. 231. Defendants contend that this information is relevant to their defense and their successor-in-interest claims in the consolidated matter. *Id.*

The Barnhills contend that Riad Ghariani played a much larger role, was in control of the finances and engaged in self-interested transactions which may have been fraudulent. *See* R. Doc. 231-1, p. 1. As such, the Barnhills contend that the discovery being sought is relevant because (1) they believe that this information will establish that the Barnhills were not in control of global Oil's finances at all times and (2) that Ghariani's actions caused Global Oil's finances to deteriorate. *Id.*

This dispute surrounds the following discovery requests:

#### 1. Records of Salaries or Expenses

**Request for Production Number 9** – to Global Oil; to Global Libya, at RFP # 3 sought "all documents evidencing costs incurred by Global Oil to manufacture drawings for Global Libya from 2005 through 2012."

Global Oil objected to Request No. 9 on the basis that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Global Oil indicated that "Global Oil Tools Libya" was a joint venture or a related company that Global Oil was involved in. Therefore, the allegations that Ghariani, the Director of Global Oil Tools from 2007, would have used Global Oil's resources to benefit Global Oil Tools Libya is immaterial, as the companies were involved

4

with one another. Furthermore, counsel for Global Oil indicated that counsel for the Barnhills already produced the information he requested in a spreadsheet prepared by his clients. Counsel for the Barnhills acknowledge receipt of the information.

After considering the arguments of the parties, the Court found that the interrelation of the companies did not support the Barnhills' allegations that this information would be relevant to their claim. Further, the Court finds that the production of this information would be duplicative. As such, the Barnhills request was denied.

The next request is:

**Request for Production Number 10** –which sought "all documents that demonstrate the funds that Global Oil has paid to Riad Ghariani or R Raymond, Guillermo Licona and Ben Gala for the relevant period, including, but not limited to, amounts paid for salaries and expenses such as travel expenses, personal accounting, housing allowances, car payments, drivers, and/or cell phones."

Global Oil objected on the basis of this information seeking information that is not reasonably calculated to lead to discovery of admissible evidence, noting that these claims were already dismissed by the Court, and are overly broad and unduly burdensome. *See* R. Doc. 238, p. 8.

During oral argument, counsel for the Barnhills argued that they have allegations that Ghariani used his own personal companies to loan money to Global Oil at an interest rate to pay his own personal salary when the company no longer had any cash. He also argued that there were allegations that Ghariani spent outlandish amounts of money on non-Global Oil business related travel expenses, which the Barnhills contend could be found in the information requested here.

In opposition, counsel for Global Oil argued that no reimbursement claims or shareholder derivative suits are a part of this action, therefore, he believed this information was not relevant to the instant action. He also represented to the Court that the Barnhills were already provided with copies of all relevant tax returns for the Barnhills and Ghariani for the relevant period, which set

forth the salaries and expenses of each of these individuals.

Although the Court indicated that the tax returns would not set out specific reimbursement request information, Global Oil indicated that the Barnhills already possessed a spreadsheet with some individual expenses for the relevant period as was defined by the Court.

In response, counsel for the Barnhills indicated that because the tax returns did not include an itemization on expenses by Ghariani, he wanted to get a copy of the itemization records to compare it with the tax records. However, the Court sustained Global Oil's objection of overbreadth because the request was not limited in time.

Therefore, as a compromise, counsel for the Barnhills agreed to the previously defined limitation of 2008, as set forth by this Court. As to the specific information, the Court found that producing additional information as to salaries and data that is included on the tax returns already produced would be burdensome, therefore, Global Oil only had to supplement their response by providing expense records from 2008 to the time the Barnhills left the company for Ghariani / R Raymond only because the records of Guillermo Licona and Ben Gala, two parties who worked for an independent financing company, are not relevant to this action. As such, Defendants' request was granted in part, ordering Global Oil to produce the expense records from 2008 to the time the Barnhills left the company for Ghariani / R Raymond.

    **2.** **Dividends and Bank Records**

The next set of requests the Barnhills seek to compel are those related to the Shareholder Sinking Fund. These requests are:

> **Request for Production 11** – to Global Oil; to Global Lyamec, at RFP #1; sought "any and all records of shareholder dividends issued by Global Oil Tools from 2005 to 2012," and **Request 13** sought "any and all financial records for the bank account referred to as the 'Shareholder Sinking Fund,' 'Sinking Fund,' or 'Shareholder Fund' from 2005 to 2012."

Global Oil objected to Requests 11 and 13 on the basis that they seek information not reasonably calculated to lead to the discovery of admissible evidence and regarding claims already dismissed, and are overly broad and unduly burdensome. *See* R. Doc. 231.

During oral argument counsel for the Barnhills indicated that these records are relevant even if this Court has already dismissed the Barnhills negligent mismanagement claims because the information may still be relevant to the Barnhills' defense in establishing that Global Oil was allegedly in financial decline by acts other than the Barnhills before the alleged theft of business opportunities. Furthermore, the Barnhills argued that the records may also evidence that Global Oil was not in a position financially to gain business opportunities that the Barnhills allegedly misappropriated.

Counsel for the Barnhills also indicated that he believes these records are relevant because they will help to establish that Ghariani may have been placing Global Oil money into non-corporate accounts for non-business purposes. Furthermore, counsel for the Barnhills indicated that there was one transaction in particular, which will be addressed in the second motion below, that was not properly documented and he wanted these records to help him establish where the money went and what it was used for.

In opposition, counsel for Global Oil indicates that not only had they already produced some bank records, but they had already produced other balance sheets to defendants, which is evidenced by the fact that the Barnhills knew of the existence of the dividend that was issued by Ghairani. Therefore, it contended that the Barnhills did not need any more information than they were already given. Counsel for Global Oil also raised the fact that the Barnhills' request sought information outside of the previously defined relevancy period, without providing a concrete factual basis.

Upon further questioning, counsel for the Barnhills could not point to any additional facts

which substantiated his claim for financial records which date outside of the relevancy period. Therefore, the Court found that the Defendants' request seemed more akin to a fishing expedition than an actual need for the information. As such, Defendants' request was denied.

### 3. Financial Records for Lyamec and Global Libya

Request For Production Numbers 2, 3, and 5 to Global Libya seek production of "all records of shareholder dividends and cost records incurred by Global Oil Tools from 2005 to 2012;" "any and all federal tax returns and state tax returns, including all attachments, from 2005 to 2012;" and "any and all financial statements and bank records, including all attachments, for Lyamec from 2005 to 2012." *See* R. Doc. 238, p. 11, citing Requests for Production Nos. 1-3 to Lyamec, Doc. 231-7, 231-8.

In opposition, Global Oil contends that Lyamec and Global Libya are not parties to suit 12-1507, and although these matters have been consolidated, the Barnhills' reason for trying to obtain these records is specious, as they claim these records will "bear directly on Ghariani's competence as a director and the credibility of his claim that his other companies are profitable in the millions." See Doc. 231-1 at 8. Global Oil contends that this is immaterial however, Ghariani's claim in an email years ago that he had other companies which were profitable in the millions has nothing to do with these suits, as Ghariani did not allege that those companies were Lyamec or Global Libya and the Barnhills do not claim otherwise. Therefore, Global Oil contends that these documents are irrelevant to the instant action and have nothing to do with Ghariani's management, but rather are merely an attempt of Defendants to conduct "a fishing expedition for financial information related to Lyamec and Global Libya." which has nothing to do with Global Oil Tools' claims or even the Barnhills' purported defense that Mr. Ghariani mismanaged Global Oil Tools.

During oral argument, counsel for the Barnhills contended that these claims are predicated on

the Barnhills argument that Lyamec is the successor-in-interest to one of two companies, either a company named "Grifco" or Global Libya. Counsel for the Barnhills also argued that they propounded discovery requests to Lyamec for them to produce any documents that would substantiate whether they have assumed this liability. However, Global Oil responded that no such documents existed.

Furthermore, Global Oil argued that this Court already spoke to the issue of shareholder dividends relevancy in a prior request. As a result, this request should also be denied on that basis.

As to the financial documents sought in Requests 3 and 5, Global Oil argues that no express assumption of liability would be found in a tax return or financial document, as they would not show evidence of a corporate identity transfer.

The Court agreed and held that Request Number 2, 3 and 5, which sought production of shareholder dividend information and financial documents, and is therefore denied.

### C. Defendants' Motion to Compel Production of Chase Bank Financial Records

As to Defendants second motion,(**R. Doc. 235**), they seek an Order from this Court compelling Global Oil to produce records as Defendants contend that they are relevant to the instant matter because they support the Barnhills' defense and bear on the credibility of Global Oil and Riad Ghariani. *See* R. Doc. 235. Defendants contend that this information is relevant because they recently deposed a corporate secretary of Global Oil, Susan Fielding, who gave testimony that Ghariani divested financial control from the Barnhills by depositing all the funds from an $800,000, letter of Credit into a Chase Bank account that the Barnhills could not access. *Id.* at 1. As a result, Defendants contend that Ghariani took control of the day to day operations, also allegedly issued false invoices in order to receive a greater advance of the letter of credit and then misappropriated the excess funds for his own benefit. *Id.* Therefore Defendants seek an Order from this Court

compelling production of these account documents from Global Oil.

In opposition, Global Oil contends that Defendants believe that a Chase Bank account, involving an Order from Sunline Petroleum Services, Ltd. is relevant to their defenses in the instant action based on the testimony of Global Oil's secretary, Ms. Fielding. Global Oil contends that Ms. Fielding testified that Global Oil director, Riad Ghariani, divested financial control from the Barnhills by depositing all the funds from the Sunline transaction into a Chase bank account which the Barnhills could not access. She also testified allegedly, that Ghariani used his control over those funds to dictate how Global's day-to-day business should be run. *See* R. Doc. 237, p. 2.

However, Global Oil contends that these claims are no longer relevant to the instant action as Judge Barbier dismissed the Defendants' claims based upon the allegations related to the Sunline transaction, as he indicated that "these claims would be derivative claims, and as non-shareholders the Barnhills have no standing to complain about mismanagement of Global Oil Tools." *Id. citing* R. Docs. 193 and 172. Therefore, Global Oil contends that because the claims related to the Sunline transaction have been dismissed from this action, they have not sufficiently explained why they need the actual bank account records related to the Sunline transaction. *Id.* at p. 3. Lastly, Global Oil contends that Defendants' Motion actually demonstrates that they have all the information they need related to the Sunline transaction, and therefore their motion should be denied.

After considering the arguments of the parties, the Court concluded that the deposition testimony already acknowledged that this account was not controlled by the Barnhills. Therefore, the Court finds that the Chase Bank account transaction records are not relevant. As such, the defendants' request is denied.

## IV. Conclusion

**IT IS ORDERED** that Defendants' **Motion to Compel Production of Documents (R. Doc.**

**231)** is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS GRANTED** as to Request for Production Number 10 in part, as to Global Oil supplementing their response by providing expense records from 2008 to the time the Barnhills left the company for Ghariani / R Raymond.

**IT IS DENIED** as to Defendants' Request for Production Numbers 11 and 13 to Global Oil; Request for Production Number 1 to Lyamec; Request For Production Numbers 2, 3, and 5 to Global Libya; Request for Production Number 9 to Global Oil and Request for Production Number 3 to Global Libya.

**IT IS FURTHER ORDERED** that Defendants' **Motion to Compel Production of Chase Bank Financial Records (R. Doc. 235)** is **DENIED.**

New Orleans, Louisiana, this 23rd day of April 2014

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**